**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMANI WHITFIELD, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YES TO, INC.,<br><br>Defendant. | Case No.  2:20-cv-763<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Imani Whitfield ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on the investigation of counsel and upon information and belief, except that Plaintiff's allegations as to her own actions are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit regarding Defendant Yes To, Inc.'s ("Yes To" or "Defendant") manufacture and sale of a defective product known as the "Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask" ("Unicorn Mask").

The Unicorn Mask is a cosmetic product that, when applied to the face, purports to remediate "dull & uneven skin."[1]  Defendant advertises that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"[2]

2.     The packaging of the Unicorn Mask warrants that it will "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."

3.     Contrary to Defendant's assertions, users of the mask had a polar opposite experience to the one advertised by Defendant.  Specifically, users have experienced often horrific skin irritation or even chemical burns on their faces as a result of using the product.

4.     One Colorado teenager reported that within minutes of applying the Unicorn Mask, her face began "burning like a sunburn."[3]  While the product instructions say to wear the mask for ten minutes, the teen reported that "after seven minutes it felt like her face was on fire."[4]

5.     After removing the mask, the teen was afflicted with extreme redness and facial burning:

---

[1] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/ (last visited 1/19/20).
[2] *Id.*
[3] https://kdvr.com/2020/01/20/yes-to-brand-face-mask-recalled-after-customers-report-skin-burns/ (last visited 1/21/20).
[4] *Id.*



6.      The Colorado teen is not alone, as "dozens of customers have reported skin irritation and swelling after wearing the mask."[5]

7.      Another news report tells the story of an eleven-year old girl who applied the Unicorn Mask while getting ready for school, and after three minutes, "her skin began burning and she lifted the mask to peek at it.  Her face was bright red."[6]

8.      The child's mother reported that "[t]he burn reaction was an outline of the whole mask.  It was crazy, like you can see where she pressed on it into her face."[7]

9.      Plaintiff experienced the same reaction after purchasing and using her Unicorn Masks.  Plaintiff used the mask and experienced severe skin irritation and burning.  After using the product, Plaintiff's face had a rash that resembled a severe sunburn.

---

[5] *Id.*
[6] https://www.today.com/health/yes-recalls-unicorn-face-masks-after-complaints-burns-t171303 (last visited 1/21/20).
[7] *Id.*

10.     On January 3, 2020, Defendant took to social media and announced it was recalling the Unicorn Mask, stating: "In light of reports that our Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask has resulted in skin irritation for some consumers, Yes To has decided to remove this particular product from store shelves while we investigate."[8]

11.     That post was met with over 100 comments including complaints of severe skin irritation, redness, and burning.[9]  Some samples of comments include:

- "This product completely messed up my face after only 5 minutes of wear. I am beyond angry and have contacted your customer service via email. I will warn everyone I know about your products."  This comment had a picture attached:



---

[8] https://www.facebook.com/yestocarrots/ (last visited 1/21/20).
[9] *Id.*

- "I used this around Thanksgiving to 'relax'... it burned so badly and my face got so swollen that i thought i was having an allergic reaction along the lines of anaphylaxis! I went to urgent care and it cost me $248 that my insurance didn't cover!!!! I'm so angry. How about compensation?"

- "My daughter got the mask as a stocking stuffer. Within two minutes of wear she was crying. Her face was red, blisters were forming, and she was in pain. Thank you for removing the product and researching it. I look forward to see how the situation is remedied and how you plan to refund those that purchased the product."

- "Burned my daughter's face! I wish I could put a picture up! It was horrible!"

12.    Because of overwhelming consumer complaints, Defendant elected to remove the product from store shelves on January 3, 2020.

13.    On January 16, 2020, the United States Food & Drug Administration issued a voluntary recall of "all lots" of the Unicorn Mask "in response to complaints of skin irritation and redness."[10]  As part of the recall, the company stated:

> We have recently seen reports on social media that children have used the Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask unfortunately in skin irritation. We have also received similar reports from adults who have used the product. As such, we have decided to pull this particular product off of the shelves while we investigate the complaints that we have received and seen online.[11]

14.    Customers were instructed to return the product.[12]

15.    Consumers have repeatedly notified Defendant about the defect in the mask for months prior to when Defendant pulled the product from the shelves.

