**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 26321
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**GOLOMB & HONIK**
Kenneth Grunfeld (to apply *pro hac vice*)
1835 Market St., Suite 2900,
Philadelphia, PA 19103
kgrunfeld@golombhonik.com
Tel: (215) 985-9177
Fax: (215) 985-4169

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMANI WHITFIELD, SHAWANNA MCCOY, JOSEY PARSONS AUGHTMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>YES TO, INC., a Delaware corporation; and DOES 1 – 10, inclusive<br><br>Defendant. | Case No. 2:20-cv-00763-AB-AS<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman ("Plaintiffs"), through undersigned counsel, file on behalf of themselves and all persons similarly situated, this Consolidated Class Action Complaint, alleging the following based upon the investigation of counsel, review of public documents, and information and belief, and upon personal knowledge as to allegations regarding Plaintiffs.

## INTRODUCTION

1.     This class action complaint seeks to remedy the unlawful and deceptive practices by Yes To Inc. (hereinafter "Yes To"/"Defendant") in connection with the marketing, packaging, and sale of its beauty product, "Yes to Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask" (hereinafter "the Product" or "Unicorn Mask"), which has been sold in big-box retailers throughout the country.

2.     The Unicorn Mask is a cosmetic product that, when applied to the face, purports to remediate "dull & uneven skin."[1]  Defendant advertises that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"[2] But contrary to these claims, the Product—which is marketed to target young women and girls—is dangerous and has harmful side effects.

3.     Specifically, when the Product is purchased and subsequently used by unsuspecting customers in accordance with Defendant's instructions for use, it results in injuries including, but not limited to, severe facial skin irritation, redness, burning, blistering, swelling and pain. Plaintiffs Whitfield, McCoy, and Aughtman each experienced severe skin irritation and burning after using the Unicorn Mask.

4.     Yes To has been on notice of the serious adverse side-effects caused by the use the Unicorn Mask. Not only has the flood of consumer complaints (accompanied by photos of users' burned faces) been publicized in the media, but Yes To has also tacitly acknowledged the issue and attempted to address it. Namely, Defendant's webpage for

---

[1] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/ (last visited 5/9/20).
[2] *Id.*

the Unicorn Mask has sporadically stated that the Product had been "discontinued" due to "reports of skin irritation," and advised purchasers to return the Product or call Yes To directly if it had been used.

5.      Incredibly—although woefully insufficient to address the problem—these statements appeared for about 14 days, then disappeared from Defendant's website. Yet the Product is, and always has been, falsely advertised on the Yes To website and remained on store shelves for purchase without any sort of notification or warnings about the harm it can cause until as late as at least March 6, 2020.

6.      Despite being on notice and fully aware of the harm being caused by the Unicorn Mask and that it does not deliver the promised benefits, Yes To has:  (a) failed to provide any disclosure about the harm on the Product or at the point of purchase; (b) periodically removed the hidden, small print information about reports of skin irritation and a purported discontinuance of the Product from its website; (c) failed to adequately recall the product or otherwise notify retailers to remove it from store shelves; (d) continued to omit material facts and make false statements about the benefits of the Product on its website and on the Product packaging.

7.      Accordingly, Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability, (iii) fraudulent concealment, (iv) fraud, (v) unjust enrichment, (vi) conversion, (vii) violation of the California Consumers Legal Remedies Act, Cal Bus & Prof Code §§ 1750, *et seq*., (viii) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*., (ix) violation of the "Unfair" and "Fraudulent" Prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*., (x) violation of the "Unlawful" Prong of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*., and (xi) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

8.    Jurisdiction and venue are properly vested in this Court because a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. In addition, the Defendant's principal place of business is in Pasadena, California.

9.    This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and includes a proposed nationwide class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

10.    Venue is proper in this District under 28 U.S.C. § 1391(a)(1), because Yes To is "domiciled" in this jurisdiction, regularly conducts business in this District and the significant events giving rise to this case took place in this District.

## PARTIES

11.    Plaintiff Imani Whitfield is a purchaser of the Product who resides in Philadelphia, Pennsylvania.

12.    Plaintiff Shawanna McCoy is a purchaser of the Product who resides in Berkeley, California.

13.    Plaintiff Josey Parsons Aughtman is a purchaser of the Product who resides in Montgomery, Alabama.

14.    Defendant Yes To Inc. is a Delaware Corporation with its principal place of business at 177 East Colorado Blvd., Suite 110, Pasadena, California 91105. It is a leading provider of purportedly 'natural' beauty products that can be found in over 27,000 big-box stores across the world and throughout the United States. All of the unlawful decisions, practices, policies, deceptive marketing, advertising and product information were conceived, reviewed, developed or otherwise controlled from and emanated from Yes To's California headquarters. All of the injuries that were caused by Yes To's wrongful conduct arise from decisions that originated in California.

# FACTUAL ALLEGATIONS

15.     The Unicorn Mask is part of a growing global market for facial sheet masks, which are face-shaped sheets with cutouts for the eyes, nose, and mouth. The masks are available in different sheet materials, including non-woven, cotton, hydrogel, bio-cellulose and others.

16.     The sheet mask can only be used once, therefore it is individually packaged, making it fast, convenient and easy to use.

17.     The increasing demand for skincare products is driving the growth of the global sheet face mass market and increasing concerns about personal appearance. According to a 2018 market report published by Transparency Market Research titled "Sheet Face Masks Market-Global Industry Analysis, Size, Share, Growth, Trends, and Forecast 2018-2026," the global sheet face mask market was expected to reach a value of $551 million by 2026. Some reports now project the market will approach $1 billion over the next several years.

18.     Defendant manufactures, markets, labels, packages, promotes, distributes and/or sells cosmetic products including, but not limited to paper face masks such as the Unicorn Mask at issue.

19.     Yes To is "a global leader in natural beauty products . . . that can be found in over 27,000 stores (from the biggies to the mom and pops) across the world."[3] Those stores include, but are not limited to, CVS, Walgreens, Walmart, Target, Amazon, and Ulta Beauty.

20.     At all times material hereto, Defendant manufactured, supplied, sold and otherwise provided the Product to retail stores throughout the United States.

21.     None of Yes To's products, including the Unicorn Mask are sold directly to consumers by Defendant, and none of Defendant's products, including the Unicorn Mask, are available for purchase on the Yes To website.

---

[3] http://yesto.com/our-mission/ (last visited 5/9/20).

22.     The Unicorn Mask is a single use paper mask soaked in grapefruit and vitamin C, among other ingredients.

23.     Defendant claims the Unicorn Mask "will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion."[4] "Your skin will look great in selfies with this mask on AND off!"[5]

24.     The packaging of the Unicorn Mask further warrants that it will "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."

25.     At all times material hereto, Defendant provided a "How to Use" for the Product on Defendant's website, which stated to "gently unfold mask and apply to clean skin." Furthermore, it stated "Tingling? It's working."

