**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 26321
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**BURSOR & FISHER, P.A.**
L. Timothy Fisher, Esq. (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiffs and the Class*
[*Additional Plaintiffs' Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMANI WHITFIELD, SHAWANNA McCOY, and JOSEY PARSONS AUGHTMAN, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>YES TO, INC.,<br><br>     Defendant | Case No. 2:20-cv-00763-AB-AS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**<br><br>Date:  February 26, 2021<br>Time:  10:00 a.m.<br>Courtroom 7B<br><br>Hon. André Birotte, Jr. |

## <u>NOTICE OF MOTION AND MOTION</u>

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on February 26, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at the 350 West First Street, Los Angeles, CA 90012, courtroom 7B, in the courtroom of the Honorable André Birotte, Jr., Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to:

(i)     grant preliminary approval of the proposed Stipulation of Settlement,

(ii)    provisionally certify the Settlement Class[1] for the purposes of preliminary approval, designate them as the Class Representatives, and appoint undersigned counsel as Class Counsel for the Settlement Class,

(iii)   approve the appointment of Heffler Claims Group as the Settlement Administrator,

(iv)    establish procedures for giving notice to members of the Settlement Class,

(iv)    approve forms of notice to Settlement Class Members,

(v)     mandate procedures and deadlines for exclusion requests and objections, and

(vi) set a date, time, and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations of Gillian L. Wade and Jeanne C. Finegan, APR, the

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Stipulation of Settlement, filed concurrently herewith. *See* Wade Decl. Ex. 1.

1  pleadings and papers on file herein, and any other written and oral arguments that may

2  be presented to the Court.

3  Dated:  January 28, 2021

MILSTEIN, JACKSON, FAIRCHILD,
& WADE, LLP

By: _____/s/ Gillian L. Wade_____
                Gillian L. Wade

Gillian L. Wade (State Bar. No. 229124)
Sara D. Avila (State Bar No. 26321)
Marc A. Castaneda (State Bar No. 299001)
10250 Constellation Boulevard Suite 1400
Los Angeles, CA 90067
Telephone: 310-396-9600
Facsimile: 310-396-9635
Email: gwade@mjfwlaw.com

*Class Counsel*

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ......................................................................1

II.   FACTUAL BACKGROUND .....................................................3

     A.   Summary of Allegations and Defenses....................................3

     B.   The Litigation...........................................................................3

     C.   Settlement Negotiations ..........................................................5

III.   TERMS OF THE SETTLEMENT ............................................5

     A.   The Settlement Class Definition .............................................5

     B.   Benefits to Class Members .....................................................5

         1.   Reimbursement for Masks Purchased...............................6

         2.   Payment of Incentive Awards and Attorneys' Fees and Costs .........6

         3.   The Notice Program and Settlement Administration.........................7

             a.   The Cost of Notice and Administration; Heffler's Duties...........7

             b.   The Proposed Class Notice .........................................7

IV.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL.................8

         1.   The Class Action Settlement Process.................................8

         2.   The Standard for Preliminary Approval............................9

V.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE........................................................................10

         1.   Procedural Concerns ......................................................10

             a.   The Settlement Was Negotiated at Arms' Length ....................10

         2.   Substantive Concerns .....................................................11

             a.   The Settlement Satisfies Rule 23(e)(2).....................................12

                 i.   Strength of Plaintiffs' Case and Risk of Continuing Litigation ..........................................12

                 ii.   The Method for Distributing Monetary Relief is Effective and Efficient ..........................................13

iii. The Proposed Attorneys' Fees are Fair.............................14

iv. There Are No Supplemental Agreements to be Identified Under Rule 23(e)(3)........................................................15

v. Class Members Are Treated Equally ................................15

b. The Ninth Circuit's Factors Weigh in Favor of Preliminary Approval .............................................................16

i. Strength of Plaintiffs' Case and Specific Risks of This Litigation.............................................................16

ii. The Settlement Amount is More Than Fair .....................17

iii. The Extent of Discovery and Status of Proceedings.........18

iv. Experience and Views of Counsel ...................................18

VI. THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL........................................................................19

A. Numerosity............................................................................19

B. Commonality and Predominance...........................................20

C. Typicality ..............................................................................21

D. Adequacy...............................................................................21

E. Superiority.............................................................................22

VII. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ......23

VIII. PROPOSED SCHEDULE OF EVENTS....................................................25

IX. CONCLUSION .......................................................................................25

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES                                          PAGE(S)

3

*Ahmed v. HSBC Bank USA* (C.D. June 21, 2019)

4
  2019 U.S. Dist. LEXIS 104401 ................................................................. 9, 16

5

*Aikins v. Cisneros* (C.D. Cal. Jul. 31, 2019)

6
  2019 U.S. Dist. LEXIS 131939 .................................................................. 9

7

*Allen v. Bedolla* (9th Cir. 2013)

8
  787 F.3d 1218 ............................................................................................. 8

9

*Amchem Prod., Inc. v. Windsor* (1997)

10
  521 U.S. 59 ................................................................................................. 19, 20

11

*Ansari v. New York Univ*. (S.D.N.Y.1998)

12
  179 F.R.D. 112 ........................................................................................... 20

13

*Arnold v. United Artists Theatre Circuit, Inc*. (N.D. Cal. 1994)

14
  158 F.R.D. 439 ........................................................................................... 21

15

*Barbosa v. Cargill Meat Solutions Corp*. (E.D. Cal. 2013)

16
  297 F.R.D. 431 ........................................................................................... 14

17

*Berry v. Baca*  (C.D. Cal. May 2, 2005)
  2005 WL 1030248 ...................................................................................... 19

18

*Boyd v. Bechtel Corp*. (N.D. Cal. 1979)
  485 F. Supp. 610 ........................................................................................ 10

19

*Carter v. Anderson Merchandisers, LP*  (C.D. Cal. May 11, 2010)
  2010 U.S. Dist. LEXIS 55629 .................................................................... 13

