**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 26321
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10990 Wilshire Boulevard 8th Floor
Los Angeles, CA 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiffs and the Class*
[*Additional Plaintiffs' Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMANI WHITFIELD, SHAWANNA McCOY, and JOSEY PARSONS AUGHTMAN, on behalf of themselves and all others similarly situated, <br><br>             Plaintiffs, <br><br>     v. <br><br> YES TO, INC., <br><br>             Defendant | Case No. 2:20-cv-00763-AB-AS <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:  September 24, 2021 <br> Time:  10:00 a.m. <br> Courtroom 7B <br><br> Hon. André Birotte, Jr. |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 24, 2021 at 10:00 a.m., or on such date as may be specified by the Court, in the courtroom of the Honorable André Birotte, Jr., United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 7B, Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman ("Plaintiffs") on behalf of themselves and the class, will and hereby do move for an order, pursuant to Fed. R. Civ. P. Rule 23, granting final approval of the class action settlement that was preliminarily approved on March 1, 2021 (ECF 47).

This motion will be heard concurrent with Plaintiffs' Motion for Attorneys' Fees and Costs and Service Award, which will be separately filed.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities in support thereof; the Amended Stipulation of Settlement (previously filed on January 28, 2021 at ECF 31-1); the Order Granting Preliminary Approval (ECF 41-4); the Declarations of Class Counsel (Gillian L. Wade, and Yitzchak Kopel, Kenneth Grunfeld), Plaintiffs (Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtmant), and Scott Fenwick of Kroll (formerly Heffler), filed concurrently filed herewith in support of this Motion; the concurrently-filed Motion for Attorneys' Fees and Costs and Service Awards; and, all of the papers and pleadings on file in this action, and upon such other and further evidence as the Court may be presented at the time of the hearing, including oral argument.

Dated: June 8, 2021

Respectfully submitted,

Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

**GOLOMB & HONIK**
Kenneth Grunfeld (*pro hac vice*)

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)

888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorneys for Plaintiffs and the Class*

Motion for Final Approval
Case No. 2:20-cv-00763-AB-AS

# **TABLE OF CONTENTS**

I.    Introduction.................................................................................1

II.    Background.................................................................................3

    A.    Summary of Allegations and Defenses...................................3

    B.    The Litigation........................................................................4

    C.    Settlement Negotiations and Preliminary Approval ...............5

III.    Terms of the Settlement...............................................................5

    A.    The Settlement Class Definition ............................................5

    B.    Benefits to Class Members ....................................................6

        1.    Reimbursement for Masks Purchased...............................6

        2.    Payment of Incentive Awards and Attorneys' Fees and Costs........6

        3.    The Notice Program and Settlement Administration......................7

    C.    The Court Granted Preliminary Approval of the Settlement and Notice to the Settlement Class Was Disseminated .................8

IV.    The Proposed Settlement Warrants Final Approval........................9

    A.    The Settlement Class Should Remain Certified .....................9

    B.    Class Members Received Adequate Notice.............................9

    C.    The Settlement is Fair, Reasonable and Adequate ...............10

        1.    The Settlement Satisfies Fed. R. Civ. P. Rule 23(e)(2) ................12

            a.    Plaintiffs and Class Counsel have adequately represented the Class.......................................................................12

            b.    The settlement was negotiated at arms' length..........................12

c.    The settlement relief is adequate, considering the costs, risks, and delay of trial and appeal ...........................................13

i.    Plaintiffs' case faced significant barriers .......................14

ii.    The risk, expense, complexity, and duration of continued litigation favor final approval .......................14

iii.    The settlement amount is nearly a full refund, which is more than fair, reasonable, and adequate .......................16

d.    The methods for processing claims and distributing monetary relief are effective and adequate.............................17

e.    The terms of the proposed award of attorneys' fees is fair .....18

f.    There are no Rule 23(e)(3) supplemental agreements to identify .....................................................................19

g.    Class Members are treated equitably relative to each other......................................................................19

2.    The Remaining Ninth Circuit Factors Weigh in Favor of Preliminary Approval...................................................20

a.    Class Counsel had ample information to make an informed decision ...................................................................20

b.    Class Counsel believe the settlement is in the best interests of the Class..................................................................21

c.    No government entity has opposed the settlement..................21

d.    The Class' favorable reaction to the settlement supports final approval ...................................................................22

V.    Conclusion ........................................................................22

Motion for Final Approval
Case No. 2:20-cv-00763-AB-AS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ahmed v. HSBC Bank USA*  (C.D. Cal. Jun. 21, 2019)
    2019 U.S. Dist. LEXIS 104401 ........................................................20

*Barbosa v. Cargill Meat Solutions Corp.* (E.D. Cal. 2013)
    297 F.R.D. 431 ..........................................................................18

*Carter v. Anderson Merchandisers, LP* (C.D. Cal. May 11, 2010)
    2010 U.S. Dist. LEXIS 55629 .........................................................21

*Churchill VIll., L.L.C. v. Gen. Elec.* (9th Cir. 2004)
    361 F.3d 566 .............................................................................12

*Curtis-Bauer v. Morgan Stanley & Co., Inc.* (N.D. Cal. Oct. 22, 2008)
    2008 WL 4667090 .......................................................................14

*Eisen v. Carlisle & Jacqueline* (1974)
    417 U.S. 156 ...............................................................................9

*Elkies v. Johnson & Johnson Services, Inc., et al.* (C.D. Cal. 2020)
    2:17-cv-07320 ...........................................................................17

