**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 26321
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiffs and the Class*
[*Additional Plaintiffs' Counsel Listed on Signature Page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMANI WHITFIELD, SHAWANNA McCOY, and JOSEY PARSONS AUGHTMAN, on behalf of themselves and all others similarly situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>YES TO, INC.,<br><br>                         Defendant. | Case No. 2:20-cv-00763-AB-AS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVES**<br><br>Date:  September 24, 2021<br>Time:  10:00 a.m.<br>Courtroom:  7B<br>Hon. André Birotte, Jr. |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 24, 2021 at 10:00 a.m., or on such date as may be specified by the Court, in the courtroom of the Honorable André Birotte, Jr., United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 7B, Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman ("Plaintiffs") on behalf of themselves and the class, will and hereby do move for an order, pursuant to Fed. R. Civ. P. Rule 23 and Cal. Civil Code § 1780(e), granting an award of attorneys' fees, reimbursement of expenses, and incentive awards for the class representatives..

This motion will be heard concurrent with Plaintiffs' Motion for Final Approval of Class Action Settlement, which will be separately filed.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities in support thereof; the Amended Stipulation of Settlement (previously filed on January 28, 2021 at ECF 31-1); the Order Granting Preliminary Approval (ECF 41-4); the Declarations of Gillian L. Wade, Yitzchak Kopel, Kenneth Grunfeld, Scott Fenwick, Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman filed concurrently filed herewith in support of this Motion; the concurrently-filed Motion for Final Approval of Class Action Settlement; and, all of the papers and pleadings on file in this action, and upon such other and further evidence as the Court may be presented at the time of the hearing, including oral argument.

Dated: June 8, 2021                                        Respectfully submitted,

_____
Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

**GOLOMB & HONIK**
Kenneth Grunfeld (*pro hac vice*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

    A.   Summary of Allegations and Defenses .................................... 2

    B.   The Litigation ................................................................. 3

    C.   Settlement Negotiations and Preliminary Approval ................... 4

III.  TERMS OF THE SETTLEMENT ................................................... 5

    A.   The Settlement Class Definition .......................................... 5

IV.  THE CLRA PROVIDES FOR A MANDATORY FEE AWARD ................. 8

V.   CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE .............................................................. 9

    A.   The Percentage Of The Benefit Method .............................. 10

        1.   The Total Value Of The Settlement Fund Is $750,000 ........... 10

        2.   The Requested Fee is Reasonable .......................................... 10

            a.  Class Counsel Achieved Extraordinary Results For The Class .............................................................. 11

            b.  Plaintiffs' Claims Carried Substantial Litigation Risk ........ 11

            c.  Class Counsel Skillfully Prosecuted This Action ................ 12

            d.  Market Rates As Reflected By Awards In Similar Cases ........................................................................ 12

            e.  The Contingent Nature Of The Fee And Financial Burden Borne By Class Counsel ...................................... 13

B.  The Requested Attorneys' Fees Are Reasonable Under A Lodestar Cross Check ...................................................................................... 14

C.  The Court May Alternatively Grant The Requested Attorneys' Fees Under The Lodestar Method ................................................................ 15

    1.  Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate ...................................... 16

    2.  All Relevant Factors Support The Reasonableness Of Class Counsel's Fee Request ................................................................ 16

        a.  Novelty and Complexity of this Litigation .......................... 17

        b.  Class Counsel Provided Exceptional Representation Prosecuting This Complex Case ........................................... 18

        c.  Class Counsel Obtained Excellent Class Benefits .............. 18

        d.  Class Counsel Faced A Substantial Risk Of Nonpayment ......................................................................... 18

VI.  CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS ................................................. 19

VII.  THE REQUESTED INCENTIVE AWARD FOR THE CLASS REPRESENTATIVES IS FAIR AND REASONABLE .................... 20

VIII.  CONCLUSION ................................................................................ 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Blum v. Stenson* (1984)
    465 U.S. 886 ..................................................................................... 17

*Caudle v. Bristow Optical Co.* (9th Cir. 2000)
    224 F.3d 1014 ................................................................................... 14

*Cohorst v. BRE Props., Inc.* (S.D. Cal. Nov. 14, 2011)
    2011 WL 7061923 ............................................................................ 12

*Craft v. County of San Bernardino* (C.D. Cal. 2008)
    624 F. Supp. 2d 1113........................................................................ 14

*Daniel v. Astrue* (C.D. Cal. July 2, 2009)
    2009 WL 1941632 ............................................................................ 16

*Fischel v. Equitable Life Assur. Soc'y* (9th Cir. 2002)
    307 F.3d 997 ....................................................................................... 9

*Gonzalez v. S. Wine & Spirits of Am. Inc.* (C.D. Cal. Apr. 24, 2014)
    2014 WL 1630674 ............................................................................ 17

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
    150 F.3d 1011 ....................................................................... 9, 10, 15

*Harris v. Marhoefer* (9th Cir. 1994)
    24 F.3d 16 ......................................................................................... 19

*Hartless v. Clorox Co.* (S.D. Cal. 2011)
    273 F.R.D. 630 ................................................................................. 10