---

[10] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/yes-inc-issues-voluntary-recall-product-due-skin-irritation-complaints-grapefruit-vitamin-c-glow (last visited 1/19/20).
[11] *Id.*
[12] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16.     Indeed, there are social media reports of consumers reporting the issue to Defendant as early as September of 2019, months before the recall.[13]  Defendant knew about this post because Defendant actually responded to the Facebook comment and, instead of making customers aware and initiating a recall, swept it under the rug and instructed the user to "email [Defendant's] Customer Care Team."[14]

17.     However, despite knowledge of the defect, Defendant failed to act to remediate the issue, and thereby affirmatively misrepresented and/or omitted facts regarding the dangers of the Unicorn Mask.  This delay allowed Defendant to reap a significant financial windfall over the Christmas season, while putting its customers at risk.  Due to Defendant's behavior, consumers were forced to suffer the consequences while Defendant reaped significant financial compensation from unsuspecting consumers.

18.     The Unicorn Masks were defective from their inception, and every unit of the Unicorn Mask suffered from the same defect.

19.     Plaintiff and Class Members were injured because they paid moneys and received a worthless product in return on account of Defendant's misrepresentations and omissions.  The Unicorn Mask was worthless because it did not, in fact, "naturally enhance[] skin glow, promot[e] smoother and softer looking skin,"  remediate "dull & uneven skin" and certainly did not make the user's "skin care fantasies come true" (it was more of a nightmare) and did not "help[] reveal a bright, glowing, naturally more even-looking complexion."  Instead, the mask caused severe irritation and burning on user's faces such that it had to be recalled by the FDA.

---

[13] https://www.health.com/condition/skin-conditions/yes-to-unicorn-face-mask-burning (last visited 1/21/20).
[14] *Id.*

20.     Further, Defendant failed to disclose the safety dangers of using the mask to consumers.

21.     Indeed, Defendant has discontinued the product and has instructed purchasers to return the product.[15]

22.     Plaintiff brings this action on behalf of herself and the Class for equitable relief and to recover damages and restitution for:  (i) breach of express warranty; (ii) breach of the implied warranty of merchantability and fitness for the purpose, (iii) Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501-201, *et seq.*; (iv) fraudulent concealment, (v) fraud, (vi) unjust enrichment, and (vii) conversion.

## **PARTIES**

23.     Plaintiff Imani Whitfield is a citizen of the State of Pennsylvania and resides in Philadelphia, Pennsylvania.  Plaintiff purchased approximately three Unicorn Masks from a Walmart location in Philadelphia for personal use for approximately $4 per unit in or around November or December 2019, and suffered a severe skin reaction and burning after using the product.  When purchasing the Unicorn Mask, Plaintiff reviewed the accompanying labels and disclosures and, and understood them as representations and warranties by the manufacturer that the Unicorn Mask was properly manufactured and free from defects.  Plaintiff also reviewed Defendant's warranties contained on the product's packaging, specifically that the product would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."  Plaintiff relied on Defendant's representations and warranties in deciding to purchase the Unicorn Mask, and these representations and warranties formed the basis of the bargain, in that she would not have purchased the Unicorn Mask from Defendant if she had known that it would not, in fact, "naturally

---

[15] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/ (last visited 1/19/20).

enhance[] skin glow, [and] promot[e] smoother and softer looking skin," and would cause her face to suffer severe irritation and redness.

24.     Plaintiff relied on Defendant's expertise as a manufacturer of skin care products and would not have purchased the product had Defendant disclosed that it was defective and caused severe skin reactions.  Plaintiff also understood that in making the sale, Walmart was acting with the knowledge and approval of Yes To and/or as the agent of Yes To.  Plaintiff also understood that each purchase involved a direct transaction between herself and Yes To, because the Unicorn Mask came with packaging and other materials prepared by Yes To, including representations and warranties mentioned herein, and the implied warranty that the Unicorn Mask was properly manufactured and free from contaminants and defects.

25.     Plaintiff used the mask as directed and suffered skin irritation, redness, and burning.

26.     None of the advertisements reviewed or representations received by Plaintiff and members of the putative Class contained any disclosure relating to severe skin irritation, redness, or burning.  Had Defendant disclosed the defect, Plaintiff would have been aware of it and would not have purchased the Unicorn Mask.  When Plaintiff and putative class members purchased the Unicorn Mask, they reasonably relied on the expectation that the product would not contain a defect leading to severe skin irritation, redness, and burning.