26.     The Unicorn Mask—like all of Defendant's products—are marketed to target young women and girls. The packaging for the Yes To line of sheet face masks comes in bright, iridescent colors featuring cartoon-like drawings of young-looking girls on the front. The Unicorn Mask comes in iridescent pink packaging with a drawing of a young girl wearing the mask and a Unicorn Tiara.

27.     Despite the affirmative representations on the Product packaging and core message that the Unicorn Mask is safe for use and that using it will result in a better overall facial complexion, the Product is dangerous and has harmful side effects that make users' faces look terrible and cause physical pain.

28.     Consumers of the Unicorn Mask throughout the Country have experienced serious side effects, including severe facial skin irritation, redness, burning, blistering, swelling and pain.

29.     One Colorado teenager reported that within minutes of applying the Unicorn Mask, her face began "burning like a sunburn."[6]   While the product instructions say to wear the mask for ten minutes, the teen reported that "after seven

---

[4] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/ (last visited 5/9/20).
[5] Id.
[6] https://kdvr.com/2020/01/20/yes-to-brand-face-mask-recalled-after-customers-report-skin-burns/ (last visited 5/9/20).

minutes it felt like her face was on fire."[7]

30.     After removing the mask, the teen was afflicted with extreme redness and facial burning:



31.     The Colorado teen is not alone, as "dozens of customers have reported skin irritation and swelling after wearing the mask."[8]

32.     Another news report tells the story of an eleven-year old girl who applied the Unicorn Mask while getting ready for school, and after three minutes, "her skin began burning and she lifted the mask to peek at it.  Her face was bright red."[9]

33.     The child's mother reported that "[t]he burn reaction was an outline of the whole mask.  It was crazy, like you can see where she pressed on it into her face."[10]

34.     Yes To is, and has been, on notice of the serious adverse side-effects

---

[7] *Id.*
[8] *Id.*
[9] https://www.today.com/health/yes-recalls-unicorn-face-masks-after-complaints-burns-t171303 (last visited 5/9/20).
[10] *Id.*

caused by the Unicorn Mask. Indeed, consumer complaints about severe skin irritation caused by using the Product are rampant online and have been well-publicized in the media.

35. In fact, in apparent response to consumer complaints, on or about January 4, 2020, Defendant claimed to have discontinued the Product due to customers suffering from "skin irritation" as a result of using the Product.[11]

36. Defendant's supposed discontinuation of the Product consisted of a short-lived singular post on its Twitter account, a singular post on its Facebook page[12] and a brief description on the Product page on Defendant's website.[13]

37. Defendant's Facebook post was met with over 100 comments including complaints of severe skin irritation, redness, and burning.[14]   Some samples of comments include:

- "This product completely messed up my face after only 5 minutes of wear. I am beyond angry and have contacted your customer service via email. I will warn everyone I know about your products." This comment had a picture attached:

---

[11] https://twitter.com/yesto/status/1213526413644419072 (last visited 5/9/20).
[12] https://www.facebook.com/yestocarrots/ (last visited 5/9/20) ("In light of reports that our Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask has resulted in skin irritation for some consumers, Yes To has decided to remove this particular product from store shelves while we investigate.").
[13] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/ (last visited 5/9/20).
[14] https://www.facebook.com/yestocarrots/ (last visited 5/9/20).

CONSOLIDATED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17  • "I used this around Thanksgiving to 'relax'... it burned so badly and my face

18    got so swollen that i thought i was having an allergic reaction along the lines

19    of anaphylaxis! I went to urgent care and it cost me $248 that my insurance

20    didn't cover!!!! I'm so angry. How about compensation?"

21  • "My daughter got the mask as a stocking stuffer. Within two minutes of wear

22    she was crying. Her face was red, blisters were forming, and she was in pain.

23    Thank you for removing the product and researching it. I look forward to see

24    how the situation is remedied and how you plan to refund those that

25    purchased the product."

26  • "Burned my daughter's face! I wish I could put a picture up! It was horrible!"

27    38.    The information about the "discontinuation" of the Product on the Yes To

28  website could only be found by clicking on the Unicorn Mask product page and reading

the fine print underneath the product description.  Once there, it stated that the Product had been discontinued due to reports of "skin irritation" and that purchasers should return the Product if they had not used it yet, or call Yes To directly if the Unicorn Mask had been used.

39.     Shockingly, since January 21, 2020, Defendant has removed any mention of a discontinuance of the Unicorn Mask on its website.

40.     On January 16, 2020, the United States Food & Drug Administration issued a voluntary recall of "all lots" of the Unicorn Mask "in response to complaints of skin irritation and redness."[15]  As part of the recall, the company stated:

> We have recently seen reports on social media that children have used the Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask unfortunately in skin irritation. We have also received similar reports from adults who have used the product. As such, we have decided to pull this particular product off of the shelves while we investigate the complaints that we have received and seen online.[16]

41.     Customers were instructed to return the product.[17]

42.     Consumers have repeatedly notified Defendant about the defect in the mask for months prior to when Defendant pulled the product from the shelves.

43.     Indeed, there are social media reports of consumers reporting the issue to Defendant as early as September of 2019, months before the recall.[18]  Defendant knew about this post because Defendant actually responded to the Facebook comment and, instead of making customers aware and initiating a recall, swept it under the rug and

---

[15]    https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/yes-inc-issues-voluntary-recall-product-due-skin-irritation-complaints-grapefruit-vitamin-c-glow  (last visited 5/9/20).

[16] *Id.*

[17] *Id.*

[18]    https://www.health.com/condition/skin-conditions/yes-to-unicorn-face-mask-burning (last visited 5/9/20).

instructed the user to "email [Defendant's] Customer Care Team."[19]

44.     However, despite knowledge of the defect, Defendant failed to act to remediate the issue, and thereby affirmatively misrepresented and/or omitted facts regarding the dangers of the Unicorn Mask.  This delay allowed Defendant to reap a significant financial windfall over the Christmas season, while putting its customers at risk.  Due to Defendant's behavior, consumers were forced to suffer the consequences while Defendant reaped significant financial compensation from unsuspecting consumers.

45.     The Unicorn Masks were defective from their inception, and every unit of the Unicorn Mask suffered from the same defect.

46.     Plaintiffs and Class Members were injured because they paid moneys and received a worthless product in return on account of Defendant's misrepresentations and omissions.  The Unicorn Mask was worthless because it did not, in fact, "naturally enhance[] skin glow, promot[e] smoother and softer looking skin,"  remediate "dull & uneven skin" and certainly did not make the user's "skin care fantasies come true" (it was more of a nightmare) and did not "help[] reveal a bright, glowing, naturally more even-looking complexion."  Instead, the mask caused severe irritation and burning on user's faces such that it had to be recalled by the FDA. Defendant further failed to disclose the safety dangers of using the mask to consumers.