20

*Churchill Village, L.L.C. v. Gen. Elec.* (9th Cir. 2004)
  361 F.3d 566 ............................................................................................... 9, 12, 23

21

*Class Plaintiffs v. City of Seattle* (9th Cir. 1992)
  955 F.3d 1268 ............................................................................................. 8

22

*Curtis-Bauer v. Morgan Stanley & Co., Inc.* (N.D. Cal. Oct. 22, 2008)
  2008 WL 4667090 ...................................................................................... 16

23

*Fulford v. Logitech, Inc.* (N.D. Cal. Mar. 5, 2010)
  2010 U.S. Dist. LEXIS 29042 .................................................................... 17

24

25

26

27

28

*Garner v. State Farm. Mut. Auto. Ins. Co.* (N.D. Cal. Apr. 22, 2010)
        2010 WL 1687832 ...................................................................................16, 18

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
        150 F.3d 1011 ..............................................................10, 12, 19, 20, 21

*Hefler v. Wells Fargo & Co.* 5 (N.D. Cal. Dec. 17, 2018)
        2018 U.S. Dist. LEXIS 21304 ..............................................................11

*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011)
        654 F.3d 935 ............................................................................................10

*In re Hyundai & Kia Fuel Econ. Litig.* (9th Cir. 2019)
        2019 U.S. App. LEXIS 17047....................................................................8, 23

*In re Mego Fin. Corp.* (9th Cir. 2000)
        213 F. 3d 454 .............................................................................9, 12, 18

*In re Omnivision Techs., Inc.* (N.D. Cal. 2008)
        559 F. Supp. 2d 1036 ..............................................................................18

*In re Online DVD-Rental* (9th Cir. 2015)
        779 F.3d 934 ............................................................................................16

*In re Pac. Enters. Sec. Litig.*
        47 F.3d at 378 .........................................................................................19

*In re Tableware Antitrust Litig.*
        484 F. Supp. 2d at 1080...........................................................................10

*Louie v. Kaiser Found. Health Plan, Inc.* (S.D. Cal. Oct. 6, 2008)
        2008 U.S. Dist. LEXIS 78314 ................................................................13

*Molski v. Gleich* (9th Cir. 2003)
        318 F.3d 937 ............................................................................................12

*Mullane v. Central Hanover Bank & Trust Co.* (1950).
        339 U.S. 306 ............................................................................................23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004)
        221 F.R.D. 523 .........................................................................................17

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.* (9th Cir. 1982)
        688 F.2d 615 ......................................................................................12, 16

*Rodriguez v. West Publ'g Corp*. (9th Cir. 2009)
    563 F.3d 948 ................................................................9, 10, 12, 16, 18, 19, 23

*Staton v. Boeing Co*. (9th Cir. 2003)
    327 F.3d 938 ........................................................................................12

*Spann v. J.C. Penney Corp*. (C.D. Cal. 2016)
    314 F.R.D. 312 ......................................................................................9

*Torrisi v. Tuscon Electric Power Co*. (9th Cir. 1993)
    8 F.3d 1370 ..........................................................................................12

*Vind v. Prudential Ins. Co. of Am*. (C.D. Cal. Jan. 10, 2011)
    2011 WL 13183043 ..............................................................................10

*Wal-Mart Stores, Inc. v. Dukes* (2011)
    131 S. Ct. 2541 ....................................................................................20

## STATE CASES

*Choi v. Mario Bodusco Skin Care, Inc.* (2016)
    248 Cal. App. 4th 292 ............................................................................8

## FEDERAL STATUTES

28 U.S.C. §1715 ............................................................................................8

Fed. R. Civ. P. 23 .................................................................................*passim*

## STATE STATUTES

Cal. Civ. 1781 ..............................................................................................8

## OTHER SOURCES

1 Newberg on Class Actions (1992)
    § 3.10 ....................................................................................................20

4 Newberg on Class Actions  (5th ed.)
    § 12:35 ..................................................................................................25

*Manual for Complex Litigation (Fourth)* (2004)
    § 21.63 ............................................................................................9, 23

## I.    INTRODUCTION

This is a consumer class action concerning Yes To's ("Defendant") "grapefruit Vitamin C-Boosting Unicorn Paper Mask" (the "Product" or "Mask"), which was available at big-box retailers and pharmacies throughout California and the United States. Defendant marketed the Mask to young women and girls as being able to remedy "dull & uneven skin" and as capable of "help[ing] reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!" But contrary to these claims, the Mask caused Plaintiffs and other consumers to suffer from facial skin irritation, redness, and burning after using the Mask. Following a flood of complaints, Defendant commenced a voluntary 'recall' of the Mask and stopped further distribution of the Product, though some could still be found on some store shelves and websites through at least the end of 2020. After obtaining relevant documents and information related to the Product and its sales, Defendant and Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons-Aughtman ("Plaintiffs"), through undersigned counsel, negotiated a fair, reasonable, and adequate class settlement with the help of a neutral mediator, Jill Sperber of Judicate West.

There can be no doubt the Settlement was reached in a procedurally fair manner given the settlement negotiations were conducted at arms-length by experienced attorneys familiar with the legal and factual issues of this case.  With respect to the substance of the proposed settlement, Rule 23(e)(2)'s relatively recently-added requirements and the Ninth Circuit's factors for evaluating the fairness of a settlement both weigh heavily in favor of preliminary approval.