*Fulford v. Logitech, Inc.* (N.D. Cal. Mar. 5, 2010)
    2010 U.S. Dist. LEXIS 29042 .........................................................15

*Garner v. State Farm. Mut. Auto. Ins. Co.* (N.D. Cal. Apr. 22, 2010)
    2010 WL 1687832 .......................................................................17

*Gaudin v. Saxon Mortg. Servs., Inc.* (N.D. Cal. Nov. 23, 2015)
    2015 U.S. Dist. LEXIS 159020 ........................................................17

*Gulf Oil Co. v. Bernard* (1981)
    452 U.S. 89 ...............................................................................10

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
    F.3d 1011 ...............................................................................9, 10

*Hefler v. Wells Fargo & Co.* (N.D. Cal. Dec. 17, 2018)
    2018 U.S. Dist. LEXIS 213045 ........................................................11

*Hendricks v. Starkist Co.* (N.D. Cal. Sep. 29, 2016)
    2016 U.S. Dist. LEXIS 134872 ........................................................17

*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011)
    654 F.3d 935 ........................................................12

*In re Lenovo Adware Litig.* (April 24, 2019)
    2019 U.S. Dist. LEXIS 69797........................................................9, 20, 22

*In re Linkedin User Privacy Litig.*
    309 F.R.D. 589........................................................22

*In re Mego Fin. Corp. Sec. Litig.* (9th Cir. 2000)
    213 F.3d 454........................................................16

*In re Omnivision Techs., Inc.* (N.D. Cal. 2008)
    559 F. Supp. 2d 1036........................................................13

*In re Online DVD-Rental Antitrust Litig.* (9th Cir. 2015)
    779 F.3d 934........................................................10, 20

*In re Pac. Enters. Sec. Litig.*
    47 F.3d 378 ........................................................13

*Larsen v. Trader Joe's Co.* (N.D. Cal. July 11, 2014)
    2014 U.S. Dist. LEXIS 95538 ........................................................22

*Lewis v. Starbucks Corp.* (E.D. Cal. Sept. 11, 2008)
    2008 U.S. Dist. LEXIS 83192 ........................................................20

*Linney v. Cellular Alaska Partnership* (9th Cir. 1998)
    151 F.3d 1234 ........................................................20

*McDonald v. CP OpCo, LLC* (N.D. Cal. May 13, 2019)
    U.S. Dist. LEXIS 80501 ........................................................16

*Molski v. Gleich* (9th Cir. 2003)
    318 F.3d 937 .............................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004)
    221 F.R.D. 523 .......................................................................15, 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.* (9th Cir. 1982)
    688 F.2d 615 .....................................................................12, 13, 16

*Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009)
    563 F. 3d 948................................................11, 12, 13, 14, 17

*Silber v. Mabon* (9th Cir. 1994)
    18 F.3d 1454 .............................................................................10

*Staton v. Boeing Co.* (9th Cir. 2003)
    327 F.3d 938 .............................................................................12

*Torrisi v. Tuscon Electric Power Co.* (9th Cir. 1993)
    8 F.3d 1370 ...............................................................................13

## STATE CASES

*Choi v. Mario Bodusco Skin Care, Inc.* (2016)
    248 Cal. App. 4th 292 ............................................................8

## FEDERAL STATUTES

28 U.S.C. §1715 .............................................................................9, 22

Fed. R. Civ. P. 23 .......................................................................*passim*

## STATE STATUTES

Cal. Civ. 1781............................................................................8

73 P.S. § 201............................................................................4

## I.    Introduction

This is a consumer class action concerning Yes To's ("Defendant") "grapefruit Vitamin C-Boosting Unicorn Paper Mask" (the "Product" or "Mask"), which was available at big-box retailers and pharmacies throughout California and the United States. Defendant marketed the beauty Mask to young women and girls as being able to remedy "dull & uneven skin" and as capable of "help[ing] reveal a bright, glowing, naturally more even-looking complexion. Your skin will look great in selfies with this mask on AND off!" But contrary to these claims, the Mask caused Plaintiffs and other consumers to suffer from facial skin irritation, redness, and burning after using the Mask. Following a flood of complaints, Defendant commenced a voluntary 'recall' of the Mask and stopped further distribution of the Product, though some could still be found on some store shelves and websites through at least the end of 2020. After obtaining relevant documents and information related to the Product and its sales, Defendant and Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons-Aughtman ("Plaintiffs"), through undersigned counsel, negotiated at arms-length to achieve a fair, reasonable, and adequate class settlement with the help of a neutral mediator, Jill Sperber of Judicate West.

Following briefing and hearing on the proposed Settlement, this Court granted preliminary approval of the proposed Settlement. ECF 48 ("Order"). The proposed Settlement consists solely of monetary relief. Specifically, in exchange for a nationwide release of claims, Defendant will make a non-reversionary $750,000 cash payment for the benefit of the Class. If approved, this money will be used to pay for the following, in this order: Notice and Other Administrative Costs; the attorneys' fees (up to $250,000) and litigation expenses (estimated to be $6,055.41); Incentive Awards ($15,000 total); and, cash payments for Class Members who submit eligible claims.[1]

---

[1] Unless otherwise specified, all capitalized terms have the same meanings as ascribed in the Stipulation of Settlement (the "Agreement"), which was attached as

With regard to the per-claim amount, the Agreement provides that Settlement Class Members who submit valid claims may recover a reimbursement of $3.00 for each Mask he or she purchased or used, up to a maximum of six (6) Masks. Claims will be paid without requiring proof of purchase. If the amount of cash available for the Settlement Fund is insufficient to pay all valid Settlement Class Member Claims (after payment of any approved Fee and Expense Award, Notice and Other Administrative Costs, and Incentive Awards), individual payment amounts for Claims shall be reduced on a *pro-rata* basis. Similarly, if the total valid Settlement Class Member Claims is less than the available portion of the Settlement Fund, the cash payout for each class member will increase *pro rata*.