*Hensley v. Eckerhart* (1983)
    461 U.S. 424 ............................................................................... 11, 17

*Ingalls v. Hallmark Mktg. Corp.* (C.D. Cal. Oct. 16, 2009)
    2009 U.S. Dist. LEXIS 131081 ...................................................... 13

*In re Activision Sec. Litig.* (N.D. Cal. 1989)
    723 F. Supp. 1373 ...................................................................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011)
    654 F.3d 942 ..................................................................................... 11, 15

*In re Heritage Bond Litig.* (C.D. Cal. June 10, 2005)
    2005 WL 1594389 ................................................................................... 12

*In re Omnivision Techs., Inc.* (N.D. Cal 2008)
    559 F. Supp. 2d. 1036 .............................................................................. 12

*In re Pac. Enters. Sec. Litig.* (9th Cir. 1995)
    47 F.3d 373 ........................................................................................ 10, 13

*In re Washington Public Power Supply System Securities Litig.* (9th Cir. 1994)
    19 F.3d 1300 ........................................................................................... 17

*Johnson v. Saul* (C.D. Cal. Feb. 3, 2020)
    2020 WL 1223539 ................................................................................... 16

*Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975).
    526 F.2d 67 ............................................................................................. 15

*Martin v. AmeriPride Servs., Inc.* (S.D. Cal. June 9, 2011)
    2011 U.S. Dist. LEXIS 61796 ................................................................. 13

*McKibben v. McMahon* (C.D. Cal. Feb. 28, 2019)
    2019 WL 1109683 ................................................................................... 16

*Morris v. Lifescan, Inc.* (9th Cir. 2003)
    54 F. App'x 663 .................................................................................. 10, 13

*Paul, Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989)
    886 F.2d 268 ........................................................................................... 10

*Palos v. Colvin* (C.D. Cal. Sept. 20, 2016)
    2016 WL 5110243 ................................................................................... 16

*Radford v. Berryhill* (C.D. Cal. Sept. 26, 2017)
    2017 WL 4279217 ................................................................................... 16

*Rippee v. Boston Mkt. Corp.* (S.D. Cal. Oct. 10, 2006)
    05-CV-1359 TM (JMA) ....................................................................... 13

*Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009)
    563 F.3d 948 ..................................................................................... 20

*Singer v. Becton Dickinson & Co.* (S.D. Cal. June 1, 2010)
    2010 U.S. Dist. LEXIS 53416 ........................................................... 13

*State of Florida v. Dunne* (9th Cir. 1990)
    915 F.2d 542 ..................................................................................... 10

*Staton v. Boeing* (9th Cir. 2003)
    327 F.3d 938 .............................................................................. 10, 19

*Steiner v. Am. Broad. Co., Inc.* (9th Cir. 2007)
    248 Fed. Appx. 780 .......................................................................... 15

*Van Vranken v. Atl. Richfield Co.* (N.D. Cal. 1995)
    901 F. Supp. 294 .............................................................................. 20

*Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010)
    266 F.R.D. 482 ................................................................................. 13

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002)
    290 F.3d 1043 .............................................................. 11, 13, 14, 15, 17

**STATE CASES**

*Choi v. Mario Bodusco Skin Care, Inc.* (2016)
    248 Cal. App. 4th 292 ........................................................................ 8

*Graciano v, Robinson Ford Sales* (2006)
    144 Cal. App. 4th 140 ........................................................................ 9

*Kim v. Euromotors West/The Auto Gallery* (2007)
    149 Cal. App. 4th 170 ........................................................................ 9

**FEDERAL STATUTES**

28 U.S.C. §1715 ............................................................................................................. 8

**STATE STATUTES**

73 P.S. § 201 ................................................................................................................... 3

**OTHER SOURCES**

4 Newberg on Class Actions
          § 14.7 ................................................................................................................ 15

*Newberg on Class Actions*
          § 14:03 ............................................................................................................. 17

## I. INTRODUCTION

Plaintiff Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman ("Plaintiffs" or the "Class Representatives"), through their counsel, Milstein, Jackson, Fairchild, & Wade, LLP, Golomb & Honik, and Bursor & Fisher, P.A. ("Class Counsel"), respectfully submit this memorandum of points and authorities in support of their motion for approval of an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive awards in connection with the classwide settlement of this action.

Pursuant to the Stipulation of Settlement (the "Settlement Agreement"),[1] Defendant Yes To, Inc. ("Yes To" or "Defendant") will pay $750,000 into a Settlement Fund in cash for the settlement of all claims in this action. Settlement Agreement ¶ 1.21. The Settlement Agreement defines the Settlement Class to include:

> All persons in the United States who purchased or used the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask. Excluded from this definition are the Released Persons, any person or entity that purchased the Yes To Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask for purposes of resale and not for his/her/its own consumption (i.e., "Resellers"), and any judicial officer assigned to this case.