27.     Defendant Yes To, Inc. is a Delaware corporation with its principal place of business at 177 East Colorado Blvd Suite 110 Pasadena, California 91105. Defendant conducts substantial business in the state of Florida, and throughout the United States.  Defendant has been engaged in the manufacturing, sale, and distribution of the now-recalled Unicorn Mask in the state of Florida and throughout the United States.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has its principal place of business in this District.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Class:

> All persons in the United States who purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask (the "Class").

31.     Plaintiff also seeks to represent a subclass of all members of the Class who purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask in the state of Pennsylvania (the "Subclass").

32.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment to the complaint, or narrowed at class certification.

33.     Specifically excluded from the Class and Subclass is Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

34.    **Numerosity.**  The members of the proposed Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Class, and tens of thousands of individuals that are members of the proposed Subclass.  Although the precise number of proposed members is unknown to Plaintiff, the true number of members of the Class and Subclass is known by Defendant.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

35.    **Typicality.**  The claims of the representative Plaintiff are typical of the claims of the Class and Subclass in that the representative Plaintiff, like all members of the Class, paid for defective Unicorn Masks and suffered severe skin irritation and redness.  The representative Plaintiff, like all members of the Class and Subclass, has been damaged by Defendant's misconduct in the very same way as the members of the Class and Subclass.  Further, the factual bases of Defendant's misconduct are common to all members of the Class and Subclass and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Class and Subclass.

36.    **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the Unicorn Mask is defective;

(b)    Whether the Unicorn Mask causes severe skin irritation, redness, and burning;

---

(c)     Whether Defendant knew or should have known about the defect in the Unicorn Mask and, if so, how long Defendant knew about the defect in the Unicorn Mask;

(d)     Whether Defendant had a duty to disclose the defect to consumers;

(e)     Whether Defendant breached its duty to disclose;

(f)     Whether Defendant intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts regarding the nature of the Unicorn Mask;

(g)     Whether Defendant made material misrepresentations and/or omissions concerning the standard, quality or grade of the Unicorn Mask;

(h)     Whether members of the Class would have paid less for the Unicorn Mask if Defendant, at the time of purchase, disclosed that the Unicorn Mask was defective;

(i)     Whether Defendant is liable to Plaintiff and the Class and Subclass for breaching express and implied warranties;

(j)     Whether Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*;

(k)     Whether Defendant is liable to Plaintiff and the Class and Subclass for unjust enrichment;

(l)     Whether Defendant actively concealed material facts from Plaintiff and members of the Class and Subclass in order to sell more defective Unicorn Masks; and

(m)     Whether Plaintiff and the Class and Subclass are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

37.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

38.   **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by members of the Class and Subclass is relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for members of the Class or Subclass, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Class and Subclass could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

39.   In the alternative, the Class and Subclass may also be certified because:

(a)    the prosecution of separate actions by individual members of the Class or Subclass would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)    the prosecution of separate actions by individual Class or Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class or Subclass not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass as a whole, thereby making appropriate final declaratory and/or

injunctive relief with respect to the members of the Class
and Subclass as a whole.

## CAUSES OF ACTION

### FIRST COUNT
**Breach of Express Warranty**

40.     Plaintiff incorporates and realleges each of the preceding paragraphs as
though fully set forth herein.

41.     Plaintiff brings this count on behalf of herself and the members of the
Class and Subclass.

42.     Defendant is and was at all relevant times a merchant and seller of the
Unicorn Mask as defined under the Uniform Commercial Code.

43.     The Unicorn Mask is and was at all relevant times a good within the
meaning of the Uniform Commercial Code.

44.     Defendant expressly warranted on the product's packaging that the
Unicorn Mask would "naturally enhance[] skin glow, [and] promot[e] smoother and
softer looking skin."

45.     Defendant further expressly warranted that the Unicorn Mask would
remediate "dull & uneven skin" and that "[t]his mask will make your skin care
fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking
complexion. Your skin will look great in selfies with this mask on AND off!"

46.     Defendant's express warranties formed the basis of the bargain that was
reached when Plaintiff and members of the Class and Subclass purchased the
Unicorn Mask.