47.     Defendant continues to omit material facts and make false statements about the benefits of the Product on its website and on the Product packaging.

**Plaintiffs' Experience with the Product**

48.     Plaintiff Imani Whitfield purchased approximately three Unicorn Masks from a Walmart location in Philadelphia for personal use for approximately $4 per unit in or around November or December 2019, and suffered a severe skin reaction and burning after using the product.  When purchasing the Unicorn Mask, Ms. Whitfield

---

[19] *Id.*

1  reviewed the accompanying labels and disclosures and understood them as

2  representations and warranties by the manufacturer that the Unicorn Mask was properly

3  manufactured and free from defects. Ms. Whitfield also reviewed Defendant's

4  warranties contained on the product's packaging, specifically that the product would

5  "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin." Ms.

6  Whitfield relied on Defendant's representations and warranties in deciding to purchase

7  the Unicorn Mask, and these representations and warranties formed the basis of the

8  bargain, in that she would not have purchased the Unicorn Mask from Defendant if she

9  had known that it would not, in fact, "naturally enhance[] skin glow, [and] promot[e]

10  smoother and softer looking skin," and would cause her face to suffer severe irritation

11  and redness.

12      49.    Ms. Whitfield relied on Defendant's expertise as a manufacturer of skin

13  care products and would not have purchased the product had Defendant disclosed that it

14  was defective and caused severe skin reactions. Ms. Whitfield also understood that in

15  making the sale, Walmart was acting with the knowledge and approval of Yes To

16  and/or as the agent of Yes To. Ms. Whitfield also understood that each purchase

17  involved a direct transaction between herself and Yes To, because the Unicorn Mask

18  came with packaging and other materials prepared by Yes To, including representations

19  and warranties mentioned herein, and the implied warranty that the Unicorn Mask was

20  properly manufactured and free from defects.

21      50.    Plaintiff Shawanna McCoy purchased several Unicorn Masks from a

22  Target location in Albany, California for approximately $4 per unit in late 2019, and

23  suffered a severe skin reaction and burning after using the product. When purchasing

24  the Unicorn Mask, Ms. McCoy reviewed the accompanying labels and disclosures and,

25  and understood them as representations and warranties by the manufacturer that the

26  Unicorn Mask was properly manufactured and free from defects. Ms. McCoy also

27  reviewed Defendant's warranties contained on the product's packaging, specifically that

28  the product would "naturally enhance[] skin glow, [and] promot[e] smoother and softer

looking skin." Ms. McCoy relied on Defendant's representations and warranties in deciding to purchase the Unicorn Mask, and these representations and warranties formed the basis of the bargain, in that she would not have purchased the Unicorn Mask from Defendant if she had known that it would not, in fact, "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin," and would cause her face to suffer severe irritation and redness.

51.     Ms. McCoy relied on Defendant's expertise as a manufacturer of skin care products and would not have purchased the product had Defendant disclosed that it was defective and caused severe skin reactions. Ms. McCoy also understood that in making the sale, Target was acting with the knowledge and approval of Yes To and/or as the agent of Yes To. Ms. McCoy also understood that each purchase involved a direct transaction between herself and Yes To, because the Unicorn Mask came with packaging and other materials prepared by Yes To, including representations and warranties mentioned herein, and the implied warranty that the Unicorn Mask was properly manufactured and free from defects.

52.     On January 8, 2020, Plaintiff Josey Parsons Aughtman, in reliance on the claims on the Product packaging and reasonably believing the product was safe for use, purchased the Unicorn Mask at CVS located at 55 Ray Thorington Road, Montgomery, AL 36116.

53.     On January 8, 2020, Ms. Aughtman used the Product in accordance with Defendant's instructions for use by gently applying the Unicorn Mask to her clean skin. Ms. Aughtman experienced painful burning while the Unicorn Mask was on her face. After she removed it, she saw that her face had become severely red and swollen as a result of using the Unicorn Mask. Below are photographs depicting Ms. Aughtman's face after using the Unicorn Mask:

  

54.     On January 17, 2020, Ms. Aughtman contacted Yes To at the provided phone number on the Yes To website to discuss the damage to her skin resulting from using the Unicorn Mask. She left a voice message as instructed. Ms. Aughtman did not receive a response from Yes To.

55.     All three Plaintiffs used the Product as directed and suffered skin irritation, redness, and burning.

56.     None of the advertisements reviewed or representations received by Plaintiffs and members of the putative Class and Subclass contained any disclosure relating to severe skin irritation, redness, or burning.  Had Defendant disclosed the defect, Plaintiffs would have been aware of it and would not have purchased the Unicorn Mask.  When Plaintiffs and putative class members purchased the Unicorn Mask, they reasonably relied on the expectation that the product would not contain a defect leading to severe skin irritation, redness, and burning.

57.     Plaintiffs believe and therefore aver that thousands of purchasers of the Product have had similar experiences with the Product as that of Plaintiffs.

## CLASS ALLEGATIONS

58.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23,

on behalf of the following Class:

> All persons in the United States who purchased the Yes To
> Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask
> (the "Class").

59.     Plaintiff Whitfield also seeks to represent a subclass of all members of the Class who purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask in the state of Pennsylvania (the "Pennsylvania Subclass").

60.     Plaintiff McCoy also seeks to represent a subclass of all members of the Class who purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask in the state of California (the "California Subclass") (collectively, the "Subclasses").

61.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclasses may be expanded or narrowed by amendment to the complaint, or narrowed at class certification.

62.     Excluded from the Class and Subclasses are Defendant, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, counsel for the Plaintiffs in this matter, and the Court personnel in this matter.

63.     Members of the Class and Subclasses were uniformly impacted by and exposed to Defendant's misconduct. Accordingly, this Complaint is suitable for class-wide resolution.

64.     This action is brought and properly may be maintained as a Class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(l), (b)(2) or (b)(3), and satisfies the requirements thereof.

## <u>Rule 23(a) Requirements</u>

65.     The Class and Subclasses satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

66.    **Numerosity:** The proposed Class and Subclasses are so numerous that joinder of all members would be impracticable.  Defendant's products can be found at over 27,000 retail location throughout the world and United States. The precise number of class members is at least in the thousands, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

67.    **Commonality:** Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class and Subclasses is identical. Defendant uniformly, through retail locations, supplied and sold the Product to the Class and Subclasses.

68.    Plaintiffs share a common interest with all members of the putative Class and Subclasses in the objectives of the action and the relief sought.

69.    Because the Product packaging and Defendant's marketing and deceptive conduct was uniform, the material elements of Plaintiffs' claims and those of class members are subject to common proof, and the outcome of Plaintiffs' actions will be dispositive for the class.