The proposed Settlement consists solely of monetary relief. Specifically, in exchange for a nationwide release of claims, Defendant will make a non-reversionary $750,000 cash payment for the benefit of the Class. If approved, this money will be used to pay for the following, in this order: Notice and Other Administrative Costs; the Fee and Expense Award; and, Incentive Awards; and, cash payments to Settlement

Class Members who submit eligible claims without requiring proof of purchase.[2]

With regard to the per-claim amount, the Agreement provides that Settlement Class Members who submit valid claims may recover a reimbursement of $3.00 for each Mask he or she purchased or used, up to a maximum of six (6) Masks. Claims will be paid without requiring proof of purchase. If the amount of cash available for the Settlement Fund is insufficient to pay all valid Settlement Class Member Claims (after payment of any approved Fee and Expense Award, Notice and Other Administrative Costs, and Incentive Awards), individual payment amounts for Claims shall be reduced on a *pro-rata* basis. Similarly, if the total valid Settlement Class Member Claims is less than the available portion of the Settlement Fund, the cash payout for each class member will increase *pro rata*.

This structure will ensure no funds revert back to Defendant. A recovery for up to six Masks without proof of purchase reaches or exceeds the maximum recovery Plaintiffs, or any class member, could expect at trial. Indeed, Plaintiffs have achieved a nearly a complete refund for all sales of the Mask, as approximate aggregate sales for the Mask are almost $735,000. Moreover, the estimated class size is relatively small because it was available for a limited duration given Defendant quickly began the process of removing the Mask from stores shelves and ceasing distribution once it became aware of some consumers' adverse reactions to the Mask.

The proposed Settlement Class meets every element of Rule 23(a) and (b)(3) for settlement purposes. Provisional certification of the Settlement Class is proper because the packaging for the Mask is the same nationwide, and Defendant's conduct emanated from California, as its headquarters are in Pasadena.

For the reasons explained below, pursuant to Rule 23 of the Federal Rules of Procedure, this Court should enter an order preliminarily approving the settlement,

---

[2] Unless otherwise specified, all capitalized terms have the same meanings as ascribed in the Stipulation of Settlement (the "Agreement"), which is attached as Exhibit 1 to the Declaration of Gillian L. Wade, filed concurrently herewith in support of this Motion. References to "Ex. __" refer to exhibits attached to the Agreement.

provisionally certifying the settlement Class, directing notice of the settlement to the Class in the manner proposed herein, and setting a schedule for final approval.

## II.     FACTUAL BACKGROUND

### A.     Summary of Allegations and Defenses

Yes To marketed the Mask for remediation of "dull & uneven skin" and advertised that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion." Dkt. No. 23 (Consolidated Amended Complaint ("CCAC")), ¶ 23. Defendant also claimed: "Your skin will look great in selfies with this mask on AND off!" *Id*. But contrary to these claims, the Mask—which was marketed to target young women and girls—did the opposite. *Id*. Specifically, when the Mask was purchased and subsequently used by unsuspecting customers in accordance with Yes To's instructions for use, it resulted in adverse reactions including severe facial skin irritation, redness, burning, blistering, swelling and pain. *Id*. ¶3.  Each of the Plaintiffs experienced severe skin irritation and burning after using the Mask. *Id*. ¶¶48-55.

Defendant's main defenses pertain to its conduct after consumers began complaining about the mask: Defendant purportedly initiated the process of halting distribution of the Mask and pulling the Mask from store shelves. Id. ¶¶38-44 For example, Defendant's webpage for the Mask has sporadically stated that the product had been "discontinued" due to "reports of skin irritation," and advised purchasers to return the Product or call Yes To directly if it had been used. *Id*.

 Based on the data that Defendant provided, approximately 243,000 units were sold at retail, and the approximate revenue for the Mask was nearly $735,000. Wade ISO Preliminary Approval ("Wade Dec."), ¶18. Based on Class Counsel's research, the Mask retailed for less than $4 per unit. *Id*.

### B.     The Litigation

On January 24, 2020, Plaintiff Imani Whitfield commenced an action entitled *Whitfield v. Yes To, Inc*. (United States District Court, Central District of California,

Case No. 2:20-cv-763) (the "Action"), as a proposed class action, asserting claims for breach of express warranty, breach of implied warranty, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*. ("UTPCPL"), fraudulent concealment, fraud, unjust enrichment, and conversion. Plaintiff Whitfield alleged the Mask caused skin irritation and/or burns to her face.

On February 6, 2020, Josey Parsons- Aughtman commenced an action entitled *Aughtman v. Yes To, Inc.* (United States District Court, Central District of California, Case No 2:20-cv-01223), as a proposed class action, asserting similar allegations about the Mask causing her to suffer burns and irritation on her face as a result of using the Mask. The *Aughtman* action alleged claims for Violations of Consumer Legal Remedies Act (CLRA), Violations of False Advertising Law (FAL), Violations of Unfair Competition Law (UCL) 'Unfair' and 'Fraudulent' Prongs, Violations of Unfair Competition Law (UCL) 'Unlawful' Prong, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose.

On February 19, 2020, Plaintiffs Imani Whitfield and Shawanna McCoy filed a First Amended Complaint asserting the same allegations that the Mask caused facial irritation and/or burns, and advanced the same claims, adding additional causes of action for violation of CLRA, UCL, and FAL.  Dkt. No. 9.

On March 20, 2020, Plaintiffs Imani Whitfield and Shawanna McCoy filed a Second Amended Complaint asserting the same claims and adding a prayer for damages for the CLRA claim.  Dkt. No. 20.

On March 17, 2020, the *Whitfield* action was consolidated with the related *Aughtman* action.  Dkt. No. 19.  On May 15, 2020, Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman filed the CCAC, asserting the same claims for relief as in the FAC and SAC.  Dkt No. 23.

Defendant answered the CCAC on June 12, 2020, denying liability.  Dkt. No. 25. Plaintiffs then propounded formal requests for production of documents.

On September 4, 2020, the Parties filed their Joint Report Rule 26(f) Discovery

Plan.  Dkt. No. 30.  This was followed shortly on September 10, 2020 by the Court ordering the case to a private mediator.  Dkt. No. 32.  The same day, the Court released a scheduling order for the upcoming trial.  Dkt. No. 33.