This structure will ensure no funds revert back to Defendant. A recovery for up to six Masks without proof of purchase reaches or exceeds the maximum recovery Plaintiffs, or any class member, could expect at trial. Indeed, Plaintiffs have achieved a nearly a complete refund for all sales of the Mask, as approximate aggregate sales for the Mask are almost $735,000. Moreover, the estimated class size is relatively small (approximately 243,000 units were sold at retail) because it was available for a limited duration given Defendant quickly began the process of removing the Mask from stores shelves and ceasing distribution once it became aware of some consumers' adverse reactions to the Mask. There can be no doubt the Settlement is fair, reasonable, and adequate.

The Court-approved Settlement Administrator, Kroll Settlement Administration LLC f/k/a Heffler Claims Group or Heffler Claims Administration LLC ("Kroll"), carried out the Notice Plan, and the deadline to object is June 29, 2021 and the deadline to request exclusion or make a claim is August 13, 2021. No objections or requests for exclusion have been received to date, and claims data will be provided after the claims period ends and Kroll has had an opportunity to process and review

---

Exhibit 1 to the Declaration of Gillian L. Wade filed on January 28, 2021 (ECF 41-1).

claims. Because over a month remains for Class Members to make claims Plaintiffs will provide updated data points in advance of the Final Approval Hearing.

For these reasons and others discussed further below, Plaintiffs respectfully request the Court grant final approval of the proposed class action settlement.

## II.  Background

### A.    Summary of Allegations and Defenses

Yes To marketed the Mask for remediation of "dull & uneven skin" and advertised that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion." ECF 23 (Consolidated Amended Complaint ("CCAC")), ¶ 23. Defendant also claimed: "Your skin will look great in selfies with this mask on AND off!" *Id*. But contrary to these claims, the Mask—which was marketed to target young women and girls—did the opposite. *Id.* Specifically, when the Mask was purchased and subsequently used by unsuspecting customers in accordance with Yes To's instructions for use, it resulted in adverse reactions including severe facial skin irritation, redness, burning, blistering, swelling and pain. *Id.* ¶3.  Each of the Plaintiffs experienced severe skin irritation and burning after using the Mask. *Id.* ¶¶48-55.

Defendant's main defenses pertain to its conduct after consumers began complaining about the mask: Defendant purportedly initiated the process of halting distribution of the Mask and pulling the Mask from store shelves. Id. ¶¶38-44 For example, Defendant's webpage for the Mask has sporadically stated that the product had been "discontinued" due to "reports of skin irritation," and advised purchasers to return the Product or call Yes To directly if it had been used. *Id.*

Based on the data that Defendant provided, approximately 243,000 units were sold at retail, and the approximate revenue for the Mask was nearly $735,000. ECF 41-1 at ¶18. Based on Class Counsel's research, the Mask retailed for less than $4 per unit. *Id.*

**B.      The Litigation**

On January 24, 2020, Plaintiff Imani Whitfield commenced an action entitled *Whitfield v. Yes To, Inc*. (United States District Court, Central District of California, Case No. 2:20-cv-763) (the "Action"), as a proposed class action, asserting claims for breach of express warranty, breach of implied warranty, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*. ("UTPCPL"), fraudulent concealment, fraud, unjust enrichment, and conversion. Plaintiff Whitfield alleged the Mask caused skin irritation and/or burns to her face.

On February 6, 2020, Josey Parsons-Aughtman commenced an action entitled *Aughtman v. Yes To, Inc.* (United States District Court, Central District of California, Case No 2:20-cv-01223), as a proposed class action, asserting similar allegations about the Mask causing her to suffer burns and irritation on her face as a result of using the Mask. The *Aughtman* action alleged claims for Violations of Consumer Legal Remedies Act (CLRA), Violations of False Advertising Law (FAL), Violations of Unfair Competition Law (UCL) 'Unfair' and 'Fraudulent' Prongs, Violations of Unfair Competition Law (UCL) 'Unlawful' Prong, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose.

On February 19, 2020, Plaintiffs Imani Whitfield and Shawanna McCoy filed a First Amended Complaint asserting the same allegations that the Mask caused facial irritation and/or burns, and advanced the same claims, adding additional causes of action for violation of CLRA, UCL, and FAL.  ECF 9.

On March 20, 2020, Plaintiffs Imani Whitfield and Shawanna McCoy filed a Second Amended Complaint asserting the same claims and adding a prayer for damages for the CLRA claim.  ECF 20.

On March 17, 2020, the *Whitfield* action was consolidated with the related *Aughtman* action. ECF 19.  On May 15, 2020, Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman filed the CCAC, asserting the same claims for relief as in the FAC and SAC.  ECF 23.

Defendant answered the CCAC on June 12, 2020, denying liability.  ECF 25. Plaintiffs then propounded formal requests for production of documents.