*Id.* ¶ 1.20. The Settlement Agreement includes a $3.00 per claim payout for Settlement Class Members for up to six Masks, subject to *pro rata* upward or downward adjustment, depending on the number of claims filed. *Id.* ¶ 2.4(a). The deadline to make a claim is August 13, 2021.

This is an excellent recovery for Settlement Class Members. The $750,000

---

[1] Unless otherwise specified, all capitalized terms have the same meanings as ascribed in the Stipulation of Settlement (the "Agreement"), which was attached as Exhibit 1 to the Declaration of Gillian L. Wade filed on January 28, 2021 (ECF 41-1).

payout by Defendant *exceeds* the approximate total retail sales of the affected products in the United States.  Unsurprisingly, the response to the Settlement has been overwhelmingly positive: to date, there have been <u>zero opt-outs or objections</u>.  The deadline to opt-out is August 13, 2021 and the deadline to object is June 29, 2021.

Class Counsel requests that the Court approve a total payment of one-third of the Settlement Fund ($250,000.00) in attorneys' fees and as reimbursement of costs and expenses.  As explained below, both the percentage of the benefit method and the lodestar technique confirm that this request for attorneys' fees and expenses is fair, reasonable, and supported by the law of this Circuit.  Class Counsel collectively worked 507.15 hours on this case for a total lodestar, at current billing rates, of $279,820.   Kopel Decl. ¶ 2, Grunfeld Decl. ¶ 7, Wade Decl. ¶ 16.   Plaintiffs' requested fee thus represents a *negative* multiplier of 0.89, well within reason.  Furthermore, Class Counsel's relatively low expenses of just $6,055.41—costs that were necessary to the prosecution of this case, and which were carefully and reasonably expended—demonstrate how efficiently they litigated this action.  Kopel Decl. ¶ 5, Grunfeld Decl. ¶ 13, Wade Decl. ¶ 22.

Finally, Plaintiffs request that the Court award each of them a service award in the amount of $5,000 (for a total of $15,000) to account for the significant time and effort they invested in this case on behalf of the Class.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Summary of Allegations and Defenses

Yes To marketed the beauty Mask for remediation of "dull & uneven skin" and advertised that "[t]his mask will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion." ECF 23 (Consolidated Amended Complaint ("CCAC")), ¶ 23. Defendant also claimed: "Your skin will look great in selfies with this mask on AND off!"  *Id*.  But contrary to these claims, the Mask—which was marketed to target young women and girls—

did the opposite. *Id.* Specifically, when the Mask was purchased and subsequently used by unsuspecting customers in accordance with Yes To's instructions for use, it resulted in adverse reactions including severe facial skin irritation, redness, burning, blistering, swelling and pain. *Id.* ¶ 3. Each of the Plaintiffs experienced severe skin irritation and burning after using the Mask. *Id.* ¶¶ 48-55.

Defendant's main defenses pertain to its conduct after consumers began complaining about the mask: Defendant purportedly initiated the process of halting distribution of the Mask and pulling the Mask from store shelves. *Id.* ¶¶ 38-44. For example, Defendant's webpage for the Mask has sporadically stated that the product had been "discontinued" due to "reports of skin irritation," and advised purchasers to return the Product or call Yes To directly if it had been used. *Id.* Based on the data that Defendant provided, approximately 243,000 units were sold at retail, and the approximate revenue for the Mask was nearly $735,000. ECF 41-1 ¶ 18. Based on Class Counsel's research, the Mask retailed for less than $4 per unit. *Id.*

### B. The Litigation

On January 24, 2020, Plaintiff Imani Whitfield commenced an action entitled *Whitfield v. Yes To, Inc.* (United States District Court, Central District of California, Case No. 2:20-cv-763) (the "Action"), as a proposed class action, asserting claims for breach of express warranty, breach of implied warranty, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), fraudulent concealment, fraud, unjust enrichment, and conversion. Plaintiff Whitfield alleged the Mask caused skin irritation and/or burns to her face.

On February 6, 2020, Josey Parsons Aughtman commenced an action entitled *Aughtman v. Yes To, Inc.* (United States District Court, Central District of California, Case No 2:20-cv-01223), as a proposed class action, asserting similar allegations about the Mask causing her to suffer burns and irritation on her face as a result of using the Mask. The *Aughtman* action alleged claims for Violations of Consumer

Legal Remedies Act (CLRA), Violations of False Advertising Law (FAL), Violations of Unfair Competition Law (UCL) 'Unfair' and 'Fraudulent' Prongs, Violations of Unfair Competition Law (UCL) 'Unlawful' Prong, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose.

On February 19, 2020, Plaintiffs Imani Whitfield and Shawanna McCoy filed a First Amended Complaint asserting the same allegations that the Mask caused facial irritation and/or burns, and advanced the same claims, adding additional causes of action for violation of CLRA, UCL, and FAL.  ECF 9.

On March 20, 2020, Plaintiffs Imani Whitfield and Shawanna McCoy filed a Second Amended Complaint asserting the same claims and adding a prayer for damages for the CLRA claim.  ECF 20.