47.     Defendant breached each of the express warranties listed above because
the Unicorn Mask did not "naturally enhance[] skin glow, [and] promot[e] smoother
and softer looking skin;" in fact, it did the opposite by causing severe skin irritation,
redness, and burning.  For the same reason, the Unicorn Mask did not help "reveal a
bright, glowing, naturally more even-looking complexion."

48.     As described above, Defendant was on notice of the defect, but failed to cure the same.

49.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and the members of the Class and Subclass have been damaged in an amount to be determined at trial.

50.     On January 23, 2020, prior to filing this action, Defendant was served with a timely pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607. Plaintiff's counsel sent Defendant a letter advising it that it breached express warranties and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and accurate copy of the January 23, 2020 letter is attached hereto as **Exhibit A**.

<u>**SECOND COUNT**</u>
**Breach Of Implied Warranty**

51.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

52.     Plaintiff brings this count on behalf of herself and members of the Class and Subclass.

53.     Defendant breached the warranty implied in the contract for the sale of Unicorn Mask because it could not pass without objection in the trade under the contract description, the goods were not of fair and average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Unicorn Mask caused severe skin irritation, redness, and burning and had to be recalled by the FDA.  As a result, plaintiff and members of the Class and Subclass did not receive the goods as impliedly warranted by Defendant to be merchantable.

54.     Plaintiff and the members of the Class and Subclass purchased the Unicorn Mask in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

55.     The Unicorn Mask was not altered by Plaintiff or the members of the Class or Subclass.

56.     The Unicorn Mask was defective when it left the exclusive control of Defendant.

57.     Defendant knew that the Unicorn Mask would be purchased and used without additional testing by Plaintiff and the members of the Class or Subclass.

58.     The Unicorn Mask was defectively designed and unfit for its intended purpose, and Plaintiff and the members of the Class and Subclass did not receive the goods as warranted.

59.     As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and the members of the Class and Subclass have been injured and harmed because (a) they would not have purchased the Unicorn Mask had they known that it would cause severe skin irritation, redness, and burning;  (b) they overpaid for the Unicorn Mask because it is worthless and had to be recalled by the FDA, and (c) the Unicorn Mask did not have the characteristics, uses, or benefits as promised, namely because it caused severe skin irritation, redness and burning and had to be recalled.  As a result, Plaintiff and members of the Class and Subclass have been damaged in the full amount of the purchase price of the Unicorn Mask.

60.     On January 23, 2020, prior to filing this action, Defendant was served with a timely pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607. Plaintiff's counsel sent Defendant a letter advising it that it breached express warranties and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and accurate copy of the January 23, 2020 letter is attached hereto as **Exhibit A**.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD COUNT

### Violation Of Violation Of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*

61.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

62.     Plaintiff brings this count on behalf of herself and members of the Subclass.

63.     The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), is to protect the public from fraud and unfair or deceptive business practices.

64.     The UTPCPL declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" described in the statute.

65.     Defendant was involved in "trade" and "commerce" as defined by 73 Pa. Stat. Ann. § 201-2(3).

66.     Defendant engaged in "unfair methods of competition" and "unfair or deceptive acts or practices" by:

  a.  Representing that the Unicorn Mask manufactured and sold by Defendant has sponsorship, approval, characteristics, ingredients, uses, benefits or quantities they do not have, as described above;

  b.  Representing that the Unicorn Mask manufactured and sold by Defendant is of a particular standard, quality or grade, when in fact the product was worthless and subject to recall due to causing severe irritation, redness and burning, thereby rendering the Unicorn Mask unfit for use;

  c.  Advertising the Unicorn Mask with the intent not to sell it as advertised because the products were not advertised to cause severe skin irritation, redness, and burning; and

d. As described at length in Count One, above, failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.

67.     Defendant's misrepresentations, specifically that the Unicorn Mask would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin," would remediate "dull & uneven skin," and that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!," as well as Defendant's omissions in failing to disclose the defect to consumers, amounted to fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

68.     The UTPCPL provides a private right of action for any person who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the UTPCPL.  73 P.S. § 201-9.2(a).

69.     In the course of Defendant's business, it knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the Unicorn Mask.