70.    Questions of law and fact that are common to the Class and Subclasses include, but are not limited to, the following:

(a)    Whether the Unicorn Mask is defective;

(b)    Whether the Unicorn Mask causes severe skin irritation, redness, and burning;

(c)    Whether Defendant knew or should have known about the defect in the Unicorn Mask and, if so, how long Defendant knew about the defect in the Unicorn Mask;

(d)    Whether Defendant had a duty to disclose the defect to consumers;

(e)    Whether Defendant breached its duty to disclose;

(f)  Whether Defendant intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts regarding the nature of the Unicorn Mask;

(g)  Whether Defendant made material misrepresentations and/or omissions concerning the standard, quality or grade of the Unicorn Mask;

(h)  Whether members of the Class would have paid less for the Unicorn Mask if Defendant, at the time of purchase, disclosed that the Unicorn Mask was defective;

(i)  Whether Defendant is liable to Plaintiffs and the Class and Subclasses for breaching express and implied warranties;

(j)  Whether Defendant is liable to Plaintiff and the Class and Subclasses for fraudulent concealment;

(k)  Whether Defendant is liable to Plaintiff and the Class and Subclasses for fraud;

(l)  Whether Defendant is liable to Plaintiff and the Class and Subclasses for unjust enrichment;

(m)  Whether Defendant is liable to Plaintiff and the Class and Subclasses for conversion;

(n)  Whether Defendant violated California's consumer protection laws; and

(o)  Whether Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*;

(p)  Whether Plaintiffs and the Class and Subclasses are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

71.  **Typicality:**  Plaintiffs are members of the Class and Subclasses they seek to represent. Plaintiffs' claims are typical of the Class and Subclass members' claims because they purchased the Product and was exposed to Defendant's conduct.

72.  **Adequacy of Representation:** Plaintiffs are adequate representatives of the Class and Subclasses they seek to represent and will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in

litigation of this nature, to represent them, the Class and Subclasses.  There are no conflicts between Plaintiffs and the unnamed class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

73.    To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

74.    Specifically, the undersigned counsel, Milstein, Jackson, Fairchild & Wade, LLP, Golomb & Honik, P.C., and Bursor & Fisher, P.A. have extensive experience in complex consumer fraud and class action litigation and have adequate financial resources to ensure that the interests of the prospective class will not be harmed.

### Requirements of Fed. R. Civ. P. 23(b)(3)

75.    The questions of law or fact common to Plaintiffs and each class member's claims predominate over any questions of law or fact affecting only individual members of the Class and Subclass. All claims by Plaintiffs and the unnamed class members are based on Defendant's false and deceptive marketing on the packaging of the Product.

76.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there may be some individualized damage determinations.

77.    **Superiority.**   A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

  a.    Joinder of all class members would create extreme hardship and inconvenience for class members as they reside all across the states;

  b.    Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake.  As a result, individual class members may have no interest in prosecuting and controlling separate actions;

c.   There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

d.   The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

e.   Individual suits would not be cost effective or economically maintainable as individual actions; and

f.   This action is manageable as a class action.

78.   The Class and Subclasses are not so large that they would be unmanageable, and no difficulties are foreseen providing notice to individual claimants. Class members can be readily identified using sales records, production records, and other information kept by Defendant and/or third parties in the usual course of business and within their control. Therefore, both the membership of the Class and Subclasses and the amount of individual damages will be readily ascertainable.

79.   **Notice:**   Class Members can easily self-identify whether they have purchased the Product and may also be identified by business records of the retail outlets who sell the Product from customer loyalty and rewards programs.  Publication notice may be given to class members in nationwide publications, through the creation of a public website, and other online mediums, such as Facebook, Twitter and other methods Defendant uses to advertise Yes To products.

80.   Plaintiffs also satisfy the requirements of Rule 23(b)(2). Specifically, Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**

81.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

82.     Plaintiffs bring this count on behalf of themselves and the members of the Class and Subclasses.

83.     Defendant is and was at all relevant times a merchant and seller of the Unicorn Mask as defined under the Uniform Commercial Code.

84.     The Unicorn Mask is and was at all relevant times a good within the meaning of the Uniform Commercial Code.

85.     Defendant expressly warranted on the product's packaging that the Unicorn Mask would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."

86.     Defendant further expressly warranted that the Unicorn Mask would remediate "dull & uneven skin" and that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"

87.     Defendant's express warranties formed the basis of the bargain that was reached when Plaintiffs and members of the Class and Subclass purchased the Unicorn Mask.

88.     Defendant breached each of the express warranties listed above because the Unicorn Mask did not "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin;" in fact, it did the opposite by causing severe skin irritation, redness, and burning.  For the same reason, the Unicorn Mask did not help "reveal a bright, glowing, naturally more even-looking complexion."

89.     Plaintiffs reviewed these express warranties before the time of purchase and relied on them in deciding to purchase the Unicorn Masks from Defendant.

90.     As described above, Defendant was on notice of the defect, but failed to cure the same.

91.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and the members of the Class and Subclass have been damaged in an amount to be determined at trial.

92.     On January 23, 2020 and February 12, 2020, prior to filing this action, Defendant was served with timely pre-suit notice letters that complied in all respects with U.C.C. §§ 2-313, 2-607. Plaintiffs' counsel sent Defendant a letter advising it that it breached express warranties and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and accurate copy of the January 23, 2020 letter is attached hereto as **Exhibit A**.  A true and accurate copy of the February 12, 2020 letter is attached hereto as **Exhibit B**.

**<u>SECOND CAUSE OF ACTION</u>**
**Breach Of Implied Warranty of Merchantability**

93.     Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

94.     Plaintiffs bring this count on behalf of themselves and members of the Class and Subclasses.

95.     Defendant manufactured, marketed, labeled, promoted, distributed and/or sold the Product with an implied warranty that the Product was merchantable and fit for its ordinary purpose.

96.     Members of the consuming public, including consumers such as Plaintiffs and the members of the Class, were direct beneficiaries of the warranty.

97.     The Product was not merchantable or fit its ordinary purpose because it caused severe skin irritation, redness, and burning and had to be recalled by the FDA.

98.     Plaintiffs and the members of the Class and Subclasses purchased the Unicorn Mask in reliance upon Defendant's implied warranty of merchantability.

99.     The Unicorn Mask was not altered by Plaintiffs or the members of the Class or Subclasses and was defective when it left the exclusive control of Defendant.

100.   Defendant knew that the Unicorn Mask would be purchased and used without additional testing by Plaintiffs and the members of the Class and Subclasses.

101.   The Unicorn Mask was defectively designed and unfit for its ordinary purpose and Plaintiffs and the members of the Class and Subclasses did not receive the

goods as warranted.

102.   As a direct and proximate cause of Defendant's breach of implied warranty of merchantability, Plaintiffs and the members of the Class and Subclasses have been injured and harmed because (a) they would not have purchased the Unicorn Mask had they known that it would cause severe skin irritation, redness, and burning;  (b) they overpaid for the Unicorn Mask because it is worthless and had to be recalled by the FDA, and (c) the Unicorn Mask did not have the characteristics, uses, or benefits as promised, namely because it caused severe skin irritation, redness and burning and had to be recalled.  As a result, Plaintiffs and members of the Class and Subclasses have been damaged in the full amount of the purchase price of the Unicorn Mask.