### C.   Settlement Negotiations

Substantial settlement negotiations took place between the Parties. In addition to informal settlement discussions, on November 11, 2020, the Parties remotely attended a video mediation with Jill Sperber Esq. of Judicate West. Declaration of Gillian L. Wade Dec., ¶6; Declaration of Yitzcha Kopelk ISO Preliminary Approval ("Kopel Decl."), ¶8. After a full day of hard-fought negotiations at mediation, the Parties were able to reach a resolution. *Id*. All settlement discussions were at arms-length. *Id*. On December 14, Plaintiffs filed a notice of Settlement with the court. Dkt. No. 34.

## III.   TERMS OF THE SETTLEMENT

### A.   The Settlement Class Definition

For purposes of the Settlement only, Plaintiffs respectfully request certification of the following Settlement Class:

> All persons in the United States who purchased or used the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask.

Agreement §1.20.  Excluded from this definition are the Released Persons, any person or entity that purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask for purposes of resale and not for his/her/its own consumption (i.e., "Resellers'"), and any judicial officer assigned to this case. *Id*.

### B.   Benefits to Class Members

Yes To will make a total cash payment of $750,000. Agreement §2.1. Money from the cash payment (the "Settlement Fund") will be used to pay the following, in this order: (1) the costs to give notice of the settlement and administer claims; (2) reasonable attorneys' fees, costs, and expenses approved by the Court; (3) any Court-approved service awards to Plaintiffs; and (4) eligible claims by Settlement Class Members. *Id*. §§1.21, 2.3.

### 1.    Reimbursement for Masks Purchased

Settlement Class Members who submit valid claims may recover $3.00 for each Mask he or she purchased or used, up to a maximum of six (6) Masks.  Agreement at §2.4(a); Ex. A (Claim Form); Ex. B (Long Form Notice); Ex. E (Short Form Notice). Claims will be paid without requiring proof of purchase, though claimants must provide attestation to the purchase(s) or use under penalty of perjury. *Id.*, §2.5.

If the amount of cash available for the Settlement Fund is insufficient to pay all valid Settlement Class Member Claims (after payment of the Fee and Expense Award, Notice and Other Administrative Costs, and the Incentive Award), individual payment amounts for Claims shall be reduced on a pro-rata basis. *Id.*, §2.4(a). Similarly, receipt of total valid Settlement Class Member Claims less than the available portion of the Settlement Fund will increase the cash payout for each class member on a pro rata basis. *Id.*, §2.7. *See also id.,* §2.3(d).

If any unpaid funds from uncleared settlement checks remain in the Settlement Fund, Class Counsel will make an application to the Court to seek approval for a proposed disposition of the unpaid funds from uncleared checks. *Id.*, §2.8. The unpaid funds will remain in the Settlement Fund pending further order of the Court. *Id*.

### 2.    Payment of Incentive Awards and Attorneys' Fees and Costs

Class Counsel will seek service awards of $5,000 each for Plaintiffs Whitfield, McCoy, and Aughtman. *Id.*, ¶2.3(c). The Incentive Awards ($15,000 total) will compensate Plaintiffs for their time and effort in the case, and for the risks they undertook in prosecuting the Action. *Id*.

The Settlement also permits Class Counsel to file a motion requesting attorneys' fees of up to one-third of the Settlement Fund ($250,000) plus litigation expenses (estimated to be $5,483.14). *Id.*, §3.1; Wade Dec., ¶¶7, 8; Kopel Dec., ¶12. As will be fully briefed in Class Counsel's forthcoming application for attorneys' fees and costs,

necessary costs were incurred, including filing fees and the cost of mediation. *Id.*[3]

### 3.   The Notice Program and Settlement Administration

#### a.   The Cost of Notice and Administration; Heffler's Duties

The parties selected Heffler Claims Group ("Heffler") as the Settlement Administrator. *Id.*, §1.19.[4] Heffler will be responsible for administering administrative tasks necessary to implement the terms of the Agreement, including (a) notifying the appropriate state and federal officials about the settlement, (b) arranging for distribution of Class Notice (in the form approved by the Court) and Claim Forms (in a form ordered by the Court) to Settlement Class Members, (c) handling inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel and Defendant's Counsel, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the settlement, (e) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (f) receiving and processing claims and distributing payments to Settlement Class Members, and (g) otherwise assisting with implementation and administration of the Stipulation terms. *Id.*, §4.5.

The actual costs incurred by the Settlement Administrator for effectuating Class Notice and other administrative costs for administering the Settlement will be paid from the Settlement Fund. Agreement §2.3(a). Heffler estimates that the cost of notice and administration will be approximately $173,000, depending on the number of claims made. Finegan Dec., ¶15.

#### b.   The Proposed Class Notice

The Class Notice shall consist of (1) digital advertisements (banner ads) to be distributed over desktop and mobile devices, via such websites as Google Ads,

---

[3] This application will be filed no later than 21 days before the deadline for Class Members to object or opt out. Ex. C, ¶27.

[4] Heffler's significant experience and qualifications are described in Declaration of Jeanne C. Finegan, APR Concerning Class Notification, filed concurrently herewith (the "Finegan Dec.") at ¶¶5-12, Ex. A.

Facebook, Instagram, TikTok and through social influencers with beauty and personal care content whose followers are target customers of the Mask; (2) a press release issued through PR Newswire's US1 Newslines; (3) a dedicated website allowing Settlement Class Members to obtain additional information and access key documents, including the Long Form Notice (Ex. B), the Claim Form, the Agreement, and the Preliminary Approval Order. *See* Finegan. Dec., ¶14.[5]

Additionally, to fulfill the CLRA's publication requirement, the Short Form Notice will also appear as 1/8 page notices once a week for four consecutive weeks in Orange County Register, which boasts an average daily circulation of approximately 81,350. *Id.*, ¶24; see also Cal. Civ. C. 1781(d).[6] Heffler will also give notice to the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 (CAFA). *See* CAFA, 28 U.S.C. §1715(b)(1)-(8).