On September 4, 2020, the Parties filed their Joint Report Rule 26(f) Discovery Plan.  ECF 30.  This was followed shortly on September 10, 2020 by the Court ordering the case to a private mediator.  ECF 32.  The same day, the Court released a scheduling order for the upcoming trial.  ECF 33.

### C.      Settlement Negotiations and Preliminary Approval

Substantial settlement negotiations took place between the Parties. In addition to informal settlement discussions, on November 11, 2020, the Parties remotely attended a video mediation with Jill Sperber Esq. of Judicate West. ECF 41-1 at ¶6; ECF 41-2 at ¶8. After a full day of hard-fought negotiations at mediation, the Parties were able to reach a resolution. *Id*. All settlement discussions were at arms-length. *Id*.

On January 28, 2021, Plaintiffs filed a Motion for Preliminary Approval, and a hearing was held on February 26, 2021. ECF Nos. 41, 42, 46. The Court granted preliminary approval on March 1, 2021. ECF 47. Later that day, the Court issued an Amended Order because the scanned copy of the Order was illegible on one line of the last page. ECF 48 (the "Preliminary Approval Order").

## II.    Terms of the Settlement

### A.      The Settlement Class Definition

For purposes of the Settlement only, the Court granted the parties' request to conditionally certified the following Settlement Class:

> All persons in the United States who purchased or used the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask.

ECF 48 at ¶1. *See also* Agreement §1.20. Excluded from this definition are the Released Persons, any person or entity that purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask for purposes of resale and not for his/her/its own consumption (i.e., "Resellers'"), and any judicial officer assigned to this case. *Id*.

### B.    Benefits to Class Members

Yes To will make a total cash payment of $750,000. Agreement §2.1. If final approval is granted, money from the cash payment (the "Settlement Fund") will be used to pay the following, in this order: (1) the costs to give notice of the settlement and administer claims; (2) reasonable attorneys' fees and litigation expenses approved by the Court; (3) any Court-approved service awards to Plaintiffs; and (4) eligible claims by Settlement Class Members. Agreement §§1.21, 2.3.

### 1.    Reimbursement for Masks Purchased

Settlement Class Members who submit valid claims may recover $3.00 for each Mask he or she purchased or used, up to a maximum of six (6) Masks. *See* Declaration of Scott Fenwick concurrently filed herewith ("Fenwick Dec.") at Ex. A (Long Form Notice); Ex. B (Short Form Notice); Ex. C (Claim Form). Agreement §2.5.[2]

If the amount of cash available for the Settlement Fund is insufficient to pay all valid Settlement Class Member Claims (after payment of the Fee and Expense Award, Notice and Other Administrative Costs, and the Incentive Award), individual payment amounts for Claims shall be reduced on a pro-rata basis. *Id*., Agreement §2.4(a). Similarly, receipt of total valid Settlement Class Member Claims less than the available portion of the Settlement Fund will increase the cash payout for each class member on a pro rata basis. *Id*., §2.7. *See also id.,* §2.3(d).

If any unpaid funds from uncleared settlement checks remain in the Settlement Fund, Class Counsel will make an application to the Court to seek approval for a proposed disposition of the unpaid funds from uncleared checks. *Id*., §2.8. The unpaid funds will remain in the Settlement Fund pending further order of the Court. *Id*.

### 2.    Payment of Incentive Awards and Attorneys' Fees and Costs

The Settlement permits service awards of $5,000 each for Plaintiffs Whitfield,

---

[2] Claimants must attest that "The information on this claim form is true and correct to the best of my knowledge and belief." *See* Fenwick Dec., Ex. C (Claim Form)

McCoy, and Aughtman. Agreement, ¶2.3(c). The Incentive Awards ($15,000 total) will compensate Plaintiffs for their time and effort in the case, and for the risks they undertook in prosecuting the Action. *Id*.

The Settlement also allows Class Counsel to file a motion requesting attorneys' fees of up to one-third of the Settlement Fund ($250,000) plus Class Counsel's relatively low litigation expenses ($6,055.41). *Id*., §3.1. As is fully briefed in Class Counsel's concurrently-filed application for attorneys' fees, costs, and incentive awards (and incorporated herein), the amount requested in fees represents a negative multiplier, and necessary costs were incurred, including filing fees and the cost of mediation.

### 3. The Notice Program and Settlement Administration

The parties selected and the Court appointed Kroll as the Settlement Administrator. Agreement §1.19; ECF 48 at ¶13.[3]   has been responsible for administering administrative tasks necessary to implement the terms of the Agreement, including (a) notifying the appropriate state and federal officials about the settlement, (b) arranging for distribution of Class Notice (in the form approved by the Court) and Claim Forms (in a form ordered by the Court) to Settlement Class Members, (c) handling inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel and Defendant's Counsel, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the settlement, (e) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (f) receiving and processing claims and distributing payments to Settlement Class Members, and (g) otherwise assisting with implementation and administration of the Stipulation terms. *Id*., §4.5.

---

[3] Heffler's (now Kroll) significant experience and qualifications are described in Fenwick declaration filed on January 28, 202. ECF 41-3 at ¶¶5-12, Ex. A.

**C.    The Court Granted Preliminary Approval of the Settlement and Notice to the Settlement Class Was Disseminated.**

The Settlement Class Notice Program was designed to give the best notice practicable, tailored to reach putative settlement Class Members, and reasonably calculated under the circumstances to apprise them of the Settlement and their right to make a claim for money, opt-out, or object. Fenwick Dec. ¶9; ECF 41-3. The straightforward, single page Claim Form is easy for settlement Class Members to understand. *Id.,* Ex. C (Claim Form).