On March 17, 2020, the *Whitfield* action was consolidated with the related *Aughtman* action. ECF 19.  On May 15, 2020, Plaintiffs Imani Whitfield, Shawanna McCoy, and Josey Parsons Aughtman filed the CCAC, asserting the same claims for relief as in the FAC and SAC.  ECF 23.

Defendant answered the CCAC on June 12, 2020, denying liability.  ECF 25. Plaintiffs then propounded formal requests for production of documents.

On September 4, 2020, the Parties filed their Joint Report Rule 26(f) Discovery Plan.  ECF 30.  This was followed shortly on September 10, 2020 by the Court ordering the case to a private mediator.  ECF 32.  The same day, the Court released a scheduling order for the upcoming trial.  ECF 33.

### C.    Settlement Negotiations and Preliminary Approval

Substantial settlement negotiations took place between the Parties. In addition to informal settlement discussions, on November 11, 2020, the Parties remotely attended a video mediation with Jill Sperber Esq. of Judicate West.  ECF 41-1 ¶ 6; ECF 41-2 ¶ 8.  After a full day of hard-fought negotiations at mediation, the Parties were able to reach a resolution.  *Id*.  All settlement discussions were at arms-length.

1    *Id.*

2         On January 28, 2021, Plaintiffs filed a Motion for Preliminary Approval, and a

3    hearing was held on February 26, 2021.  ECF Nos. 41, 42, 46.  The Court granted

4    preliminary approval on March 1, 2021. ECF 47.  Later that day, the Court issued an

5    Amended Order because the scanned copy of the Order was illegible on one line of

6    the last page. ECF 48 (the "Preliminary Approval Order").

7    **III.    TERMS OF THE SETTLEMENT**

8         **A.    The Settlement Class Definition**

9         For purposes of the Settlement only, the Court granted the parties' request to

10   conditionally certified the following Settlement Class:

11              All persons in the United States who purchased or used the Yes To
                Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask.
12

13   ECF 48 at ¶ 1. *See also* Agreement §1.20. Excluded from this definition are the

14   Released Persons, any person or entity that purchased the Yes To Grapefruit Vitamin

15   C Glow-Boosting Unicorn Paper Mask for purposes of resale and not for his/her/its

16   own consumption (i.e., "Resellers'"), and any judicial officer assigned to this case.

17   *Id.*

18        **B.    Benefits to Settlement Class Members**

19        Yes To will make a total cash payment of $750,000.  Agreement ¶ 2.1.  If final

20   approval is granted, money from the cash payment (the "Settlement Fund") will be

21   used to pay the following, in this order: (1) the costs to give notice of the settlement

22   and administer claims; (2) reasonable attorneys' fees and litigation expenses

23   approved by the Court; (3) any Court-approved service awards to Plaintiffs; and

24   (4) eligible claims by Settlement Class Members. Agreement §§1.21, 2.3.

25              **1.    Reimbursement for Masks Purchased**

26        Settlement Class Members who submit valid claims may recover $3.00 for

27   each Mask he or she purchased or used, up to a maximum of six (6) Masks.

28

Declaration of Scott Fenwick concurrently filed herewith ("Fenwick Decl.") at Ex. A (Long Form Notice); Ex. C (Short Form Notice); Ex. B (Claim Form). Claims will be paid without requiring proof of purchase. *Id.* at Ex. B (Claim Form).[2]

If the amount of cash available for the Settlement Fund is insufficient to pay all valid Settlement Class Member Claims (after payment of the Fee and Expense Award, Notice and Other Administrative Costs, and the Incentive Award), individual payment amounts for Claims shall be reduced on a pro-rata basis. *Id.*, Agreement ¶ 2.4(a). Similarly, receipt of total valid Settlement Class Member Claims less than the available portion of the Settlement Fund will increase the cash payout for each claimant on a pro rata basis. *Id.*, ¶ 2.7. *See also id.* ¶ 2.3(d).

If any unpaid funds from uncleared settlement checks remain in the Settlement Fund, Class Counsel will make an application to the Court to seek approval for a proposed disposition of the unpaid funds from uncleared checks. *Id.* ¶ 2.8. The unpaid funds will remain in the Settlement Fund pending further order of the Court. *Id.*

## 2.  Payment of Incentive Awards and Attorneys' Fees and Costs

The Settlement permits service awards of $5,000 each for Plaintiffs Whitfield, McCoy, and Aughtman. Agreement ¶ 2.3(c).  The Incentive Awards ($15,000 total) will compensate Plaintiffs for their time and effort in the case, and for the risks they undertook in prosecuting the Action. *Id.*

The Settlement also allows Class Counsel to file a motion requesting attorneys' fees of up to one-third of the Settlement Fund ($250,000) plus litigation expenses ($6,055.41). *Id.* ¶ 3.1. The amount requested in fees represents a negative multiplier, and necessary costs were incurred, including filing fees and the cost of mediation.