70.     Plaintiff and members of the Subclass are ordinary purchasers and did not have access to the same information as Defendant, the manufacturer of the Unicorn Mask.  Specifically, Plaintiff and members of the Subclass did not have access to Defendant's internal memoranda, studies, testing, or records of consumer complaints related to the Unicorn Mask.  Defendant's internal memoranda, studies, testing, and records of consumer complaints establish that Defendant knew of the material defect with the Unicorn Mask for months, if not years before Plaintiff purchased the Unicorn Mask.  Plaintiff and members of the Subclass are, when it comes to cosmetic manufacturing, unsophisticated purchasers who were at the mercy

of Defendant to inform them of the known safety defect present in the Unicorn Mask. As such, Defendant had a duty to disclose the defect to Plaintiff and members of the Subclass.

71.     Plaintiff and members of the Subclass relied upon Defendant's false and misleading representations and omissions.

72.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Subclass members have suffered and will continue to suffer actual damages.

73.     Plaintiff, individually and on behalf of the other Subclass members, seeks the greater of actual damages or $100, whichever is greater, treble damages and an award of attorneys' fees pursuant to 73 P.S. § 201-9.2(a)

**FOURTH COUNT**
**Fraudulent Concealment**

74.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

75.     Plaintiff brings this count on behalf of herself and members of the Class and Subclass.

76.     Defendant had a duty to disclose material facts to Plaintiff and the Class and Subclass given their relationship as contracting parties and intended users of the Unicorn Mask. Defendant also had a duty to disclose material facts to Plaintiff and the Class and Subclass, namely that they were in fact manufacturing, distributing, and selling a defective product that caused harm to consumers in the form of severe skin irritation, redness and burning, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

77.     Defendant possessed knowledge of these material facts. In fact, Defendant knew about reports of adverse events related to skin irritation, redness and burning for, at minimum, months before the recall was finally announced.

Defendant therefore withheld the knowledge of the defect from consumers.  During that time, Plaintiff and members of the Class and Subclass were using the defective Unicorn Masks without knowing it was defective and would cause severe skin irritation, redness, and burning.

78.    Defendant failed to discharge its duty to disclose these materials facts.

79.    In so failing to disclose these material facts to Plaintiff and members of the Class and Subclass, Defendant intended to hide from Plaintiff and members of the Class and Subclass that they were purchasing a harmful and defective product unfit for its intended use, and thus acted with scienter and/or an intent to defraud.

80.    Plaintiff and the Class and Subclass reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Unicorn Masks sold by Defendant had they known the truth about the nature of the masks.

81.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff and members of the Class and Subclass suffered damages in the amount of monies paid for the defective Unicorn Mask.

82.    As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## <u>FIFTH COUNT</u>
### Fraud

83.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

84.    Plaintiff brings this claim on behalf of herself and members of the Class and Subclass.

85.    As discussed above, Defendant misrepresented on the label that the Unicorn Mask would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin" and would remediate "dull & uneven skin."  Defendant further misrepresented that "[t]his mask will make your skin care fantasies come true, as it

helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"

86.     Defendant was on notice of the defect in the Unicorn Mask for, at minimum, months prior to the recall.  Despite being on notice of the defect, Defendant continued to make knowingly false representations about the nature of the product.  In short, the false and misleading representations and omissions were made with knowledge of their falsehood.

87.      The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the Class and Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Class and Subclass to purchase the Unicorn Mask.

88.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

89.      As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## SIXTH COUNT
### Unjust Enrichment

90.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

91.     Plaintiff brings this claim on behalf of herself and members of the Class and Subclass.

92.     Plaintiff and the Class and Subclass conferred a benefit on Defendant in the form of monies paid to purchase the Unicorn Masks.

93.     Defendant voluntarily accepted and retained this benefit.

94.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for defective Unicorn Masks unfit for use, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

## SEVENTH COUNT
### Conversion

95.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of the members of the Class and Subclass against Defendant.

97.     Plaintiff and members of the Class and Subclass have an ownership right to the monies paid for the defective Unicorn Masks manufactured, distributed, and sold by Defendant.

98.     Defendant has wrongly asserted dominion over the payments illegally diverted to them for the defective Unicorn Masks.  Defendant has done so every time that Plaintiff and members of the Class and Subclass paid to purchase a defective Unicorn Mask.