103.   On January 23, 2020 and February 12, 2020, prior to filing this action, Defendant was served with timely pre-suit notice letters that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiffs' counsel sent Defendant a letter advising it that it breached express and implied warranties and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and accurate copy of the January 23, 2020 letter is attached hereto as **Exhibit A**.  A true and accurate copy of the February 12, 2020 letter is attached hereto as **Exhibit B**.

### THIRD CAUSE OF ACTION
**Fraudulent Concealment**

104.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

105.   Plaintiffs bring this count on behalf of themselves and members of the Class and Subclasses.

106.   Defendant had a duty to disclose material facts to Plaintiffs and the Class and Subclasses given their relationship as contracting parties and intended users of the Unicorn Mask.  Defendant also had a duty to disclose material facts to Plaintiffs and the Class and Subclasses, namely that they were in fact manufacturing, distributing, and

selling a defective product that caused harm to consumers in the form of severe skin irritation, redness and burning, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

107.   Defendant possessed knowledge of these material facts.  In fact, Defendant knew about reports of adverse events related to skin irritation, redness and burning for, at minimum, months before the recall was finally announced. Defendant therefore withheld the knowledge of the defect from consumers.  During that time, Plaintiffs and members of the Class and Subclasses were using the defective Unicorn Masks without knowing it was defective and would cause severe skin irritation, redness, and burning.

108.   Defendant failed to discharge its duty to disclose these material facts.

109.   In so failing to disclose these material facts to Plaintiffs and members of the Class and Subclasses, Defendant intended to hide from Plaintiffs and members of the Class and Subclasses that they were purchasing a harmful and defective product unfit for its intended use, and thus acted with scienter and/or an intent to defraud.

110.   Plaintiffs and the Class and Subclasses reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Unicorn Masks sold by Defendant had they known the truth about the nature of the masks.

111.   As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs and members of the Class and Subclass suffered damages in the amount of monies paid for the defective Unicorn Mask.

112.   As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## FOURTH CAUSE OF ACTION
### Fraud

113.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

114.   Plaintiffs bring this claim on behalf of themselves and members of the Class and Subclasses.

115.   As discussed above, Defendant misrepresented on the label that the Unicorn Mask would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin" and would remediate "dull & uneven skin."   Defendant further misrepresented that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion.   Your skin will look great in selfies with this mask on AND off!"

116.   Defendant was on notice of the defect in the Unicorn Mask for, at minimum, months prior to the recall.   Despite being on notice of the defect, Defendant continued to make knowingly false representations about the nature of the product.   In short, the false and misleading representations and omissions were made with knowledge of their falsehood.

117.   The false and misleading representations and omissions were made by Defendant, upon which Plaintiffs and members of the Class and Subclasses reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the Class and Subclasses to purchase the Unicorn Mask.

118.   The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Class and Subclasses, who are entitled to damages and other legal and equitable relief as a result.

119.   As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

120.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

121.   Plaintiffs bring this claim on behalf of themselves and members of the Class and Subclasses.

122.   Plaintiffs and the Class and Subclasses conferred a benefit on Defendant in the form of monies paid to purchase the Unicorn Masks.

123.   Defendant has knowledge of these benefits.

124.   Defendant voluntarily accepted and retained this benefit.

125.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for defective Unicorn Masks unfit for use, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

## SIXTH CAUSE OF ACTION
### Conversion

126.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

127.   Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

128.   Plaintiffs and members of the Class and Subclasses have an ownership right to the monies paid for the defective Unicorn Masks manufactured, distributed, and sold by Defendant.

129.   Defendant has wrongly asserted dominion over the payments illegally diverted to them for the defective Unicorn Masks.  Defendant has done so every time that Plaintiffs and members of the Class and Subclasses paid to purchase a defective Unicorn Mask.

130.   As a direct and proximate cause of Defendant's conversion, Plaintiffs and members of the Class and Subclasses suffered damages in the amount of the payments made for each time they purchased the Unicorn Masks.

## SEVENTH CAUSE OF ACTION
### Violations of Consumer Legal Remedies Act (CLRA)
### California Civil Code §§ 1750, *et seq.*

131.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

132.   Plaintiffs bring this claim under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, on behalf of themselves and the Class and California Subclass, all of whom were subject to Defendant's above-described

unlawful conduct.

133.   The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

134.   The CLRA is "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices . . . ." Cal. Civ. Code § 1760.

135.   Plaintiffs have standing to pursue this claim as they have suffered injury in fact and lost money as a result of Defendant's actions as set forth herein.

136.   At all times relevant hereto, Plaintiffs were and are "consumers" as defined in California Civil Code § 1761(d), and Defendant was and is a "supplier or seller" as defined by the CLRA.

137.   At all times relevant hereto, Defendant was and is a "person" as defined in California Civil Code § 1761(c).

138.   At all relevant times hereto, Defendant's conduct as described herein involves consumer "transactions" as defined in California Civil Code § 1761(e).

139.   As alleged more fully above, Defendant falsely represented to Plaintiffs and the other members of the Class and California Subclass that the Unicorn Mask would remediate "dull & uneven skin," that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!," and that it will "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."  In fact, the Unicorn Mask causes severe skin irritation and burning, and is not fit for use.

140.   Further, Defendant concealed from and failed to disclose to Plaintiffs and the Class and California Subclass that its Unicorn Mask did not conform to the

product's labels, packaging, advertising, and statements in that it caused severe redness and burning.

141.   Defendant thus violated, and continues to violate the CLRA by engaging in the following practices proscribed by <u>California Civil Code</u> § 1770(a) in consumer transactions with Plaintiffs and the Class and California Subclass, which were intended to result in, and did result in, the sale of the Unicorn Mask to Plaintiffs and the Class:

    a.   In violation of <u>California Civil Code</u> §1770(a)(5), Defendant represented the Product as having characteristics, ingredients, uses, or benefits which it does not have;

    b.   In violation of <u>California Civil Code</u> §1770(a)(7), Defendant representing that the Product is of a particular standard, quality, or grade when it is of another;

    c.   In violation of <u>California Civil Code</u> §1770(a)(9), Defendant advertised its Product with the intent not to sell it as advertised; and

    d.   In violation of <u>California Civil Code</u> §1770(a)(16), Defendant represented the Product has characteristics, uses, or benefits which it does not have.

142.   Defendant's representations and omissions were uniformly made on the Product packaging and the Yes To website, and would be important to reasonable consumers in their purchasing decision.

143.   Plaintiffs relied on Defendant's misrepresentations and omissions and would not have purchased the Unicorn Mask if they knew it was unsafe, incapable of delivering any of the promised benefits, and would actually hurt them.