Class Members will have at least 120 days from the last day of the Notice Date to object, make a claim, or opt-out. *See* Ex. C, ¶¶17, 21, 24. Class Members will be able to complete the Claim Form (Ex. A) and submit it online on the Settlement Website, or request that a paper copy be mailed so it can be completed and mailed to Heffler's designated P.O. Box. Finegan Dec. at ¶¶31, 32; Agreement, Exs. A, B.

## IV.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

### 1.   The Class Action Settlement Process

The Ninth Circuit maintains "a strong judicial policy" favoring class action settlements. *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.),* 2019 U.S. App. LEXIS 17047, at \*14 (9th Cir. 2019) (quoting *Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir. 2013)); *see also Class Plaintiffs v. City of Seattle,* 955 F.3d 1268, 1276

---

[5] Heffler and the Parties are working on the internet ads and content of the press release; they will be submitted to the Court sufficiently in advance of the hearing.

[6] Though Civil Code section 1781 does not appear to govern nationwide consumer class actions, it is being provided in an abundance of caution. *See Choi v. Mario Bodusco Skin Care, Inc.,* 248 Cal. App. 4th 292 (2016) (affirming final approval and rejecting objector's contention notice failed to comport with the Cal. Civ. 1781(d)).

(9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Nevertheless, a decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp.,* 213 F. 3d 454, 458 (9th Cir. 2000); Fed. R. Civ. P. 23(e).

Approval is a three-step process: (1) preliminary approval of the proposed settlement; (2) dissemination of the notice of the settlement to class members, providing for, among other things, a period for potential objectors and dissenters to raise challenges to the settlement's reasonableness; and (3) a formal fairness and final settlement approval hearing. *Manual for Complex Litigation (Fourth)* (2004) (the "Manual") at § 21.63; *see, e.g. Churchill Vill., L.L.C. v. GE,* 361 F. 3d 566, 575 (9th Cir. 2004) (discussing the district court's use of a preliminary approval order).

### 2.    The Standard for Preliminary Approval

The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009). The Court takes a "closer look" at the ultimate question of fairness, reasonableness and adequacy of the settlement at final approval. *Id.*

At this stage, therefore, a court may grant preliminary approval and direct notice to the class if the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016)); *see also Aikins v. Cisneros*, 2019 U.S. Dist. LEXIS 131939, *18 (C.D. Cal. Jul. 31, 2019) (granting preliminary approval); *Ahmed v. HSBC Bank USA,* 2019 U.S. Dist. LEXIS 104401, *12 (C.D. June 21, 2019) (same). Whether a settlement

is fair, adequate, and reasonable is considered as a whole. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Thus, to preliminarily assess a settlement, a court should review both the substance of the deal and the process used to arrive at the settlement. *See In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080 ("Preliminary approval . . . has a both procedural and substantive requirement"). A "full fairness analysis is unnecessary" at preliminary approval. *Aikins*, 2019 U.S. Dist. LEXIS 131939, *17.

In preliminarily evaluating the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations. *See, e.g., Vind v. Prudential Ins. Co. of Am.,* 2011 WL 13183043, at *1 (C.D. Cal. Jan. 10, 2011) (noting that the "parties engaged in arm's length settlement negotiations taking place over a period of months before reaching the proposed settlement" in granting preliminary settlement approval). Here, the negotiations were conducted by experienced class action counsel, with significant involvement by mediator Jill Sperber. Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon their opinion. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

Accordingly, the substantive quality of the Agreement and the procedurally fair manner in which it was reached weigh in favor of approval.

## V.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

### 1.   Procedural Concerns.

#### a.   The Settlement Was Negotiated at Arms' Length.

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez,* 563 F.3d at 965. Protracted settlement negotiations with the assistance of a mediator also weigh highly in favor of granting preliminary approval. *See In re Bluetooth*

*Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) ("presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness").

Here, Class Counsel obtained and reviewed relevant information provided by Defendant about the sales of the Product. On November 11, 2020, the parties engaged in a full-day mediation with Ms. Sperber. Wade Decl. at ¶¶6, 18-20; Kopel Dec., ¶¶8, 9-11. It is an understatement to say that the parties benefited from the assistance of Ms. Sperber, who played a crucial role in conducting the negotiations.

### 2.    Substantive Concerns.

Relatively recent amendments to Rule 23 direct courts to consider the following "substantive" factors: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed R. Civ. P. 23(e)(2)(C). Courts must also consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Courts should also apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018).[7] A district court "may consider some or all of the following factors" when assessing whether a class action settlement is fair, reasonable and adequate: (1) strength of the plaintiffs' case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) presence of a government

---

[7] In the notes accompanying these amendments, the Advisory Committee explains that adding these specific factors to Rule 23(e)(2) was not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*.

participant; and (8) reaction of the class members to the settlement. *See Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 963 (9th Cir. 2009) (citing *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003), *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003), *Hanlon*, 150 F.3d at 1026,[8] *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982).

As set forth below, the settlement is well within the range of what the Court might finally approve.

### a.   The Settlement Satisfies Rule 23(e)(2)

#### i.   Strength of Plaintiffs' Case and Risk of Continuing Litigation

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial," *Hanlon,*150 F. 3d at 1026. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego,* 213 F. 3d at 458-59; *Torrisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (approving settlement based on uncertainty of claims and avoidance of summary judgment); *Officers for,* 688 F.2d at 625 (approving settlement based in part on possibility judgment after trial, when discounted, might not reward members for their patience and delay). Where counsel are well-qualified to represent the class in a

---

[8] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

settlement based on their class action experience and familiarity with the strengths and weaknesses of the action, "[c]ounsel's opinion is accorded considerable weight." *Carter v. Anderson Merchandisers, LP,* No. EDCV 07-0025-VAP, 2010 U.S. Dist. LEXIS 55629, at *8 (C.D. Cal. May 11, 2010)). *See also Louie v. Kaiser Found. Health Plan, Inc.,* No. 08-cv-0795, 2008 U.S. Dist. LEXIS 78314, at *6 (S.D. Cal. Oct. 6, 2008) ("counsel's extensive investigation, discovery, and research weighs in favor of preliminary settlement approval").