After the Court entered the Preliminary Approval Order, the Parties and  carried out their duties in connection with the administration of the settlement as set forth in the Agreement. (1) digital advertisements (banner ads) which have been distributed over desktop and mobile devices, via such websites as Google Ads, Facebook, Instagram, TikTok and through social influencers with beauty and personal care content whose followers are target customers of the Mask (Exhibit D to Fenwick Dec.); (2) a press release issued through PR Newswire's US1 Newslines (Exhibit E to Fenwick Dec.); (3) a dedicated website allowing Settlement Class Members to obtain additional information and access key documents, including the Long Form Notice, the Claim Form, the Agreement, and the Preliminary Approval Order. Fenwick. Dec., ¶8.

Though Civil Code section 1781 does not appear to govern nationwide consumer class actions, it was provided in an abundance of caution. *See Choi v. Mario Bodusco Skin Care, Inc.*, 248 Cal. App. 4th 292 (2016) (affirming final approval and rejecting objector's contention notice failed to comport with the Cal. Civ. 1781(d)). To fulfill the CLRA's publication requirement, the Short Form Notice appeared as 1/8 page notices once a week for four consecutive weeks in Orange County Register, which boasts an average daily circulation of approximately 81,350. Fenwick Dec., ¶13, Ex. D.[4]  Kroll also notified the appropriate federal and state officials, as required

---

[4] In addition to the Orange County Register, the Short Form Notice appeared twice in the San Jose Mercury News. Fenwick Dec., *Id*.

Motion for Final Approval
Case No. 2:20-cv-00763-AB-AS

by the Class Action Fairness Act of 2005 (CAFA). *See* CAFA, 28 U.S.C. §1715(b)(1)-(8). Fenwick. Dec., ¶18.

Class Members have been able to complete the Claim Form and submit it online on the Settlement Website, or request that a paper copy be mailed so it can be completed and mailed to 's designated P.O. Box. Fenwick Dec. at ¶19. The deadline to object is June 29, 2021 and the deadline to make claims or opt is August 13, 2021.

To date, Kroll has billed $119,468.60 for services and fees in this Action. Fenwick Dec., ¶23.

## IV.    The Proposed Settlement Warrants Final Approval

### A.    The Settlement Class Should Remain Certified.

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the settlement class satisfies the requirements of Fed. R. Civ. P. Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.,* F.3d 1011, 1019-1022 (9th Cir. 1998). The Court found that the proposed Class satisfies the prerequisites for a class action under Fed. R. Civ. P. Rule 23(a) and (b)(3). ECF 48, ¶¶1-4. No facts that would affect these requirements have changed since the Court preliminarily approved the settlement in March 2021, and this motion incorporates by reference the prior analysis as set forth in the Motion for Preliminary Approval, the tentative ruling, and the Preliminary Approval Order. *See* ECF Nos. 46, 48.

Accordingly, the Court need not revisit class certification here, and the Class should remain certified for settlement. *See In re Lenovo Adware Litig.,* No. 15-md-02624-HSG, 2019 U.S. Dist. LEXIS 69797, *20 (April 24, 2019).

### B.    Class Members Received Adequate Notice.

Final approval is proper if the Court determines that notice to the Class was "the best notice that is practicable under the circumstances[.]" Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Rule 23 specifically permits notice to be provided by "electronic means," as it was here. Fed.

R. Civ. P. 23(c)(2)(B). Though Rule 23 mandates that reasonable efforts are made to reach all class members, it does not require that each individual actually receive notice. *See Silber v. Mabon*, 18 F.3d 1454 (9th Cir. 1994) (the standard for class notice is "best practicable" notice, not "actually received" notice). The content of notice "must clearly and concisely state in plain, easily understood language" essential settlement information, such as the nature of the action, the class definition, how and when class members may request exclusion, and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

At preliminary approval, the Court approved the form and method of the proposed notice plan, which called for a multi-prong program by . See ECF 48 at 11-16. The plan included notice via a press release, and a robust online media campaign using targeted Internet banner ads online and beauty influencer outreach which links to the Settlement Website, as well as publication in the newspaper OC Register. *Id.*

The content of the notice documents provided all of the requisite information in plain, easily understood language. Fenwick Dec., Exs. A, B, D (attaching copies of the notice documents). Additionally, the notice plan was successfully implemented as the Court directed.[5] To-date no objections or opt-outs have been received, though those deadlines are June 29 and August 13, respectively. *Id.*

## C.     The Settlement is Fair, Reasonable and Adequate.

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class action settlement "only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015). In evaluating a class action settlement, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Hanlon,* 150 F.3d at 1025 (citing *Gulf Oil Co. v.*

---

[5] An extensive description of the notice plan is included in the Fenwick Declaration.

Motion for Final Approval
Case No. 2:20-cv-00763-AB-AS

*Bernard,* 452 U.S. 89, 100 (1981)). Nevertheless, the District Court does not have the "ability to delete, modify, or substitute certain provisions." *Id.* At 1026. In evaluating a class settlement as fair reasonable and adequate, a court must consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>     (i)    the costs, risks, and delay of trial and appeal;
>     (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). [6]

Courts should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018). A district court "may consider some or all of the following factors" when assessing whether a class action settlement is fair, reasonable and adequate: (1) strength of the plaintiffs' case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) presence of a government participant; and, (8) reaction of the class members to the settlement. *See Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 963 (9th Cir. 2009) (citing *Molski v.*

---

[6] Subsection (e)(2) was added to Rule 23 as part of the 2018 amendments. Fed. R. Civ. P. 23, *Advisory Comm. Notes.* The Advisory Committee explains that adding these specific factors to Rule 23(e)(2) was not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

*Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) and *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003)); *see also Churchill VIll., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (same). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982). As set forth below, the settlement is well within the range of what the Court might finally approve.