---

[2] Claimants must attest that "The information on this claim form is true and correct to the best of my knowledge and belief." *See* Finegan Decl., Ex. B (Claim Form)

### 3.     The Notice Program and Settlement Administration

The parties selected and the Court appointed Heffler Claims Group ("Heffler") as the Settlement Administrator. Agreement ¶1.19; ECF 48 at ¶ 13.[3]  Heffler has been responsible for administering administrative tasks necessary to implement the terms of the Agreement, including (a) notifying the appropriate state and federal officials about the settlement, (b) arranging for distribution of Class Notice (in the form approved by the Court) and Claim Forms (in a form ordered by the Court) to Settlement Class Members, (c) handling inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel and Defendant's Counsel, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the settlement, (e) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (f) receiving and processing claims and distributing payments to Settlement Class Members, and (g) otherwise assisting with implementation and administration of the Stipulation terms.  *Id*. ¶ 4.5.

### D.     The Court Granted Preliminary Approval of the Settlement and Notice to the Settlement Class Was Disseminated.

The Settlement Class Notice Program was designed to give the best notice practicable, tailored to reach putative Settlement Class Members, and reasonably calculated under the circumstances to apprise them of the Settlement and their right to make a claim for money, opt-out, or object. Fenwick Dec. ¶ 9. The straightforward, single page Claim Form is easy for Settlement Class Members to understand.  *Id.* at Ex. B (Claim Form).

After the Court entered the Preliminary Approval Order, the Parties and Heffler carried out their duties in connection with the administration of the settlement as set forth in the Agreement. (1) digital advertisements (banner ads) to be

---

[3] Heffler's significant experience and qualifications are described in Declaration of Jeanne C. Finegan filed on January 28, 2021.  ECF 413 at ¶¶ 5-12, Ex. A.

distributed over desktop and mobile devices, via such websites as Google Ads, Facebook, Instagram, TikTok and through social influencers with beauty and personal care content whose followers are target customers of the Mask; (2) a press release issued through PR Newswire's US1 Newslines; (3) a dedicated website allowing Settlement Class Members to obtain additional information and access key documents, including the Long Form Notice, the Claim Form, the Agreement, and the Preliminary Approval Order.  *See* Fenwick Decl., ¶¶ 5-6, 11-17.

Though Civil Code section 1781 does not appear to govern nationwide consumer class actions, it was provided in an abundance of caution.  *See Choi v. Mario Bodusco Skin Care, Inc.*, 248 Cal. App. 4th 292 (2016) (affirming final approval and rejecting objector's contention notice failed to comport with the Cal. Civ. 1781(d)).   To fulfill the CLRA's publication requirement, the Short Form Notice appeared as 1/8 page notices once a week for four consecutive weeks in Orange County Register, which boasts an average daily circulation of approximately 81,350, and twice in the San Jose Mercury News.  Fenwick Decl., ¶ 13.[4]  Heffler also notified the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 (CAFA).  *See* CAFA, 28 U.S.C. §1715(b)(1)-(8).  Fenwick Decl. ¶ 18.

Settlement Class Members have been able to complete the Claim Form and submit it online on the Settlement Website, or request that a paper copy be mailed so it can be completed and mailed to Heffler's designated P.O. Box.  Fenwick Decl. ¶¶ 5-7.  The deadline to object is June 29, 2021 and the deadline to make claims or opt is August 13, 2021.

## IV.  THE CLRA PROVIDES FOR A MANDATORY FEE AWARD

The Class Representative has brought claims against Defendant under various theories, including under California's Consumers Legal Remedies Act, Civil Code

---

[4] In addition to the Orange County Register, the Short Form Notice appeared twice in the San Jose Mercury News. *Id*

§§ 1750, *et seq.* (the "CLRA").  For CLRA claims, an award of fees to the prevailing party is mandatory under Civil Code § 1780(e), which provides: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."   As the California Court of Appeal has explained in construing this provision:

> The word 'shall' is usually deemed mandatory, unless a mandatory construction would not be consistent with the legislative purpose underlying the statute."   (*West Shield Investigations and Sec. Consultants v. Superior Court* (2000) 82 Cal. App. 4th 935, 949, 98 Cal.Rptr.2d 612.)   Our Supreme Court has observed that "the availability of costs and attorney's fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." (*Broughton v. Cigna Healthplans* (1999) 21 Cal. 4th 1066, 1085, 90 Cal. Rptr. 2d 334, 998 P.2d 67.)   Thus, a mandatory construction of the word "shall" in section 1780(d) is consistent with the legislative purpose underlying the statute.

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178 (2007).

Here, Class Counsel have negotiated a settlement that is likely to provide Settlement Class Members (depending on the final number of claims) with payouts *exceeding* a full refund of their purchases for the Masks.   Plaintiffs have thus succeeded by realizing their litigation objectives in large part.   As the Settlement Class is the "prevailing party," a fee award to Class Counsel is mandatory under the CLRA.  *Graciano v, Robinson Ford Sales*, 144 Cal. App. 4th 140, 150-51 (2006).

## V.   CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

Under Ninth Circuit standards, a District Court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).   Class Counsel's fee request is fair and reasonable under either of these methods.

### A.    The Percentage Of The Benefit Method

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorneys' fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of the recovery).