99.     As a direct and proximate cause of Defendant's conversion, Plaintiff and members of the Class and Subclass suffered damages in the amount of the payments made for each time they purchased the Unicorn Masks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Class and Subclass, that the Court enter judgment in their favor and against Defendant as follows:

A.     An Order certifying the proposed Class and Subclass and appointing Plaintiff and her Counsel to represent the Class and Subclass;

B.     An Order requiring Defendant to notify consumers about the defects in the Unicorn Mask and undergo a corrective advertising campaign;

C.     An Order of disgorgement of wrongfully obtained profits;

D.     An award of compensatory, statutory, and punitive damages, in an amount to be determined;

E.   An award of reasonable attorneys' fees costs and litigation expenses, as allowable by law;

F.   Interest on all amounts awarded, as allowed by law; and

G.   Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  January 24, 2020                    Respectfully Submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: sbursor@bursor.com
        ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

# BURSOR & FISHER

P.A.

888 SEVENTH AVENUE
3ʳᵈ FLOOR
NEW YORK, NY 10019
www.bursor.com

ANDREW J. OBERGFELL
Tel: 646.837.7129
Fax: 212.989.9163
aobergfell@bursor.com

January 23, 2020

<u>*Via FedEx*</u>

Yes To, Inc.
77 East Colorado Blvd, Suite 110
Pasadena, CA 91105

*Re:*    *Notice and Demand Letter Pursuant to U.C.C. § 2-607;*
         *Pennsylvania's Unfair Trade Practices and Consumer*
         *Protection Law, 73 P.S. §§ 201-1, et seq. ("UTPCPL");*
         *and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Yes To, Inc. ("Yes To") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties – and violations of state consumer protection laws – related to our client, Imani Whitfield, and a class of all similarly situated purchasers (the "Class") of defective Grapefruit Vitamin C Glow Boosting Unicorn Paper Masks ("Grapefruit Mask") manufactured and distributed by Yes To.

Our client purchased the Grapefruit Mask from a local Walmart store, which was manufactured and distributed by Yes To.  The Grapefruit Mask was defective because it caused severe redness and skin irritation after using the product.  On January 3, 2020, Yes To voluntarily recalled the Grapefruit Mask "[i]n light of reports that [its] Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask has resulted in skin irritation."  On January 16, 2020, the U.S. Food & Drug Administration ("FDA") announced a voluntary recall of the Grapefruit Mask, explaining "Yes To Inc. has issued a voluntary recall of all lots of its Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask in response to complaints of skin irritation and redness. We have recently seen reports on social media that children have used the Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask unfortunately in skin irritation. We have also received similar reports from adults who have used the product."  In short, the Grapefruit Mask that our client and the Class purchased were worthless, as they caused severe skin irritation and redness, rendering them unusable and unfit for use.

Yes To violated express and implied warranties made to our client and the Class regarding the quality and safety of the Grapefruit Mask they purchased.  *See* U.C.C. §§ 2-313, 2-314.  Specifically, Yes To expressly warranted on the Grapefruit Mask's packaging that it would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."  Yes To

1

further warranted that the Grapefruit Mask would remediate "dull & uneven skin."  Defendant advertised that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"  But these representations were false, as the Grapefruit Mask in fact caused redness, irritation, and in many cases burning.  This necessitated a product recall. The Grapefruit Mask was also unfit for its intended purpose for the reasons stated above.

Additionally, this letter also serves as notice of violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), and all other relevant state and local laws.  As a result of Yes To's violation of the UTPCPL, Plaintiff sustained injury.

On behalf of our client and the Class, we hereby demand that Yes To (1) undergo a corrective advertising campaign to notify consumers of the wrongs detailed herein, and (2) make full restitution to all purchasers of the defective Grapefruit Mask of all purchase money obtained from sales thereof.

We also demand that Yes To preserve all documents and other evidence which refers or relates to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the packaging, labeling, and manufacturing process for Yes To's Grapefruit Mask;

2.    All documents concerning the design, development, supply, production, extraction, and/or testing of Yes To's Grapefruit Mask;

3.    All tests of Yes To's Grapefruit Mask;

4.    All documents concerning the pricing, advertising, marketing, and/or sale of Yes To's Grapefruit Mask;

5.    All communications with customers involving complaints or comments concerning Yes To's Grapefruit Mask;

6.    All documents concerning communications with any retailer involved in the marketing or sale of Yes To's Grapefruit Mask;

7.    All documents concerning communications with federal or state regulators; and

8.    All documents concerning the total revenue derived from sales of Yes To's Grapefruit Mask.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

BURSOR&FISHER
P.A.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

*Andrew J. Obergfell*

Andrew J. Obergfell