144.   As a direct and proximate result of Defendant's misrepresentations and omissions, Defendant has caused injury to Plaintiffs and continues to cause injury to members of the Class and California Subclass who were misled into purchasing the Unicorn Mask without any warning of the harmful side effects and reasonably believing it was safe for use and would deliver the promised benefits.

145.   Defendant's actions as described herein were done with the intention of deceiving Plaintiffs and the Class and California Subclass and depriving them of their legal rights and money.

146.   Defendant's actions as described herein were done with conscious disregard of Plaintiffs and Class and California Subclass members' rights and Defendant has acted wantonly and maliciously in their concealment of the same.

147.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant continues to falsely and deceptively advertise and sell the Product.

148.   Plaintiffs are concurrently filing the declaration of venue required by California Civil Code § 1780(d).

149.   Pursuant to California Civil Code § 1780(a), Plaintiffs seek injunctive relief, including compelling Defendant recall the Product and permanently refrain from labeling, selling, marketing and advertising the Product in the future with the misrepresentations and material omissions alleged herein. Plaintiff and members of the Class and Subclass shall be irreparably harmed if such an order is not granted.

150.   On February 6, 2020 Plaintiff Aughtman sent notice advising Defendant it violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff Aughtman sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiff Aughtman's Notice advised Defendant it must correct, repair, replace or otherwise rectify its conduct alleged to be in violation of Section 1770, including that Defendant refrain from engaging in the methods, acts and practices alleged herein. Because Defendant failed to respond to Plaintiffs' demand within thirty (30) days of receipt of the Notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiffs are entitled to seek restitution, actual damages, and punitive damages.

On February 12, 2020, Plaintiffs Whitfield and McCoy sent a CLRA notice letter to Defendant that complies in all respects with California Civil Code § 1782.  Plaintiffs Whitfield and McCoy sent Defendant the letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff Whitfield and McCoy's CLRA letter is attached hereto as **Exhibit B**.  Because Defendant failed to respond to Plaintiffs' demand within thirty (30) days of receipt of the Notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiffs are entitled to seek restitution, actual damages, and punitive damages.

## EIGHTH CAUSE OF ACTION
### Violations of False Advertising Law (FAL)
### *Cal. Bus. & Prof. C.* §§ 17500, *et seq.*

151.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

152.   Plaintiffs, on behalf of themselves and the Class and California Subclass, bring a cause of action against Defendant pursuant to California Business and Professions code, section sections 17500, *et seq.* ("California's False Advertising Law" or "FAL").

153.   The purpose of California's False Advertising Law is to protect consumers from false or misleading advertising or promotions.  The FAL prohibits the false or deceptive advertising of products to consumers in any form of media, when the company placing the advertisement knows, or should have known, that the advertisement would be likely to mislead consumers about a material aspect of a product.

154.   As alleged herein, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased the Unicorn Mask for their own personal use.  In so doing, they relied upon

the representations and omissions referenced above and believed the Unicorn Mask was safe for personal use and would deliver the promised benefits. At the time they purchased the product and used it, Plaintiffs were not aware of its harmful side effects.

155.   In advertising the Unicorn Mask, Defendant made false and misleading statements in order to induce consumers into purchasing the Product and failed to make material disclosures that the Unicorn Mask has harmful side effects and can harm consumers.

156.   Yes To uses advertising on the product packaging, its website and through various outlets (including Facebook and Twitter) to promote its products, including the Unicorn Mask.

157.   Defendant's advertising and label claims are deceptive, or misleading within the meaning of the FAL because they make affirmative representations about the promised benefits of the Product, and omit any kind of warning or adequate disclosure of material facts to consumers about the existence and severity of side effects associated with using the Product.

158.   In making its product packaging and labeling and disseminating the statements alleged herein, Yes To knew that the statements were untrue or misleading because it sporadically, for short durations, placed on its website (and once on Facebook and Twitter) that it was "discontinuing" the Unicorn Mask because of reports it was harming consumers.

159.   Through its deceptive and unlawful marketing practices, Yes To has improperly and illegally obtained money from Plaintiffs and the Class and California Subclass.

160.   Pursuant to California's False Advertising Law, specifically Cal. Bus. & Prof. Code § 17535, Plaintiffs and the Class and California Subclass seek injunctive relief as set forth above and an award of full restitution, and/or for such other relief as may be set forth below or ordered in the discretion of the Court.

1
2
3

**NINTH CAUSE OF ACTION**
**Violations of Unfair Competition Law (UCL)**
**'Unfair' and 'Fraudulent' Prongs**
*Cal. Bus. & Prof. C.* §§ 17200, *et seq.*

4      161.   Plaintiffs hereby incorporate by reference each of the preceding allegations
5  as if fully set forth herein.

6      162.   Plaintiffs bring this claim under the "Unfair" and "Fraudulent" Prongs of
7  the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, on
8  behalf of themselves and the Class and California Subclass, all of whom were subject
9  to Defendant's above-described unlawful conduct.

10      163.   As alleged herein, Plaintiffs have standing to pursue this claim as Plaintiffs
11  have suffered injury in fact and have lost money or property as a result of Defendant's
12  actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiffs
13  purchased the Unicorn Mask for their own personal use.  In so doing, they relied upon
14  the representations and omissions referenced above and believed the Unicorn Mask was
15  safe for personal use and would deliver the promised benefits, and were not aware of its
16  harmful side effects.

17      164.   Defendant's conduct in labeling, selling, marketing and advertising the
18  Unicorn Mask is likely to deceive reasonable consumers. Indeed, reasonable consumers
19  would not pay money for a face mask that promises to improve your complexion when
20  instead the product actually burns and blisters your face and is incapable of delivering
21  the promised benefits.

22      165.   Defendant is aware that its conduct is likely to deceive reasonable
23  consumers.

24      166.   As alleged herein, Plaintiffs would not have purchased the Unicorn Mask
25  if they knew the Product would not deliver the promised benefits, would cause their
26  faces to burn and become red and puffy as a result of using the product.

27      167.   The misrepresentations and omissions, conduct and failure to recall by
28  Defendant are material and constitute unfair and fraudulent business practices within

the meaning of California Business & Professions Code § 17200, *et seq*.

168.   Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the injury because Defendant misled the consuming public through misrepresentations and omissions and failed to recall the Product even though they are aware of the harmful side effects.

169.   Defendant's business practices are also unfair because their conduct in labeling, selling, marketing and advertising the Product offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to a specific constitutional and statutory provisions, including California's consumer protection statutes.

170.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described above.

171.   Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Unicorn Mask is safe for personal use and capable of delivering the promised benefits. Defendant knew its representations and omissions and failure to recall the Product would deceive consumers into purchasing a Product that has harmful side effects and does the opposite of what the product packaging promises.

172.   Plaintiffs were misled into purchasing the Unicorn Mask by Defendants' deceptive and fraudulent conduct as alleged above.