In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in class actions involving false advertising and consumer fraud, weighed the risks inherent in establishing all the elements of their claims at trial. Wade Decl. at ¶¶18-20; Kopel Dec., ¶¶9-11. They also considered the expense of retaining experts, giving class notice if they were successful in certifying a class, and a trial (and likely duration of post-trial motions and appeals). Plaintiffs agreed to settle this litigation on these terms based on their careful investigation and evaluation of the facts and law relating to Plaintiffs' allegations and Yes To's defenses (including the Product recall and cessation of distribution). *Id.*

### ii. The Method for Distributing Monetary Relief is Effective and Efficient.

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). As explained by the 2018 Advisory Committee Notes to Rule 23, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

The proposed method of processing claims here strikes that delicate balance. Settlement Class Members who seek monetary relief under the Settlement need only submit a relatively simple claim form. Ex. A. The one-page Claim Form only requires Settlement Class Members to provide their contact information and basic information about their Mask purchases, without proof of purchase. *Id.* Thus, the Claim Form is

clear, precise and simple for Settlement Class Members to complete.

Settlement Class Members will have the option of making claims online or by printing the Claim Form and mailing it to the Settlement Administrator. Ex. B at ¶7. Payments to Class Members who submitted valid Claim Forms will be disbursed directly to eligible claimants. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable.

### iii.    The Proposed Attorneys' Fees are Fair.

The Agreement provides that Class Counsel may apply for an award of attorneys' fees of no more than 33% of the Settlement Fund ($250,000). Agreement §3.1. *See, e.g., Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 448-455 (E.D. Cal. 2013) (awarding fees equal to one-third of the common fund in class action settlement and collecting cases). The Agreement also provides that Class Counsel may apply for an award of litigation expenses, which are estimated to be $5,483.14. Agreement §3.1; Wade Dec., ¶¶7-8; Kopel Dec., ¶12. Such requests have frequently been granted in class actions in this Circuit. Class Members, and the Court, will have an opportunity to review the application for an award of fees and expenses request.

The timing for payment of the Fee and Expense Award under the Agreement, if approved, is fair and reasonable. Specifically, such fees, costs, and expenses, if approved by the Court, will be paid within 30 days following the District Court's fee award, which under no circumstances will be prior to the Settlement Approval order and Final Judgment. *Id.* §3.1. The payment is also subject to Class Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (Ex. F). Moreover, if the Final Approval Order and Final Judgment or any part of it is vacated, overturned, reversed, or rendered void or unenforceable as a result of an appeal, or if the Stipulation is terminated for any reason, Class Counsel must repay the full amount of the Fee and Expense Award. *Id.* Accordingly, Class Counsel will only get paid if the Settlement is fully finalized, which is fair to the Settlement Class.

### iv.   There Are No Supplemental Agreements to be Identified Under Rule 23(e)(3).

Rule 23(e) requires that the parties identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The only agreement made in connection with the proposed Settlement is the Stipulation of Settlement, which is being concurrently filed, and has been summarized in section III above.

### v.   Class Members Are Treated Equally.

The 2018 Advisory Committee Notes to Rule 23 explain that this factor concerns "inequitable treatment of some class members vis-à-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* None of those concerns are present here.

Each member of the Class is treated in the same manner with respect to the claims they are releasing (those "relating in any way to the purchase or use" of the Mask, including the "allegations made in the Action") and their eligibility for an award. Under the Agreement, each Class Member can submit a claim for $3 per mask, regardless of the amount actually paid and without providing any proof of purchase. Agreement §2.4(a), §2.5, §6.1. Claims may increase or decrease *pro rata*, which will ensure all Settlement Class Members are treated equally if there is insufficient or an overage of Settlement Funds after the other expenses are paid. *Id.*, §2.4(a), §2.7. Overall, this approach provides claimants the ability to obtain a payment commensurate with their potential losses, as compared to other Class Members. This structure is fully in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."

The Settlement, which allows Plaintiffs to apply for service awards of up to $5,000 each, does not improperly grant them preferential treatment. Rather, it is an appropriate amount to compensate them for their time and dedication to the case, as

well as for the risks they undertook in bringing this Action. *See, eg.,* ECF Nos. 85, 143, 152. *See also Ahmed v. HSBC Bank USA,* No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, *34 (C.D. Cal. Jun. 21, 2019) (finding $5,000 incentive award "presumptively reasonable") (citing *In re Online DVD-Rental,* 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding $5,000 incentive awards that were roughly 417 times larger).

> **b.   The Ninth Circuit's Factors Weigh in Favor of Preliminary Approval.**
>
> **i.   Strength of Plaintiffs' Case and Specific Risks of This Litigation**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Plaintiffs believe that they could prove to a jury that Yes To engaged in deceptive conduct in connection with the marketing, packaging, and sale of the Product.  But Plaintiffs also understand that proceeding to trial poses serious risks.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Although Plaintiffs and Class Counsel have confidence in their claims, a favorable outcome is not assured. Plaintiffs and Class Counsel also recognize that they will face risks at class certification, summary judgment, and trial. Defendant vigorously

denies Plaintiffs' allegations, asserts that individual issues predominate such that class certification would be improper (other than for purposes of effectuating this Settlement), and believes its voluntary recall was sufficient. *See* Dkt. Nos. 25, 30. In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that Plaintiffs would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation. Wade Dec. ¶18-20; Kopel Dec. ¶9-11.