### 1.    The Settlement Satisfies Fed. R. Civ. P. Rule 23(e)(2).

#### a.    Plaintiffs and Class Counsel have adequately represented the Class.

The Court found Plaintiffs and their attorneys of record to be adequate in granting preliminary approval, and appointed them as Class Representatives and Class Counsel. ECF 48 at ¶¶3-4. Since the Preliminary Approval Order was entered, Plaintiffs and Class Counsel have fulfilled their duties to carry out the Settlement. Wade Dec., ¶28. For example, Class Counsel has worked with Defendant and  to ensure the Notice Plan is carried out. Thus, Plaintiffs and Class Counsel have demonstrated their adequacy.

#### b.    The settlement was negotiated at arms' length.

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez,* 563 F.3d at 965. Protracted settlement negotiations with the assistance of a mediator also weigh highly in favor of granting preliminary approval. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) ("presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness"). Here, the parties first engaged in arms-length, informal settlement discussions, then participated in a full-day remote video mediation with skilled class action mediator Jill Sperber, Esq. Wade Dec. ¶23. The sometimes-contentious negotiations lasted into the evening, and involved rounds of shuttle diplomacy. *Id.*

After further negotiations regarding the details of the agreement, the parties executed the Agreement on or about January 20, 2021. *Id.* It is an understatement to say the parties' negotiations were arms-length throughout the entire process. *Id.*

### c. The settlement relief is adequate, considering the costs, risks, and delay of trial and appeal.

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this Circuit similarly evaluate the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial. *See, e.g. Rodriguez*, 563 F.3d at 963. Consideration of the *Rodriguez* factors in conjunction of the new Rule 23(e)(2)(C)(i) requirements also support final approval. Generally, the principle risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego,* 213 F. 3d at 458-59; *Torrisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (approval based on uncertainty of claims and avoidance of summary judgment); *Officers for Justice,* 688 F.2d at 625 (approval based in part on possibility judgment after trial, when discounted, might not reward members for their patience and delay).

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Plaintiffs' counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378).

Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* ECF 41-1 at ¶¶9-17, Ex. 2; ECF 41-2 at ¶13. (describing Class Counsel's experience). Based on their collective experience, Class Counsel concluded that the Stipulation of Settlement provides exceptional results for

the class while sparing the class from the uncertainties of continued and protracted litigation.

### i.    Plaintiffs' case faced significant barriers.

In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in class actions involving false advertising and consumer fraud, weighed the risks inherent in establishing all the elements of their claims at class certification and trial. Wade Dec. ¶24.  They also considered the expense of retaining experts, giving class notice if they were successful in certifying a class, and a trial (and likely duration of post-trial motions and appeals). *Id.* Plaintiffs agreed to settle this litigation on these terms based on their careful investigation and evaluation of the facts and law relating to Plaintiffs' allegations and Yes To's defenses (including the Product recall and cessation of distribution). *Id.*

Plaintiffs and Class Counsel are also pragmatic in their awareness that to secure class certification and succeed at trial, Plaintiffs would have needed to overcome Defendant's defenses (including but not limited to Defendant's voluntary 'recall' of the Mask) and prove damages. Wade Dec. ¶25.

### ii.    The risk, expense, complexity, and duration of continued litigation favor final approval.

The second *Rodriguez* factor is closely related to the first and evaluates the risk, expense, and likely duration of further litigation. Plaintiffs believe that they could prove to a jury that Yes To engaged in deceptive conduct in connection with the marketing, packaging, and sale of the Product. But Plaintiffs also understand that proceeding to trial poses serious risks.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Although Plaintiffs and Class Counsel have confidence in their claims, a favorable outcome is not assured. Wade Dec. ¶26. Plaintiffs and Class Counsel also recognize that they would have faced risks at class certification, summary judgment, and trial. Defendant vigorously denies Plaintiffs' allegations, asserts that individual issues predominate such that class certification would be improper (other than for purposes of effectuating this Settlement), and believes its voluntary recall was sufficient. *See* ECF Nos. 25, 30. In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that Plaintiffs would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation. Wade Dec. ¶26.

The Settlement also abrogates the risks that might prevent them from obtaining relief. Since the risks of proceeding to trial are substantial, the settlement warrants preliminary approval. *See e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'" (citations omitted)). Here, the Settlement eliminates these risks by ensuring class members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery ... at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010). This avoidance of risks is especially persuasive where, as here, Plaintiffs have secured nearly full refunds for up to six Masks through settlement. It is hard to imagine obtaining a recovery greater than this at trial. Wade Dec. ¶27.

Even if Plaintiffs were to certify a class and prevail at a class trial, any recovery could be delayed for years by appeal, which could have further delayed and

jeopardized a class' recovery. *Id.* And if a class stayed certified through trial, any adverse judgment would bind the entire class. *Id.* Because such additional litigation would have "in the best-case scenario been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff[s] and the Class going home empty-handed," this factor likewise supports final approval. *See McDonald v. CP OpCo, LLC*, No. 17-cv-04915-HSG, U.S. Dist. LEXIS 80501, at \*13 (N.D. Cal. May 13, 2019).