### 1.    The Total Value Of The Settlement Fund Is $750,000

To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the Settlement Fund.  In doing so, the Court must include the value of the benefits conferred to the Class, including any attorneys' fee, expenses, and notice and claims administration payments to be made.  *See*, *e.g.*, *Staton v. Boeing*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Here, because the Settlement Agreement creates a common fund of $750,000, that is the amount that should be used for a percentage-of-the-benefit analysis.

### 2.    The Requested Fee is Reasonable

The Ninth Circuit has established 25% of a common fund as a starting benchmark under a percentage-of-the-benefit analysis.  *Hanlon*, 150 F.3d at 1029. However, the 25% benchmark would be unreasonably low here.  *See id.* at 148 ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989) (explaining that the benchmark should be "adjusted upward or downward" based on the unique circumstances of the case).

The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees in a common fund case are reasonable: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work, (d) market rates as reflected by awards made in similar cases; and (e) the

contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Each of these factors points to a higher award in this case. Here, a fee of 33.3% is reasonable for the reasons set forth below.

### a. Class Counsel Achieved Extraordinary Results For The Class

The benefit obtained for the Class is foremost among the factors in determining a proper fee. In this case, the significant monetary benefits achieved weighs heavily in favor of an upward adjustment from the 25% benchmark. *In re Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461 U.S. at 434-36). As noted above, Defendant's payout in this settlement exceeds the total retail value of money paid by Settlement Class Members for the Masks. Because the Settlement provides a substantial monetary benefit to Settlement Class Members above and beyond what would typically be expected in a class settlement this factor weighs heavily in favor of the reasonableness of the requested fee award.

### b. Plaintiffs' Claims Carried Substantial Litigation Risk

The second *Vizcaino* factor looks to the risk and novelty of the claims at issue. Both are certainly present here. Indeed, Class Counsel undertook significant financial risk in prosecuting this case.

Although Plaintiffs had confidence in their claims, it was clear that Defendant would present a vigorous defense, and that there could be no assurance that the Class would be certified or prevail at trial. It was also likely that Defendant would file a motion for summary judgment that would present significant risks to the Class. Even if Plaintiffs' claims could proceed past class certification and summary judgment, this case would ultimately devolve into an uncertain "battle of the experts." Defendant would likely present testing from experts who would claim that its Masks were not defective. A favorable outcome was not assured. By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of a lengthy

trial and appellate process.  The Settlement will provide Settlement Class Members with monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might have prevented them from obtaining relief.

### c.      Class Counsel Skillfully Prosecuted This Action

The litigation of a complex, multiparty, nationwide class action "requires unique legal skills and abilities."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d. 1036, 1047 (N.D. Cal 2008).  However, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained."  *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005).  The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel.  *Cohorst v. BRE Props., Inc.*, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011).

Here, Class Counsel faced an uphill battle not only in their pursuit of the facts in this complicated case (including but not limited to Defendant's stopping the distribution and voluntary partial recall of the Masks), but in the formidable opposition by experienced class action defense counsel.  Despite these obstacles, Class Counsel succeeded in achieving a settlement benefit for the Class exceeding the approximate total retail sales of the Masks during the class period. The ability of Class Counsel to obtain such a favorable settlement in these circumstances supports the requested fee award.

### d.      Market Rates As Reflected By Awards In Similar Cases

Although the Ninth Circuit has established a benchmark fee of 25%, it is not uncommon for courts in this Circuit to award fees even higher than 25% in common fund cases.  For example, when awarding 32.8% of the settlement fund for fees and costs, Judge Patel explained: "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%[,]" as this will "encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed

by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378-79 (affirming attorneys' fee of 33% of the recovery); *Williams*, 129 F.3d at 1027 (33.33% of total fund awarded); *Morris*, 54 Fed. App'x at 663 (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Martin v. AmeriPride Servs., Inc.*, 2011 U.S. Dist. LEXIS 61796, at *23 (S.D. Cal. June 9, 2011) (noting that "courts may award attorney's fees in the 30%-40% range"); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other cases where fees ranged from 33.33% to 40%); *Ingalls v. Hallmark Mktg. Corp.*, 2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million common fund settlement); *Rippee v. Boston Mkt. Corp.*, No. 05-CV-1359 TM (JMA) (Dkt. No. 70, at 7) (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million in a common fund settlement).

This is particularly true given that the requested 33.3% would result in a negative multiplier (*i.e.*, a "haircut") as it is, meaning that a cut down to the 25% benchmark would cause Class Counsel to take an even deeper cut for the time they billed to this matter.

### e.   The Contingent Nature Of The Fee And Financial Burden Borne By Class Counsel

The fifth factor cited by *Vizcaino* is the contingent nature of the fee and the financial burden carried by the plaintiffs.   *Vizcaino*, 290 F.3d at 1050.   To date, Class Counsel has worked for a year and a half with no payment, and no guarantee of payment absent a successful outcome.   Class Counsel also advanced $6,055.41 in out-of-pocket expenses, again with no guarantee of repayment.   If the case had

advanced through the end of discovery, class certification, summary judgment and trial, these expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several years to litigate this action through judgment and appeals.