173.   Plaintiffs were misled and, because the conduct, including the representations and omissions were uniform and material, believed the Product was safe for personal use and would deliver the promised benefits.

174.   Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendant continues to market and sell the Unicorn Mask in a manner likely to deceive the public.

175.   Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendants from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of the Unicorn Mask.

176.   Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class and Subclass restitution of the money wrongfully acquired by Defendant by means of the unfair and fraudulent business practices alleged herein.

### TENTH CAUSE OF ACTION
**Violations of Unfair Competition Law (UCL)**
**'Unlawful' Prong**
***Cal. Bus. & Prof. C. §§ 17200, et seq.***

177.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

178.   Plaintiffs bring this claim under the "Unlawful" Prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*., on behalf of themselves and the Class and Subclass, all of whom were subject to Defendant's above-described unlawful conduct.

179.   Defendants are unlawfully labeling, selling, marketing and advertising the Unicorn Mask. Indeed, Defendants' violations of the CLRA, the UCL, and the FAL alleged above, constitute predicate acts which violate the UCL's 'unlawful' prong.

180.   Plaintiffs were misled because Defendants' misrepresentations and omissions, described above, were uniform and material. Plaintiffs reasonably relied on those misrepresentations and material omissions when purchasing the Product, believing based thereon that the Unicorn Mask was safe for personal use and would work as promised. Plaintiffs were not aware the Product would not deliver the promised benefits, and that it would actually hurt them.

181.   Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendant from engaging in the unlawful business practices alleged herein in connection with the marketing and sale of the Product.

182.   Additionally, Plaintiffs seek an order awarding Plaintiffs and the Class and Subclass restitution of the money wrongfully acquired by Defendant by means of the unlawful conduct alleged herein.

### ELEVENTH CAUSE OF ACTION
**Violation Of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.***

183.   Plaintiffs hereby incorporate by reference each of the preceding allegations as if fully set forth herein.

184.   Plaintiff Whitfield brings this count on behalf of herself and members of the Pennsylvania Subclass.

185.   The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), is to protect the public from fraud and unfair or deceptive business practices.

186.   The UTPCPL declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" described in the statute.

187.   Defendant was involved in "trade" and "commerce" as defined by 73 Pa. Stat. Ann. § 201-2(3).

188.   Defendant engaged in "unfair methods of competition" and "unfair or deceptive acts or practices" by:

    a.   Representing that the Unicorn Mask manufactured and sold by Defendant has sponsorship, approval, characteristics, ingredients, uses, benefits or quantities they do not have, as described above;

    b.   Representing that the Unicorn Mask manufactured and sold by Defendant is of a particular standard, quality or grade, when in fact the product was worthless and subject to recall due to causing severe irritation, redness and burning, thereby rendering the Unicorn Mask unfit for use;

c.  Advertising the Unicorn Mask with the intent not to sell it as advertised because the products were not advertised to cause severe skin irritation, redness, and burning; and

d.  As described at length in Count One, above, failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.

189.   Defendant's misrepresentations, specifically that the Unicorn Mask would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin," would remediate "dull & uneven skin," and that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!," as well as Defendant's omissions in failing to disclose the defect to consumers, amounted to fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

190.   The UTPCPL provides a private right of action for any person who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the UTPCPL. 73 P.S. § 201-9.2(a).

191.   In the course of Defendant's business, it knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the Unicorn Mask.

192.   Ms. Whitfield and members of the Pennsylvania Subclass are ordinary purchasers and did not have access to the same information as Defendant, the manufacturer of the Unicorn Mask.   Specifically, Ms. Whitfield and members of the Pennsylvania Subclass did not have access to Defendant's internal memoranda, studies, testing, or records of consumer complaints related to the Unicorn Mask.   Defendant's internal memoranda, studies, testing, and records of consumer complaints establish that Defendant knew of the material defect with the Unicorn Mask for months, if not years

before Plaintiff Whitfield purchased the Unicorn Mask.   Plaintiff Whitfield and members of the Pennsylvania Subclass are, when it comes to cosmetic manufacturing, unsophisticated purchasers who were at the mercy of Defendant to inform them of the known safety defect present in the Unicorn Mask.  As such, Defendant had a duty to disclose the defect to Ms. Whitfield and members of the Pennsylvania Subclass.

193.  Ms. Whitfield and members of the Pennsylvania Subclass relied upon Defendant's false and misleading representations and omissions.

194.  As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Ms. Whitfield and Pennsylvania Subclass members have suffered and will continue to suffer actual damages.

195.  Ms. Whitfield, individually and on behalf of the other Pennsylvania Subclass members, seeks the greater of actual damages or $100, whichever is greater, treble damages and an award of attorneys' fees pursuant to 73 P.S. § 201-9.2(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.  An Order certifying the proposed Class and Subclass and appointing Plaintiffs and their Counsel to represent the Class and Subclass;

B.  An Order enjoining Defendant from pursuing the policies, acts, and practices complained of herein;

C.  Declaratory relief;

D.  Pre-judgment interest from the date of filing this suit;

E.  Restitution;

F.  Damages;

G.  Punitive damages;

H.  Reasonable attorneys' fees;

1  I.     Costs of this suit; and

2  J.     Such other and further relief as the Court may deem necessary or
3  appropriate.

4  **JURY TRIAL DEMANDED**

5  Plaintiffs demand a jury trial on all triable issues.

6
7  Dated:  May 15, 2020                    **MILSTEIN JACKSON**
                                            **FAIRCHILD & WADE, LLP**
8
9                              By:  _____
10                                  Gillian L. Wade, Esq.
                                    Sara D. Avila, Esq.
11                                  Marc A. Castaneda, Esq.

12                                  **GOLOMB & HONIK**
                                    Kenneth Grunfeld (*pro hac vice*)
13
                                    **BURSOR & FISHER, P.A.**
14                                  L. Timothy Fisher, Esq.

15                                  **BURSOR & FISHER, P.A.**
16                                  Scott A. Bursor, Esq.

17                                  *Attorneys for Plaintiffs and the Proposed Class*

18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

# BURSOR & FISHER

P.A.

888 SEVENTH AVENUE
3ʳᵈ FLOOR
NEW YORK, NY 10019
www.bursor.com

ANDREW J. OBERGFELL
Tel: 646.837.7129
Fax: 212.989.9163
aobergfell@bursor.com

January 23, 2020

*Via FedEx*

Yes To, Inc.
77 East Colorado Blvd, Suite 110
Pasadena, CA 91105

Re:     *Notice and Demand Letter Pursuant to U.C.C. § 2-607;*
        *Pennsylvania's Unfair Trade Practices and Consumer*
        *Protection Law, 73 P.S. §§ 201-1, et seq. ("UTPCPL");*
        *and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Yes To, Inc. ("Yes To") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties – and violations of state consumer protection laws – related to our client, Imani Whitfield, and a class of all similarly situated purchasers (the "Class") of defective Grapefruit Vitamin C Glow Boosting Unicorn Paper Masks ("Grapefruit Mask") manufactured and distributed by Yes To.