The Settlement also abrogates the risks that might prevent them from obtaining relief.  Since the risks of proceeding to trial are substantial, the settlement warrants preliminary approval.  *See e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'" (citations omitted)).  Here, the Settlement eliminates these risks by ensuring class members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery … at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).  This avoidance of risks is especially persuasive where, as here, Plaintiffs have secured nearly full refunds for up to six Masks through settlement. It is hard to imagine obtaining a recovery greater than this at trial.

### ii.    The Settlement Amount is More Than Fair

Under the Settlement, Defendant will pay $750,000 into a Settlement Fund for the benefit of the Settlement Class.  Agreement, §2.1. Class Members who submit valid claims may recover $3 for each Mask he or she purchased or used, up to a maximum of six (6) Masks. *Id.*, §2.4(a). No proof of purchase is required. *Id.*, §2.5.  Payment will

be adjusted based on the number of claims submitted and the portion of the Settlement Fund available for distribution.  This structure will ensure total exhaustion of the Settlement Fund, with every penny going directly to class members (after distribution of costs and fees).  *Id.*, §2.7.

The value of the Settlement Fund correlates closely to the approximate total sales of the Product in the United States (less than $735,000) and the small potential class size. The individual amount available under the Settlement ($3 per mask) is also parallel to the retail price of the Product (less than approximately $4). Thus, the settlement is fair, reasonable, and adequate given the risks associated with attempting to establish and collect on claims through litigation and appeal, the settlement should be presumed to be in the "reasonable range of settlement."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

### iii.    The Extent of Discovery and Status of Proceedings

The Court must also evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Class Counsel possessed all information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the settlement at arms' length and with the assistance of a neutral mediator. Wade Dec., ¶19; Kopel Dec., ¶9. They therefore had sufficient information to make an informed decision about the merits of this case as compared to the benefit provided by the proposed settlement.  *See supra* § II. Additionally, substantial settlement negotiations have taken place between the Parties. The Settlement is plainly the result of fully-informed negotiations.

### iv.    Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Plaintiffs' counsel's evaluation of the Settlement is appropriate

because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378).

Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Wade Dec., ¶¶9-17, Ex. 2; Kopel Dec., ¶13. (describing Class Counsel's experience). Based on their collective experience, Class Counsel concluded that the Stipulation of Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

## VI.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. A court must determine whether the putative settlement class satisfies the requirements for class certification under Rule 23. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

### A.   Numerosity

A proposed class must be so numerous that joinder of all members individually is impractical. Fed. R. Civ. P. 23(a)(1). Courts have found that the numerosity requirement "has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Berry v. Baca*,

No. CV 01-02069 DDP, 2005 WL 1030248, at *3 (C.D. Cal. May 2, 2005) (citing *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998)).  Here, Defendant sold hundreds of thousands of units, thus this threshold has been greatly exceeded.

## B.   Commonality and Predominance

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class."  Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because the commonality requirement may be satisfied by a single common issue, it is easily met. H. Newberg & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

Likewise, under Rule 23(b)(3), questions common to the class members must predominate over questions affecting only individual class members.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts consider that a trial will be unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions.  Indeed, all of the Class Members' claims arise from a common nucleus of fact and are based on the same legal theories.  Plaintiffs allege that "Defendant's conduct towards the members of the Class and Subclasses is identical. Defendant uniformly, through retail locations, supplied and sold the Product to the Class and Subclasses.  Plaintiffs share a common interest with all members of the putative Class and Subclasses in the objectives of the action and the relief sought.   Because the Product packaging and Defendant's marketing and deceptive conduct was uniform, the material elements of Plaintiffs' claims and those of class members are subject to

common proof." CCAC ¶¶ 67-69. Plaintiffs' CCAC lists 16 common questions of law or fact. *Id*. ¶ 70. Accordingly, commonality is satisfied by the existence of these common factual issues. *See Arnold v. United Artists Theatre Circuit, Inc*., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, these common question of law and fact predominate over any individual questions, including (in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27)), *inter alia*: (a) whether the Unicorn Mask is defective; (b) whether the Unicorn Mask causes severe skin irritation, redness, and burning; (c) whether Defendant knew or should have known about the defect in the Unicorn Mask and, if so, how long Defendant knew about the defect in the Unicorn Mask; (d) whether Defendant had a duty to disclose the defect to consumers; (e) whether Defendant breached its duty to disclose; (f) whether Defendant made material misrepresentations and/or omissions concerning the standard, quality or grade of the Unicorn Mask; and (g) Whether Plaintiffs and the Class are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief. CCAC, ¶70. Because these questions apply to the claims at issue and are applicable to a nationwide class, common questions of law predominate.

## C. Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Hanlon*, 150 F.3d at 1020. Here, "Plaintiffs' claims are typical of the Class and Subclass members' claims because they purchased the Product and were exposed to Defendant's conduct." CCAC ¶ 71. Plaintiffs' claims are thus typical of the class because Plaintiffs' theory of the case applies equally to Plaintiffs and the Settlement Class Members.

## D. Adequacy

Resolution of two questions determines legal adequacy: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously

on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Plaintiffs are adequate representatives of the settlement class because they have no conflicts of interest, have remained committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them and the Settlement Class.  Plaintiffs have continued to perform their duties as class representatives since the Court granted the motion for consolidation.  *See* Wade Decl. ¶21; Kopel Dec., ¶14.  For example, Plaintiffs consulted with their counsel concerning the proposed settlement to ensure that it was in the best interest of the Settlement Class Members.  *Id.*  Thus, Plaintiffs have adequately represented the interests of the Settlement Class Members, and should be appointed Class Representatives of the Settlement Class.

Class Counsel have also negotiated vigorously on their clients' behalf and eventually reached a settlement that provides potential full refunds to Class Members.  Therefore, Class Counsel should be appointed to represent the interests of the Settlement Class Members.