### iii. The settlement amount is nearly a full refund, which is more than fair, reasonable, and adequate.

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco,* 688 F.2d 615, 628 (9th Cir. 1982). "It is well settled law that a cash settlement amounting only to a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, a comparison of the settlement award (comprised of both monetary and injunctive relief) to the potential damages that might be recovered at trial, given the risks of the litigation, supports the reasonableness of the settlement.

Under the Settlement, Defendant will pay $750,000 into a Settlement Fund for the benefit of the Settlement Class. Agreement, §2.1. Class Members who submit valid claims may recover $3 for each Mask he or she purchased or used, up to a maximum of six (6) Masks. *Id.*, §2.4(a). No proof of purchase is required. *Id.*, §2.5. Payment will be adjusted based on the number of claims submitted and the portion of the Settlement Fund available for distribution. This structure ensures total exhaustion of the Settlement Fund, with every penny going directly to class members (after distribution of costs and fees). *Id.*, §2.7.

The value of the Settlement Fund correlates closely to the approximate total sales of the Product in the United States (less than $735,000) and the small potential class size (approximately 243,000 Masks were sold at retail). The individual amount available under the Settlement ($3 per mask) is also parallel to the retail price of the Product (less than approximately $4). Thus, the settlement is fair, reasonable, and adequate given the risks associated with attempting to establish and collect on claims through litigation and appeal, the settlement should be presumed to be in the "reasonable range of settlement." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Even if the number of claims demands that individual awards are decreased pro rata, the Settlement will still remain well within the range of reasonableness. *See Elkies v. Johnson & Johnson Services, Inc., et al.,* No. 2:17-cv-07320, ECF 175 at 27, ECF 181 (C.D. Cal. 2020) (granting final approval where individual claim awards were reduced *pro rata* from $3.89 per product to $0.73 per product); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872, at *17 (N.D. Cal. Sep. 29, 2016) (*aff'd sub nom. Hendricks v. Ference*, 754 App'x 510 (9th Cir. 2018) (settlement "constituting only a single-digit percentage of the maximum possible exposure" was reasonable); *Gaudin v. Saxon Mortg. Servs., Inc*. No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 159020, at *16-17 (N.D. Cal. Nov. 23, 2015) (final approval warranted where net settlement amount represented 13.6% of plaintiff's estimated maximum recovery at trial).

### d.    The methods for processing claims and distributing monetary relief are effective and adequate.

As explained by the 2018 Advisory Committee Notes to Rule 23, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." The proposed method of

processing claims here strikes that delicate balance.

Class Members who are seeking monetary relief under the Settlement need only submit a relatively simple claim form online. The short Claim Form only required Class Members to provide their contact information and basic information about their purchases of the Products (e.g. number of Masks purchased). *Id*. Proof of purchase is not required. Class Members have the option of making claims online or by printing the Claim Form and mailing it to the Settlement Administrator. Fenwick Dec., ¶19. Payments to Class Members who submitted valid Claim Forms will be disbursed directly to eligible claimants. *Id*. at ¶21.

Both the claims process and method for distributing the monetary portion of the settlement are claimant-friendly, efficient, and support final approval.

### e. The terms of the proposed award of attorneys' fees is fair.

The Agreement provides that Class Counsel may apply for an award of attorneys' fees of "up to one-third of the total $750,000 value of the Settlement Fund." Agreement §3.1. *See, e.g., Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 448-455 (E.D. Cal. 2013) (awarding fees equal to one-third of the common fund in class action settlement and collecting cases). This amount is less than Class Counsel's lodestar, representing a "negative multiplier" or "haircut", of 0.89 over the base lodestar. Declaration of Yitzchak Kopel, concurrently filed herewith., ¶3. The Agreement also provides that Class Counsel may apply for an award of litigation expenses. Agreement §§1.9, 1.22.

The timing for payment of the Fee and Expense Award under the Agreement, if approved, is fair and reasonable. Specifically, such fees, costs, and expenses, if approved by the Court, will be paid within 30 days following the District Court's fee award, which under no circumstances will be prior to the Settlement Approval order and Final Judgment. *Id*. §3.1. Accordingly, Class Counsel will only get paid if the Settlement is fully finalized, which is fair to the Settlement Class.

As detailed in Plaintiffs' concurrently-filed motion (incorporated herein by reference), the proposed attorneys' fees and costs are fair.

### f.    There are no Rule 23(e)(3) supplemental agreements to identify.

Rule 23(e) requires that the parties identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The only agreements made in connection with the proposed settlement are Stipulation of Settlement (ECF 162) and subsequent Amended Stipulation of Settlement (ECF 169).

### g.    Class Members are treated equitably relative to each other.

The 2018 Advisory Committee Notes to Rule 23 explain that this factor concerns "inequitable treatment of some class members vis-à-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* None of those concerns are present here.

Here, each Class Member is treated in the same manner with respect to the claims they are releasing and their eligibility for a monetary award. Each member of the Class is treated in the same manner with respect to the claims they are releasing (those "relating in any way to the purchase or use" of the Mask, including the "allegations made in the Action") and their eligibility for an award. Under the Agreement, each Class Member can submit a claim for $3 per mask, regardless of the amount actually paid and without providing any proof of purchase. Agreement §2.4(a), §2.5, §6.1. Claims may increase or decrease *pro rata*, which will ensure all Settlement Class Members are treated equally if there is insufficient or an overage of Settlement Funds after the other expenses are paid. *Id.*, §2.4(a), §2.7. Overall, this approach provides claimants the ability to obtain a payment commensurate with their potential losses, as compared to other Class Members. This structure is fully in line

with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."