### B.   The Requested Attorneys' Fees Are Reasonable Under A Lodestar Cross Check

Courts in the Ninth Circuit often examine the lodestar calculation as a crosscheck on the percentage fee award to ensure that counsel will not receive a "windfall." *Vizcaino*, 290 F.3d at 1050. The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the Court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case. Here, the lodestar cross-check confirms the reasonableness of the requested fee.

As of this filing, Class Counsel has worked 507.15 hours on this case for a total lodestar, at current billing rates, of $279,820.10. Kopel Decl. ¶ 2, Grunfeld Decl. ¶ 7, Wade Decl. ¶ 16. This represents a blended hourly rate of just $551.75, which is well within the bounds of reasonable hourly rates in this District. Kopel Decl. ¶ 12. A fee award of 33.3%, or $250,000 would represent a negative multiplier of 0.89 over the base lodestar fee. *Id.* ¶ 3; Section IV.C below (discussing the factors supporting the application of a multiplier to Class Counsel's lodestar). This multiplier falls well within the accepted range in the Ninth Circuit, where positive multipliers are routinely awarded, and is reasonable. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (noting district court cases in the Ninth Circuit approving multipliers as high as 19.6); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving fee award resulting in a multiplier of 5.2, and collecting similar

cases); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (approving multiplier of 6.85); 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher).   The modest multiplier provided by the lodestar cross-check here demonstrates that the percentage fee sought by Class Counsel is fair and reasonable.

**C.     The Court May Alternatively Grant The Requested Attorneys' Fees Under The Lodestar Method**

Under Ninth Circuit standards, a District Court may also award attorneys' fees under the "lodestar" method. *Hanlon*, 150 F.3d at 1029.   The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.   The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[5]   Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino*, 290 F.3d at 1051.

**1.     Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate**

---

[5] *Kerr* identifies twelve factors for analyzing reasonable attorneys' fees:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Class Counsel's declarations describe the extensive work performed in connection with this litigation over the past year and a half.  Class Counsel carefully coordinated its work throughout this litigation to avoid any internal duplication of effort, and was thereby able to work very efficiently.  To support this request, Class Counsel is separately submitting billing records and summaries showing what work was done and by whom.  Kopel Decl., Ex. 1; Grunfeld Decl., Ex. A; Wade Decl. ¶ 16.  These records confirm Class Counsel's efficient billing.

The number of hours expended by Class Counsel is also extremely reasonable given the complications involved in litigating this matter.  The pre-suit investigation required extensive work.   After that came consolidation of the actions, several rounds of pleadings, and protracted settlement negotiations in order to achieve this result for the Class.

The blended hourly rates for Class Counsel of $551.75 is also quite reasonable.  Class Counsel's rates are reasonable as compared to rates routinely approved in this District. *Johnson v. Saul*, 2020 WL 1223539, at *3 (C.D. Cal. Feb. 3, 2020) ("[T]he Central District of California has repeatedly found reasonable fees with effective hourly rates exceeding $1,000 per hour"); *Radford v. Berryhill*, 2017 WL 4279217, at *3 (C.D. Cal. Sept. 26, 2017) (approving fees amounting to $1,197.92 per hour of attorney time); *Palos v. Colvin*, 2016 WL 5110243, at *2 (C.D. Cal. Sept. 20, 2016) (approving fees amounting to $1,546.39 per hour of attorney time); *Daniel v. Astrue*, 2009 WL 1941632, at *2-3 (C.D. Cal. July 2, 2009) (approving fees amounting to $1,491.25 per hour of attorney time); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019) (finding hourly rates of up to $1,230 per hour reasonable depending on attorney experience).

### 2.    All Relevant Factors Support The Reasonableness Of Class Counsel's Fee Request

The lodestar analysis is not limited to the simple mathematical calculation of Class Counsel's base fee. *See Morales, supra,* 96 F.3d at 363-64.  Rather, Class

Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4.  *See Vizcaino*, 290 F.3d at 1051, n.6; *Gonzalez v. S. Wine & Spirits of Am. Inc.*, 2014 WL 1630674, at *5 (C.D. Cal. Apr. 24, 2014) (awarding a "1.18 multiplier, taking into account the contingent nature of the case and the delay in class counsel receiving its full fee award"); *see In re Washington Public Power Supply System Securities Litig.*, 19 F.3d at 1300–1301 (noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and finding district court's failure to apply multiplier to lodestar calculation was abuse of discretion where case was "fraught with risk and recovery was far from certain"); *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases.  *Kerr*, 526 F.2d at 70; *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

Here, despite the excellent result achieved for the Class, Counsel is requesting an award that will result in a *negative* multiplier.  All of these factors further support the reasonableness of the requested fee award in this action.  *Vizcaino*, 290 F.3d at 1051.

### a.    Novelty and Complexity of this Litigation

This case is not a cookie-cutter consumer class action.  It is not primarily based on an affirmative misrepresentation, but rather actionable omissions and breaches of implied warranties.  Additional complexities were added to due the fact

that Yes To conducted a partial recall of the Masks.