Our client purchased the Grapefruit Mask from a local Walmart store, which was manufactured and distributed by Yes To.  The Grapefruit Mask was defective because it caused severe redness and skin irritation after using the product.  On January 3, 2020, Yes To voluntarily recalled the Grapefruit Mask "[i]n light of reports that [its] Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask has resulted in skin irritation."  On January 16, 2020, the U.S. Food & Drug Administration ("FDA") announced a voluntary recall of the Grapefruit Mask, explaining "Yes To Inc. has issued a voluntary recall of all lots of its Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask in response to complaints of skin irritation and redness. We have recently seen reports on social media that children have used the Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask unfortunately in skin irritation. We have also received similar reports from adults who have used the product."  In short, the Grapefruit Mask that our client and the Class purchased were worthless, as they caused severe skin irritation and redness, rendering them unusable and unfit for use.

Yes To violated express and implied warranties made to our client and the Class regarding the quality and safety of the Grapefruit Mask they purchased.  *See* U.C.C. §§ 2-313, 2-314.  Specifically, Yes To expressly warranted on the Grapefruit Mask's packaging that it would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin."  Yes To

1

BURSOR&FISHER
P.A.

further warranted that the Grapefruit Mask would remediate "dull & uneven skin."  Defendant advertised that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"  But these representations were false, as the Grapefruit Mask in fact caused redness, irritation, and in many cases burning.  This necessitated a product recall. The Grapefruit Mask was also unfit for its intended purpose for the reasons stated above.

Additionally, this letter also serves as notice of violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), and all other relevant state and local laws.  As a result of Yes To's violation of the UTPCPL, Plaintiff sustained injury.

On behalf of our client and the Class, we hereby demand that Yes To (1) undergo a corrective advertising campaign to notify consumers of the wrongs detailed herein, and (2) make full restitution to all purchasers of the defective Grapefruit Mask of all purchase money obtained from sales thereof.

We also demand that Yes To preserve all documents and other evidence which refers or relates to any of the above-described practices including, but not limited to, the following:

1.   All documents concerning the packaging, labeling, and manufacturing process for Yes To's Grapefruit Mask;

2.   All documents concerning the design, development, supply, production, extraction, and/or testing of Yes To's Grapefruit Mask;

3.   All tests of Yes To's Grapefruit Mask;

4.   All documents concerning the pricing, advertising, marketing, and/or sale of Yes To's Grapefruit Mask;

5.   All communications with customers involving complaints or comments concerning Yes To's Grapefruit Mask;

6.   All documents concerning communications with any retailer involved in the marketing or sale of Yes To's Grapefruit Mask;

7.   All documents concerning communications with federal or state regulators; and

8.   All documents concerning the total revenue derived from sales of Yes To's Grapefruit Mask.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

*Andrew J. Obergfell*

Andrew J. Obergfell

**EXHIBIT B**

# BURSOR&FISHER

P.A.

888 SEVENTH AVENUE
3ʳᵈ FLOOR
NEW YORK, NY 10019
www.bursor.com

ANDREW J. OBERGFELL
Tel: 646.837.7129
Fax: 212.989.9163
aobergfell@bursor.com

February 12, 2020

***Via Certified Mail – Return Receipt Requested***

Yes To, Inc.
77 East Colorado Blvd, Suite 110
Pasadena, CA 91105

*Re:    Notice and Demand Letter Pursuant to U.C.C. § 2-607; California Consumers Legal
        Remedies Act, Civil Code § 1770; and all other applicable laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Yes To, Inc. ("Yes To") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties – and violations of state consumer protection laws – related to our client, Shawanna McCoy, and a class of all similarly situated purchasers (the "Class") of defective Grapefruit Vitamin C Glow Boosting Unicorn Paper Masks ("Grapefruit Mask") manufactured and distributed by Yes To.

Our client purchased the Grapefruit Mask from Target store in California, which was manufactured and distributed by Yes To. The Grapefruit Mask was defective because it caused burning and skin irritation after using the product. On January 3, 2020, Yes To voluntarily recalled the Grapefruit Mask "[i]n light of reports that [its] Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask has resulted in skin irritation." On January 16, 2020, the U.S. Food & Drug Administration ("FDA") announced a voluntary recall of the Grapefruit Mask, explaining "Yes To Inc. has issued a voluntary recall of all lots of its Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask in response to complaints of skin irritation and redness. We have recently seen reports on social media that children have used the Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask unfortunately in skin irritation. We have also received similar reports from adults who have used the product." In short, the Grapefruit Mask that our clients and the Class purchased were worthless, as they caused severe skin irritation and redness, rendering them unusable and unfit for use.

Yes To violated express and implied warranties made to our clients and the Class regarding the quality and safety of the Grapefruit Mask they purchased. *See* U.C.C. §§ 2-313, 2-314. Specifically, Yes To expressly warranted on the Grapefruit Mask's packaging that it would "naturally enhance[] skin glow, [and] promot[e] smoother and softer looking skin." Yes To further warranted that the Grapefruit Mask would remediate "dull & uneven skin." Defendant advertised that "[t]his mask will make your skin care fantasies come true, as it helps reveal a

1

bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!"  But these representations were false, as the Grapefruit Mask in fact caused redness, irritation, and in many cases burning.  This necessitated a product recall. The Grapefruit Mask was also unfit for its intended purpose for the reasons stated above.

Additionally, this letter also serves as notice of violation of all applicable consumer protection laws, including, but not limited to, California's Consumers Legal Remedies Act, Civil Code § 1770.

On behalf of our client and the Class, we hereby demand that Yes To (1) undergo a corrective advertising campaign to notify consumers of the wrongs detailed herein, and (2) make full restitution to all purchasers of the defective Grapefruit Mask of all purchase money obtained from sales thereof.

We also demand that Yes To preserve all documents and other evidence which refers or relates to any of the above-described practices including, but not limited to, the following:

1.       All documents concerning the packaging, labeling, and manufacturing process for Yes To's Grapefruit Mask;

2.       All documents concerning the design, development, supply, production, extraction, and/or testing of Yes To's Grapefruit Mask;

3.       All tests of Yes To's Grapefruit Mask;

4.       All documents concerning the pricing, advertising, marketing, and/or sale of Yes To's Grapefruit Mask;

5.       All communications with customers involving complaints or comments concerning Yes To's Grapefruit Mask;

6.       All documents concerning communications with any retailer involved in the marketing or sale of Yes To's Grapefruit Mask;

7.       All documents concerning communications with federal or state regulators; and

8.       All documents concerning the total revenue derived from sales of Yes To's Grapefruit Mask.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

BURSOR&FISHER
P.A.

Very truly yours,

*Andrew J. Obergfell*

Andrew J. Obergfell