### E.    Superiority

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Here, joinder of all Settlement Class Members would create extreme hardship and inconvenience for Class Members as they reside throughout the United States.  CCAC ¶ 77.  Further, individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake, and as a result, individual class members may have no interest in prosecuting and controlling separate actions.  *Id.*  There are no known individual class members who are interested in individually controlling the prosecution of separate actions.  *Id.*  The interests of justice will be well served by resolving the common disputes of class members in one forum.  *Id.*  Individual suits would not be cost effective or economically maintainable as individual action.  *Id.*  Moreover, if this case were to be litigated further, Plaintiff would

take the strong position that the purported recall was insufficient and would not preclude class treatment. Thus, class treatment for settlement purposes is proper.

As a result, each of the requirements of Rule 23 are met, and the Court should conditionally certify the Settlement Class, for settlement purposes.

## VII.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances[.]" The notice may be "electronic means, or other appropriate means." *Id.* The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). When a court is presented with a classwide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice. *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").

With respect to the contents of settlement notice, to satisfy Rule 23(e)(1) the notice must "'present information about a proposed settlement neutrally, simply, and understandably.'" *In re Hyundai,* 926 F.3d at 567 (quoting *Rodriguez,* 563 F.3d at 962). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Id.* (citing *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted)). Class Notice and the Notice Plan constitute sufficient notice to the Settlement Class, satisfy Rule 23, and comply with the constitutional requirements of due process.

Each of the proposed forms of notice, including the Long Form (Ex. B) and Short Form (Ex. F) notices, meet all of these requirements, as detailed in the following table:

| Requirement | Long Form | Short Form |
|---|---|---|
| "The nature of the action."  Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 1 and 2. | Col. 1, ¶ 1. |
| "The definition of the class certified."  Fed. R. Civ. P. 23(c)(2)(B)(ii). | Third introductory bullet; Q&A no. 5. | Col. 1, ¶ 2. |
| "The class claims, issues, or defenses."  Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 1, 2, 3, and 4. | Col. 1, ¶ 1. |
| "That a class member may enter an appearance through an attorney if the member so desires."  Fed. R. Civ. P. 23(c)(2)(B)(iv). | Table of "Your Legal Rights and Options;" Q&A no. 13, 14, and 19. | Col. 2, ¶ 4. |
| "That the court will exclude from the class any member who requests exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options;" Q&A nos. 3 and 12. | Col. 2, ¶ 3. |
| "The time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(vi). | Table of "Your Legal Rights and Options;" Q&A no. 8. | Col. 2, ¶ 3. |
| "The binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options;" Q&A nos. 9, 10, 12, 15, and 20. | Col. 1, ¶ 5. |

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the proposed notices are based on the Federal Judicial Center's guidelines and model forms for notice of pendency of a class action. *See* www.fjc.gov. Based on FJC's guidelines, the Plaintiffs and Class Counsel believe that each of the proposed class notices, which are very closely based on FJC models, with the format and content adopted almost verbatim in most instances, are accurate, balanced, and comprehensible. *Id.*   The notice documents will inform Class Members of their eligibility, options for opting out or objecting to the settlement, the date and location of the Final Approval Hearing, the salient terms of the Agreement, and how to obtain additional information. *See* Exs. B and F. They also provide neutral and objective information about the nature of the Settlement. *Id.*  The notice documents also explain

that Class Members must complete and return a Claim Form to receive payment under the Agreement. *Id.*

This proposed method of giving notice will be developed by Heffler Claims Group in collaboration with Class Counsel, with the objective of ensuring broad distribution of notice to Class Members in the most simple and expedient manner. *See, e.g.*, 4 Newberg on Class Actions § 12:35 (5th ed.) ("[A] court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible."). Because the masks were sold at retail, Defendant does not possess information to identify and contact every Settlement Class Member, and such information cannot be otherwise obtained through reasonable efforts for purposes of giving notice. The Notice Plan is designed to reach as many Settlement Class Members as possible and encourage them to claim compensation under the Settlement. *See* Finegan Dec. at ¶13, 16-20, 23, 33.

## VIII.  PROPOSED SCHEDULE OF EVENTS

Attached as Appendix A is a proposed calendar of the relevant deadlines based on a March 12, 2021 Preliminary Approval date. If approval is not granted that day Class Counsel will propose revised dates.

## IX.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) approve the Agreement; (2) provisionally certify the Settlement Class for the purposes of settlement; (3) appoint Plaintiffs as Class Representatives; (4) appoint undersigned counsel as Class Counsel; (5) appoint Heffler as the Settlement Administrator; (6) approve the proposed Notice Plan; (7) enter the [Proposed] Order Preliminarily Approving Class Action Settlement, submitted herewith; and, (8) schedule a Final Approval Hearing and related deadlines.

//

//

//

Dated:  January 28, 2021

**MILSTEIN, JACKSON, FAIRCHILD, & WADE, LLP**

By: _/s/ *Gillian L. Wade*_
       Gillian L. Wade

Gillian L. Wade (State Bar. No. 229124)
Sara D. Avila (State Bar No. 26321)
Marc A. Castaneda (State Bar No. 299001)

**GOLOMB & HONIK**
Kenneth Grunfeld (*pro hac vice*)

**BURSOR & FISHER, P.A.**
L. Timothy Fisher, Esq. (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor, Esq. (State Bar No. 276006)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice* forthcoming) 888
Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorneys for Plaintiffs and the Proposed Class*

**Appendix A**

The following proposed deadlines for notice, claims and Final Approval-related deadlines are based on a February 26, 2021 Preliminary Approval date:

| Deadline | Proposed Deadline |
|---|---|
| Deadline for Claim Administrator to complete publication of the Publication Notice ("Notice Date") | April 12, 2021 |
| Deadline to File Motion for Final Approval and Applications for Service Award, Attorneys' Fees and Costs | July 20, 2021 |
| Deadline to Opt out, Submit Claims or Object to Settlement | August 10, 2021 |
| Deadline to file Reply in Support of Motion for Final Approval (Optional) | September 10, 2021 |
| Final Approval Hearing | September 24, 2021 at 10:00 a.m. |