The Settlement, which allows Plaintiffs to apply for service awards of up to $5,000 each, does not improperly grant them preferential treatment. Rather, it is an appropriate amount to compensate them for their time and dedication to the case, as well as for the risks they undertook in bringing this Action. *See, eg.,* ECF Nos. 85, 143, 152. *See also Ahmed v. HSBC Bank USA,* No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, *34 (C.D. Cal. Jun. 21, 2019) (finding $5,000 incentive award "presumptively reasonable") (citing *In re Online DVD-Rental,* 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding $5,000 incentive awards).

### 2.      The Remaining Ninth Circuit Factors Weigh in Favor of Preliminary Approval.

The first four factors articulated by the Ninth Circuit in *Rodriguez,* 563 F. 3d at 963, are intertwined with Rule 23(e)(C)(2)(i)'s new criteria, thus Plaintiffs respectfully refer to the analysis of these issues in section VI(B)(2) above. As set forth below, consideration of the remaining *Rodriguez* factors further support approval.

#### a.      Class Counsel had ample information to make an informed decision.

The fifth *Rodriguez* factor evaluates whether Class Counsel "had sufficient information to make an informed decision about the case." *In re Lenovo Adware Litig.*, 2019 U.S. Dist. LEXIS 69797, at *27. Indeed, before entering into settlement discussions on behalf of a class, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998). *See also Lewis v. Starbucks Corp.,* No. 2:07-CV-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192, at *6 (E.D. Cal. Sept. 11, 2008) (approval proper "as long as discovery allowed the parties to form a clear view of the strengths and weaknesses").

Class Counsel possessed all information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the settlement at arms' length and with the assistance of a neutral mediator. ECF 41-1 at ¶19; ECF 141-2 at ¶9. They therefore had sufficient information to make an informed decision about the merits of this case as compared to the benefit provided by the proposed settlement. Additionally, substantial settlement negotiations have taken place between the Parties. The Settlement is plainly the result of fully-informed negotiations.

### b. Class Counsel believe the settlement is in the best interests of the Class.

The sixth *Rodriguez* factor considers "the experience and views of counsel" in deciding whether to approve a class settlement. *Rodriguez*, 563 F.3d at 967. This consideration reflects the idea that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation. *Id*. Where counsel are well-qualified to represent the class in a settlement based on their class action experience and familiarity with the strengths and weaknesses of the action, "[c]ounsel's opinion is accorded considerable weight." *Carter v. Anderson Merchandisers, LP,* No. EDCV 07-0025-VAP, 2010 U.S. Dist. LEXIS 55629, at *8 (C.D. Cal. May 11, 2010)).

Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* ECF 141-1 at ¶¶9-17, Ex. 2; ECF 141-2 at ¶13. (describing Class Counsel's experience). Based on their collective experience, Class Counsel concluded that the Stipulation of Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

### c. No government entity has opposed the settlement.

The seventh *Rodriguez* factor takes into account the presence of any

government participant and their views on settlement, if any. *Rodriguez*, 563 F.3d at 967. Here, in accordance with the Class Action Fairness Act, 28 U.S.C. §§1715, *et seq*.,  caused notice of the settlement to be sent to the Attorneys General of all states and territories as well as the Attorney General of the United States. Fenwick Dec. ¶18. To date, no government agency has objected to the settlement. *Id*.[7]

### d.    The Class' favorable reaction to the settlement supports final approval.

The final *Rodriguez* factor evaluates how settlement Class Members have reacted to the settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *In re Lenovo Adware Litig*., 2019 U.S. Dist. LEXIS 69797, at *16-17; *see also In re Linkedin User Privacy Litig*., 309 F.R.D. at 589 ("low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval"). Likewise, a high claims rate suggests class member support for the settlement. *See Larsen v. Trader Joe's Co*., No. 11-5188, 2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ("participation rate . . . weighs in favor of finding that the settlement is favorable to the class members").

The claims period ends August 13, and  continues to receive and process claims. Data regarding the number of claims will be submitted in advance of the Final Approval Hearing. Coupled with the absence of any objections to date and zero opt-outs, this factor weighs strongly in favor of final approval.

## V.    Conclusion

Based on the foregoing, the Settlement is fair, reasonable and adequate. Thus, Plaintiff respectfully requests that the Court: (1) grant final approval of the Settlement; (2) finally certify the settlement Class; (3) order Defendant to comply

---

[7] By pointing out that no government entity has objected to the Settlement, Plaintiffs in no way suggest that the Settlement enjoys the support of any government entity. Additionally, three weeks remain for objections to be lodged against the Settlement.

with the relief described in the Agreement; (4) authorize  to administer the settlement benefits to Class Members; (5) authorize the entry of a final judgment and dismissal of the Action with prejudice; and, (6) grant Plaintiffs' motion for attorneys' fees, costs and for service awards, filed concurrently herewith.

Dated: June 8, 2021                         Respectfully submitted,

Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

**GOLOMB & HONIK**
Kenneth Grunfeld (*pro hac vice*)

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Counsel for Plaintiffs and the Class*