The novelty and complexity of this litigation therefore further support the reasonableness of Plaintiffs' fee request.

### b.   Class Counsel Provided Exceptional Representation Prosecuting This Complex Case

Class Counsel respectfully submits that they have conducted themselves in this action in a professional, diligent and efficient manner.   Class Counsel has extensive experience in the field of class action litigation.   ECF 41-2 Ex. A (Bursor & Fisher, P.A.'s resume), ECF 41-1 ¶¶ 9-16 (detailing Milstein Jackson Fairchild & Wade, LLP's experience); *Id.* Ex. 2 (Golomb & Honik resume).   Additionally, litigation tasks were allocated to prevent "over lawyering" and inefficiency.   The bulk of the work was performed by a small number of attorneys fully familiar with the complex factual and legal issues presented by this litigation.   This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort.

### c.   Class Counsel Obtained Excellent Class Benefits

As discussed above, the Class has received a benefit in this settlement exceeding the approximate retail sales of the Masks at issue.   This is essentially full compensation.   The lack of opt-outs or objections to date further confirm that Class Counsel obtained a great result for the Class.

### d.   Class Counsel Faced A Substantial Risk Of Nonpayment

A critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation.   *See, e.g.*, *Vizcaino*, 290 F.3d at 1048.   The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant.   *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).   In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases .... [I]f this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted).

Throughout this case, Class Counsel expended substantial time and costs to prosecute a nationwide class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against a sophisticated Defendant represented by high caliber attorneys. Class Counsel obtained a highly favorable result for the Class, knowing that if its efforts were ultimately unsuccessful, it would receive no compensation or reimbursement for its costs. This fact alone supports the reasonableness of the fee request.

## VI.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement. *See Staton*, 327 F.3d at 974. Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). These expenses include court fees, mediation fees, postage and deliver fees, transportation fees, and other related expenses. Kopel Decl., Ex. 2, Grunfeld Decl., Ex. B, Wade Decl. ¶ 22.

Here, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $6,055.41 in prosecuting this litigation on behalf of the Class. *Id.* Each of these expenses was necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of

expenses incurred.  *Id.*

## VII.   THE REQUESTED INCENTIVE AWARD FOR THE CLASS REPRESENTATIVES IS FAIR AND REASONABLE

In recognition of her effort on behalf of the Class, and subject to the approval of the Court, Defendant has agreed to pay each of the three Class Representatives $5,000 each as appropriate compensation for their time and effort serving as the class representatives in this litigation.

Incentive awards "are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  Incentive awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Incentive awards are appropriate when a class representative will not benefit beyond ordinary class members.  For example, where a class representative's claim makes up "only a tiny fraction of the common fund," an incentive award is justified.  *Id.*, 901 F. Supp. at 299.

The requested amount of $5,000 apiece for Plaintiffs is appropriate to compensate them for bringing this action for the benefit the Settlement Class Members.  Throughout the litigation, Plaintiffs conferred regularly with Class Counsel to receive updates on the progress of the case and to discuss strategy.  Whitfield Decl. ¶ 4, McCoy Decl. ¶ 4, Parsons Aughtman Decl. ¶ 4.  They assisted in Class Counsel's investigation throughout this litigation by providing information on the Masks that they purchased, among other matters.  Whitfield Decl. ¶ 2, McCoy Decl. ¶ 2, Parsons Aughtman Decl. ¶ 2.  Plaintiffs assisted in drafting the complaints

and reviewed them for accuracy before they were filed. Whitfield Decl. ¶ 3, McCoy Decl. ¶ 3, Parsons Aughtman Decl. ¶ 3. Plaintiffs were also intimately involved in the settlement process, and have continued to keep abreast of settlement progress to date. Whitfield Decl. ¶ 5, McCoy Decl. ¶ 5, Parsons Aughtman Decl. ¶ 5. They have taken significant time away from work and personal activities to initiate and litigate this action. And they were prepared to litigate this case to a verdict if necessary. Whitfield Decl. ¶ 7, McCoy Decl. ¶ 7, Parsons Aughtman Decl. ¶ 7. Plaintiffs' dedication and efforts have conferred a significant benefit on Settlement Class Members across the United States.

## VIII. CONCLUSION

Class Counsel were able to obtain a settlement that represents an excellent result for the Class. This Settlement is the culmination of the determined and skilled work of Class Counsel for more than four years. As a result, Plaintiffs respectfully request that this Court award the following:

- $250,000 in attorneys' fees, representing 33.3% of the Settlement Fund;
- Costs and expenses to Class Counsel of $6,055.41; and
- Service Awards to Plaintiffs of $5,000 each.

For the foregoing reasons, these amounts are fair and reasonable and should be approved.

Dated: June 8, 2021                    Respectfully submitted,

_____
Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD &
WADE, LLP**

**GOLOMB & HONIK**
Kenneth Grunfeld (*pro hac vice*)

**BURSOR & FISHER, P.A.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Yitzchak Kopel (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Counsel for Plaintiffs and the Class*